Eric D. Freed (SBN 162546)
Julie D. Miller (*pro hac* forthcoming)
**FREED & WEISS LLC**
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
Telephone:  (312) 220-0000
Facsimile:  (312) 220-7777
eric@freedweiss.com


Mark N. Todzo (State Bar No. 168389)
Howard Hirsch (SBN 213209)
**LEXINGTON LAW GROUP**
1627 Irving Street
San Francisco, CA 94122
Telephone:  (415) 759-4111
Facsimile:   (415) 759-4112
mtodzo@lexlawgroup.com

Attorneys for Plaintiffs and Putative Class


# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA


| | |
|---|---|
| MOISES ZEPEDA, MICHAEL SPEAR, RONYA OSMAN and BRIAN PATTEE, CASEY CHING, DENAE ZAMORA, MICHAEL LAVANGA, and GARY MILLER  on behalf of themselves and all others similarly situated, | Case No. 10-cv-02500 |
| | **OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| Plaintiffs, | |
| v. | |
| PAYPAL, INC., | |
| Defendant. | |

1

**TABLE OF CONTENTS**

2

INTRODUCTION ...…..……………………………………………………... 1

3

FACTUAL BACKGROUND ...……………………………….…………………. 2

4

LEGAL STANDARD ...……………………………………………………. 4

5

ARGUMENT ...………………………………………………………………. 4

6

I.      PLAINTIFFS HAVE ADEQUATELY PLED THEIR BREACH

7      OF CONTRACT CLAIM …………………………..……………….….... 4

8      A.      PayPal is Breaching the User Agreement by Withholding
        Funds That Belong to Plaintiffs and the Class Without

9      Any Valid Basis ……………………………………………. 4

10      B.      PayPal is Breaching the User Agreement's Restrictions on
        Withholding Funds ……………………………………. 5

11      1.      PayPal is Breaching Section 10.4 of the User

12      Agreement …………………………………………..... 5

13      2.      PayPal is Breaching Section 10.6 of the User
        Agreement …………………………………….……. 6

14      3.      PayPal is Breaching Section 10.7 of the User

15      Agreement …………………………………….……. 6

16      C.      PayPal has Substantively Breached the User Agreement
        by Failing to Refer to Any of Its Terms in Its

17      Communications with Plaintiffs …………………………………. 9

18      D.      PayPal is Depriving Plaintiffs and the Class of Their
        Contractual Right to Cure Any Alleged Breach …………………..……. 10

19      E.      Plaintiffs Have Adequately Alleged That Defendant
        Breached the Covenant of Good Faith and Fair Dealing

20      Implied in the Contract ………………………………...………….. 10

21      II.      PLAINTIFFS ADEQUATELY ALLEGE A CLAIM UNDER
        THE CONSUMER LEGAL REMEDIES ACT …………………….…….. 13

22      A.      Plaintiffs Allege Consumer Transactions Subject to

23      the CLRA ……………………………......……………….... 13

24      B.      The CLRA Applies to Defendant's Payment Processing
        Services ……………………………......………..……….. 16

25      III.      PLAINTIFFS ADEQUATELY ALLEGE A CLAIM UNDER

26      THE UNFAIR COMPETITION LAW ……………………...……………. 17

27      A.      Plaintiffs Properly Allege a UCL Claim Predicated on

28      Conversion ………………………………..……………….. 18

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

B.      Plaintiffs' Claims do Not Sound in Fraud and Therefore
Need Not be Pled with the Specificity Required Under
Rule 9(b) ……………………………………..……………………………… 20

IV.      PLAINTIFFS HAVE ADEQUATELY PLED THEIR UNJUST
ENRICHMENT CLAIM ……………………………………………..……… 21

V.       THE FAC PROPERLY SEEKS INJUNCTIVE RELIEF UNDER
THE CLRA AND THE UCL TO REDRESS THE ONGOING
HARM CAUSED BY DEFENDANT'S CONDUCT ……………………..……… 23

VI.      THE FAC PROPERLY SEEKS DECLARATORY RELIEF…………...……… 25

CONCLUSION ……………………………………………………...………...……….. 25

1

**TABLE OF AUTHORITIES**

2

CASES

3

*Ace Chrome Corp. v. IBEX Constr.*
    No. 08 Civ. 10401(TPG), 2009 WL 2482136 (S.D.N.Y. Aug. 13, 2009) …………..….. 23

4

*Amchem Products, Inc. v. Windsor*
    521 U.S. 591 (1997) …………………………………………………...…….…... 25

5

6

*Ashcroft v. Iqbal*
    129 S.Ct. 1937 (2009) ……………………………………………………..…….... 4

7

*Ball v. Fleet Boston Fin. Corp.*
    164 Cal.App.4th 794 (Cal.Ct.App. 2008) …………………………………….…….. 16

8

9

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ……………………………….……………………..…... 4, 15

10

*Berry v. Am. Express Publ'g*
    147 Cal.App.4th 224 (Cal.Ct.App. 2007) …………………………….……..…... 16

11

12

*Bonner v. Redwood Mortg. Corp.*
    No. C 10-00479 WHA, 2010 WL 1267069 (N.D. Cal. Mar. 29, 2010) …………..……. 16

13

*Carma Developers, Inc. v. Marathon Dev., Inc.*
    2 Cal.4th 342 (Cal. 1992) …………………………………………………..…..….. 11

14

15

*Cartwright v. Viking Indus., Inc.*
    No. 2:07-CV-02159-FCD-EFB, 2009 WL 2982887 (E.D. Cal. Sept. 14, 2009) ……..... 22

16

*Clayworth v. Pfizer*
    49 Cal.4th 758 (Cal. 2010) ……………………………………….……...….. 23, 24

17

18

*Consumer Solutions REO, LLC v. Hillery*
    658 F.Supp.2d 1002 (N.D. Cal. 2009) …………………………………….......... 17

19

*Cruz v. Pacificare Health Systems, Inc.*
    30 Cal.4th 303 (Cal. 2003) …………………………………………….…….... 23

20

21

*Davis v. Romney*
    490 F.2d 1360 (3d Cir. 1974) …………………………………………....…….... 25

22

*Ebay Inc. v. Mercexchange, LLC*
    47 U.S. 388 (2006) ……………………………………………….........…..…... 24

23

24

*Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*
    436 F.Supp.2d 1095 (C.D. Cal. 2006) …………………………………….......……. 17

25

*Fairbanks v. Sup. Ct.*
    46 Cal.4th 56 (Cal. 2009) ……………………………………………..…...…. 16

26

27

*Fischer v. Machado*
    50 Cal.App.4th 1069 (Cal.Ct.App. 1996) ………………………………..……….. 19

28

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

*Gaines v. Sargent Fletcher, Inc. Grp. Life Ins. Plan*
    329 F.Supp.2d 1198 (C.D. Cal. 2004) ………………………………….…..…..…… 8

*Ghirardo v. Antonioli*
    14 Cal.4th 39 (Cal. 1996) ……………………………………….......................... 22

*Graham v. Scissor-Tail, Inc.*
    28 Cal.3d 807 (Cal. 1981) ………………………………………….…..………… 8

*Gutierrez v. Wells Fargo & Co.*
    622 F.Supp.2d 946 (N.D. Cal. 2009) …………………….…….….……… 16, 18, 19

*Habitat Trust for Wildlife, Inc. v. Rancho Cucamonga*
    175 Cal.App.4th 1306 (Cal.Ct.App. 2009) …………………….…….……….….… 10

*Hernandez v. Hilltop Fin. Mortg., Inc.*
    622 F.Supp.2d 842 (N.D. Cal. 2007) ………………………………………..…… 17

*Hirsch v. Bank of Am.*
    107 Cal.App.4th 708 (Cal.Ct.App. 2003) ……………………………….…….… 22

*In re Apple & AT & TM Antitrust Litig.*
    596 F.Supp.2d 1288 (N.D. Cal. 2008) ………………………………..………….... 21

*In re Easysaver Rewards Litig.*
    No. 09-CV-2094-MMA (BLM), 2010 WL 3259752 (S.D. Cal. Aug. 13, 2010) ….. 18, 19

*In re Facebook PPC Adver. Litig.*
    709 F.Supp.2d 762 (N.D. Cal. 2010) …………………………………..……….. 4, 15

*In re Mattel, Inc.*
    588 F.Supp.2d 1111 (N.D. Cal. 2008) …………………………...……………..… 20, 21

*Jacobs v. Freeman*
    104 Cal.App.3d 177 (Cal.Ct.App. 1980) …………………………………..……….. 8

*Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.*
    636 F.2d 995 (C.D. Cal. 2009) ………………………………………..…....…… 25

*Jefferson v. Chase Home Fin. LLC*
    No. C06-6510 TEH, 2007 WL 1302984 (N.D. Cal. May 3, 2007) ……………....… 17

*Kassa v. BP West Coast Products, LLC*
    No. C-08-02725 RMW, 2008 WL 3494677 (N.D. Cal. Aug. 12, 2008) ………......…… 19

*Knox v. Ameriquest Mortg. Co.*
    No. C 05 00240 SC, 2005 WL 1910927 (N.D. Cal. Aug. 10, 2005) …………….…..… 17

*Labrador v. Seattle Mortg. Co.*
    No. 08-2270 SC, 2008 WL 4775239 (N.D. Cal. Oct. 29, 2008) …………..………...… 17

*Lawrence v. Bank of Am.*
    163 Cal.App.3d 431 (Cal.Ct.App. 1985) …………………………………..……… 18

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

*Lectrodryer v. SeoulBank*
    77 Cal.App.4th 723 (Cal.Ct.App. 2000) ……………………………..…'..…..…'… 22

*Lee v. Gen. Nutrition Cos. Inc.*
    No. CV 00-13550LGB (AJWX), 2001 WL 34032651 (C.D. Cal. Nov. 26, 2001) ..…… 15

*Levin v. Citibank, N.A.*
    No. C-09-0350 MMC, 2009 WL 3008378 (N.D. Cal. Sept. 17, 2009) ……........……12

*Lowery v. Blue Steel Releasing, Inc.*
    No. CV04-8850-DSF (CTx), 2005 WL 6215610 (C.D. Cal. Nov. 2, 2005) ………..…. 19

*Malcolm v. JPMorgan Chase Bank, N.A.*
    No. 09-4496-JF (PVT), 2010 WL 934252 (N.D. Cal. Mar. 15, 2010) ..………….. 11, 12

*Marolda v. Symantec Corp.*
    672 F.Supp.2d 992 (N.D. Cal. 2009) …………………………………….......….…... 21

*Mazur v. eBay Inc.*
    257 F.R.D. 563 (N.D. Cal. 2009) …………………………………….…..……..…… 15

*Mazza v. Am. Honda Co.*
    254 F.R.D. 610 (C.D. Cal. 2008) ……………………………………….......….... 22

*McClain v. Octagon Plaza, LLC*
    159 Cal.App.4th 784 (Cal.Ct.App. 2008) …………………………….…..……..…… 10

*McKell v. Wash. Mut.*
    142 Cal.App.4th 1457 (Cal.Ct.App. 2006) …………………………….......……..…… 18

*Mendiondo v. Centinela Hosp. Med. Ctr.*
    521 F.3d 1097 (9th Cir. 2008) …………………………………………..…………...… 4

*Miletak v. Allstate Ins. Co.*
    No. 06-03778 JW, 2010 WL 809579 (N.D. Cal. Mar. 5, 2010) ………………….….... 22

*Missing Link, Inc v. eBay Inc.*
    No. C-07-04487 RMW, 2008 WL 3496865 (N.D. Cal. Aug. 12, 2008) …………...…… 9

*Nordberg v. Trilegiant Corp.*
    445 F.Supp.2d 1082 (N.D. Cal. 2006) ……………………………….…….…..…… 21

*Oceanside 84, Ltd. v. Fid. Fed. Bank*
    56 Cal.App.4th 1441 (Cal.Ct.App. 1997) …………………………….…………........… 8

*O'Donovan v. CashCall, Inc.*
    No. C08-03174 MEJ, 2009 WL 1833990 (N.D. Cal. June 24, 2009) ………..……..…… 16

*Person v. Google, Inc.*
    No. C06-7297 JF (RS), 2007 WL 832941 (N.D. Cal. Mar. 16, 2007) …………………... 15

*Peterson v. Cellco P'ship*
    164 Cal.App.4th 1583 (Cal.Ct.App. 2008) ……………………………...............… 22

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

*Ponder v. Blue Cross of S. Cal.*
    145 Cal.App.3d 709 (Cal.Ct.App. 1983) ………………………………………...…… 8

*Poseidon Dev., Inc. v. Woodland Lane Estates, LLC*
    152 Cal.App.4th 1106 (Cal.Ct.App. 2007) ………………………….…….....…… 4

*Shahood v. Cavin*
    154 Cal.App.2d 745 (Cal.Ct.App. 1957) …………………………………..………… 19

*Shin v. BMW of N. Am.*
    No. CV 09-00398 AHM (AJWx), 2009 WL 2163509 (C.D. Cal. July 19, 2009) ............ 15

*Somerville v. Stryker Orthopaedics*
    No. C 08-02443 JSW, 2009 WL 2901591 (N.D. Cal. Sept. 4, 2009) ………………...…18

*Stonebrae, L.P. v. Toll Bros., Inc.*
    No. C-08-0221 EMC, 2009 WL 1082067 (N.D. Cal. Apr. 22, 2009) ……………...…… 10

*Ting v. AT&T*
    182 F.Supp.2d 902 (N.D. Cal. 2002) ……………………………………..………… 23

*Van Slyke v. Capital One Bank*
    503 F.Supp.2d 1353 (N.D. Cal. 2007) ……………………………………………… 16

*Vess v. Ciba-Geigy Corp.*
    317 F.3d 1097 (9th Cir. 2003) ……………………………………………..………… 20

*Victoria v. Sup. Ct.*
    40 Cal.3d 734 (Cal. 1985) ……………………………………………...………… 8

*Walters v. Fid. Mortg. of Cal.*
    No. 2:09-cv-3317 FCD/KJM, 2010 WL 1493131 (E.D. Cal. Apr. 14, 2010) ……...…… 22

*Weiss v. Marcus*
    51 Cal.App.3d 590 (Cal.Ct.App. 1975) ……………………………….……..….. 19

*Xechem, Inc. v. Bristol-Myers Squibb*
    372 F.3d 899 (7th Cir. 2004) ………………………………………...….………… 5

STATUTES

Cal. Bus. & Prof. Code § 17200 ……………………………………..…….. 2, 18, 20

Cal. Bus. & Prof. Code § 17203 ………………………………………..………… 23, 24

Cal. Bus. & Prof. Code § 17204 ………………………………………..……….… 24

Cal. Civ. Code § 1654 ……………………………………………..……….… 8

Cal. Civ. Code § 1750 …………………………………………………..……….… 2

Cal. Civ. Code § 1760 ……………………………………..…….…..…….… 17

Cal. Civ. Code § 1761 …………………………………………....………..….... 16

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1    Cal. Civ. Code § 1770 ……………………………………………………..….…. 13, 23

2    Cal. Civ. Code § 1780 ……………………………………………….…..….…...…. 23

3

4                                    RULES & REGULATIONS

5    Fed. Rules of Civ. Proc., Rule 8 ………………………………………...….…... 23

6    Fed. Rules of Civ. Proc., Rule 9 …………………………………...…. 20, 21

7    Fed. Rules of Civ. Proc., Rule 12 ……………………………….…... 1, 4

8    Fed. Rules of Civ. Proc., Rule 23 ………………………………...….…..... 25

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2      Defendant PayPal has filed a motion to dismiss that willfully ignores the well plead

3  allegations of Plaintiffs' complaint.  PayPal instead argues that it has done nothing wrong –

4  arguments that will be difficult to establish at summary judgment let alone on a Rule 12(b)(6)

5  motion.  Plaintiffs' detailed complaint spells out how defendant PayPal – one of the world's

6  largest online payment processing services – has exceeded its contractual authority and has

7  defrauded Plaintiffs by systematically and arbitrarily placing holds on and freezing customers'

8  accounts without providing a specific reason or any proof or other explanation.  First Amended

9  Class Action Complaint ("FAC"), ¶ 7.  PayPal does not challenge that it: (1) places holds on

10  substantial sums of money in the accounts of Class members; (2) refuses to provide an

11  explanation for the holds, thus denying Plaintiffs the opportunity to cure; (3) tells frozen account

12  holders to get a subpoena if they want more information; and (4) freezes the money for up to six

13  months or even longer.  Instead, PayPal contends that the terms of the adhesive User Agreement

14  it imposes on its customers affords it with unlimited discretion to place holds on its customers'

15  accounts.

16      However, the discretion afforded PayPal in the contract to place holds on customer

17  accounts is limited to clearly delineated situations, none of which apply to the holds alleged in the

18  FAC.  Thus, Plaintiffs' allegations regarding PayPal's indiscriminate placement of holds on their

19  accounts adequately state a claim for breach of contract.  Further, PayPal's reliance on three

20  provisions of the agreement it claims authorizes the imposition of certain holds is inapplicable

21  because PayPal has failed to comply with the specific terms of such provisions resulting in further

22  breaches of its contract.  Even if these provisions were found to be applicable, such applicability

23  could only occur through resolution of material ambiguities through the use of extrinsic evidence,

24  making this issue singularly inappropriate for Rule 12 resolution.  Lastly, even if the Court were

25  to accept PayPal's assertion that it has unfettered discretion to place holds on its customers'

26  accounts, California law requires that PayPal exercise this authority in good faith, something

27  Plaintiffs adequately allege PayPal has failed to do.  Accordingly, Plaintiffs' claims are not

28  subject to dismissal.  Likewise, the contract does not justify the conduct that forms the basis of

1    Plaintiffs' claims under California's Consumer Legal Remedies Act, Cal. Civil Code § 1750, *et*

2    *seq.* (the "CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. (the

3    "UCL") and for unjust enrichment.  Accordingly, these claims survive.

4                               **FACTUAL BACKGROUND**

5          When a person opens a PayPal account, he or she is required to agree to the express terms

6    of the PayPal User Agreement, attached to the FAC as Exhibit 1, and cannot alter those terms.  *Id.*

7    ¶ 33.  As with most internet-based businesses, an individual must accept the terms of a User

8    Agreement on the registration webpage.  *Ibid.*

9          PayPal users, after having accepted the terms, create a PayPal account through which their

10   sales transactions are processed.  Thus, a seller of goods over the internet makes their sale and the

11   buyer's funds are deposited in the seller's PayPal account.  The money, once it is in the account

12   of the seller, is the property of the seller.  This case involves PayPal's actions in freezing the

13   funds already placed into the seller's account even though the products for which those funds

14   have been received have already left the possession of the seller.

15         The PayPal User Agreement spells out 25 categories of prohibited behavior (defined in the

16   Agreement as "Restricted Activities") which can trigger an account hold.  For the most part, these

17   25 specifically enumerated "Restricted Activities" are common sense descriptions of obvious

18   misbehavior.  *This case is not about these 25 categories of prohibited behavior.*  PayPal has not

19   claimed it is holding Plaintiffs' money for committing any of these 25 types of acts.  PayPal

20   instead states a far more nebulous reason – "security concerns" – which is unexplained entirely.

21         PayPal claims that there are three specific provisions in the User Agreement which give

22   PayPal the right to place a hold on users' funds:

23         •   Section 10.4, which governs what PayPal can do if the user has engaged in
               "any Restricted Activities" which are the 25 enumerated categories of
24             misbehavior defined in Section 9 of the Agreement: "If we have reason to
               believe that you have engaged in any Restricted Activities, * * * (e) We may
25             hold your funds for up to 180 days if reasonably needed to protect against the
               risk of liability."  FAC, Exh. 1, § 10.4.
26
27         •   Section 10.6, which only relates to eBay and is specific to a particular
               transaction: "PayPal, in its sole discretion, may place a hold on a payment you
28             receive for ***an*** eBay transaction when PayPal believes there may be a high

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

level of risk associated with the transaction . . . PayPal **will release** the eBay item **hold after 21 days** unless you receive a Dispute, Claim, Chargeback, or Reversal on the transaction subject to hold." *Id.* § 10.6 (emphasis added).

- Section 10.7, which relates to the nebulous and undefined "high level of risk": "PayPal, in its sole discretion, may place a Reserve on funds held in your Premier or Business Account when PayPal believes there may be a high level of risk associated with your Account. . . . If your Account is subject to a Reserve, PayPal will provide you with **notice specifying the terms of the Reserve**." *Id.* § 10.7 (emphasis added).

PayPal's interpretation of these provisions utterly fails to square the specific definition of the 25 Restricted Activities – each of which on its face suggests an account is engaged in activities that carry a high level of risk – with the use of the "high level of risk" language PayPal apparently is relying on to justify its manifestly unreasonable behavior.

In addition to the lack of contractual basis for PayPal's fund "hold" practices, PayPal's process is absurdly opaque – it informs users of the hold on their funds through use of a form email which provides *no information* as to why a hold was placed on their account and/or why their account was going to be limited/suspended for a period of time up to 180 days.  FAC, ¶¶ 42-43.  This vague email informs users that their funds are being held for the following non-explanatory reasons: "excessive risk involved", "security issues", or "suspicious activity."  ***These terms are not defined in the PayPal User Agreement, and they are not terms that are used in any of the three sections of the Agreement PayPal relied on in its motion to dismiss.***  When users asked PayPal's Resolution Center for information regarding the reasons why their account had a hold placed on it, as required by the User Agreement, they were met with non-responsive and unhelpful customer service employees, "canned" responses, and/or a litany of requests for additional documentation, including social security numbers and other personal information.  *Id.* ¶ 44.  Providing the additional documents proved fruitless, as PayPal continues to withhold information regarding why the hold was placed, providing only a form email stating that they are unable to provide more information as to why there is a hold on the users' accounts: "If you would like to obtain copies of the information we reviewed in deciding to place a limitation on your account, you will need to obtain a court order or subpoena."  *Id.* ¶ 45.

PayPal's hold and reserve notices set forth no guidance or criteria which would permit

1  customers the opportunity to structure their transactions in a manner that avoids PayPal's hold

2  policies.  FAC, ¶ 49.  Additionally, when PayPal finally releases the funds, it retains the interest

3  that accrued while Plaintiffs and the Class were frozen from their accounts.  *Id.* ¶ 47.  As a result

4  of PayPal's actions, Plaintiffs and the Class have suffered damages.  *Id.* ¶ 48.

5  <u>**LEGAL STANDARD**</u>

6      Dismissing a complaint pursuant to Rule 12(b)(6) "is appropriate only where the

7  complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal

8  theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  "For

9  purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must

10 construe the complaint in the light most favorable to the plaintiff."  *In re Facebook PPC Adver.*

11 *Litig.*, 709 F.Supp.2d 762, 767-68 (N.D. Cal. 2010) (*citing Jenkins v. McKeithen*, 395 U.S. 411,

12 421 (1969)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

13 accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial

14 plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

15 inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct.

16 1937, 1949 (2009) (*citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 570 (2007)).  Plaintiffs'

17 claim is much more than merely "plausible."

18 <u>**ARGUMENT**</u>

19 I.    **PLAINTIFFS HAVE ADEQUATELY PLED THEIR BREACH OF**
       **CONTRACT CLAIM.**
20

21      A.    **PayPal is Breaching the User Agreement by Withholding Funds That**
             **Belong to Plaintiffs and the Class Without Any Valid Basis.**

22      A cause of action for breach of contract requires: (1) a contract; (2) plaintiff's

23 performance; (3) defendant's breach; and (4) damages.  *See Poseidon Dev., Inc. v. Woodland*

24 *Lane Estates, LLC*, 152 Cal.App.4th 1106, 1111 (Cal.Ct.App. 2007).  Plaintiffs allege that: (1)

25 they and the other Class members entered into contracts with PayPal; (2) Plaintiffs and Class

26 members performed their obligations under the contract; (3) PayPal breached the contract by

27 restricting Plaintiffs' and the Class's access to and use of monies belonging to them; and (4)

28 Plaintiffs and Class members were damaged by PayPal's breach of the contract since they did not

- 4 -

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1    have access to funds that lawfully belonged to them.  FAC, ¶¶ 3, 8-15, 37-39, 48, 68-72, 76.

2    These allegations state a proper claim for breach of contract.

3            The User Agreement is a binding contract between PayPal and its customers in which

4    PayPal agrees to act as a "Payment Service Provider" by helping its customers "make payments

5    and accept payments from third parties."  FAC, Exh. 1, § 1.1.  Under the User Agreement,

6    PayPal's customers retain an "ownership right to the principal of the funds" held by PayPal,

7    PayPal is obligated to keep those funds "separate from its corporate funds," and customers with a

8    balance in their PayPal account are entitled to withdraw those funds at any time.  *Id.* §§ 5.1, 5.2,

9    6.1.  By holding the funds of Plaintiffs and the Class without any contractual basis to do so,

10   PayPal is breaching the contract, thereby damaging Plaintiffs and the other members of the Class.

11                    **B.      PayPal is Breaching the User Agreement's Restrictions on
                               Withholding Funds.**

12

13           PayPal apparently seeks to justify its refusal to provide Plaintiffs and the Class with

14   access to their own funds based on several provisions in Section 10 of the User Agreement that

15   provide PayPal with a limited right to withhold funds in certain enumerated circumstances and

16   under specific conditions.  However, none of the three contract terms cited by PayPal authorize

17   the arbitrary and **indiscriminate** holds at issue here.  Indeed, to the extent PayPal is relying on

18   any of those Section 10 provisions as the basis for its conduct, PayPal is further breaching the

19   User Agreement by failing to honor the terms of those provisions.[1]

20                    **1.      PayPal is Breaching Section 10.4 of the User Agreement.**

21           In support of placing holds on Plaintiffs' accounts, PayPal first cites to Section 10.4,

22   which addresses PayPal's rights in the event PayPal has reason to believe a customer has engaged

23   in any of the 25 specifically defined and enumerated "Restricted Activities."  However, PayPal

24   concedes that Plaintiffs have sufficiently alleged that Section 10.4 of the User Agreement does

---

[1]  PayPal's motion also faults Plaintiffs for allegedly failing to plead the inapplicability of the
contract terms upon which PayPal relies.  *See* MTD, p. 6:5-10.  To the extent any of these narrow
exceptions apply to any of the account holds at issue here, PayPal is entitled to raise those
exceptions as an affirmative defense.  It is not Plaintiffs' burden, however, to anticipate and then
plead facts that negate this or any other affirmative defenses PayPal may raise.  *Xechem, Inc. v.
Bristol-Myers Squibb*, 372 F.3d 899, 901 (7th Cir. 2004).  Rather, Plaintiffs burden is to plead
facts that establish each element of Plaintiffs' claims, which Plaintiffs have done.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1   not apply to authorize the conduct at issue here because Plaintiffs have committed none of the 25

2   Restricted Activities.  *See* MTD, pp. 5:17-18, 6:5-6.  Indeed, to the extent PayPal is relying upon

3   Section 10.4 as the basis for the holds at issue here, PayPal has breached that provision by

4   holding funds: (1) without any reason to believe that Plaintiffs and the other Class members have

5   engaged in a Restricted Activity; (2) without any reasonable need to protect against the risk of

6   liability; and (3) for longer than 180 days.  *See* FAC, ¶¶ 39, 70, 71 and Exh. 1, § 10.4.e.  Notably,

7   the letters PayPal sent to Plaintiffs and the Class informing them that their funds were being held

8   did not cite to Section 10.4, did not allege that a Restricted Activity had occurred, and did not

9   claim that the holds were "reasonably needed to protect against the risk of liability."  *Id.* ¶¶ 42-43.

10                      **2.      PayPal is Breaching Section 10.6 of the User Agreement.**

11          Second, PayPal cites to Section 10.6, which only authorizes transaction-specific, 21-day

12   holds for eBay sales.  FAC, Exh. 1, § 10.6.  To the extent PayPal is relying upon Section 10.6 as

13   the basis for the conduct at issue here, PayPal has breached it by: (1) using that provision to hold

14   funds related to transactions that were not conducted on eBay; (2) holding funds for longer than

15   21 days; and (3) placing holds on entire account balances, or percentages of entire account

16   balances, in a manner that is not transaction-specific.  *Id.* ¶¶ 37-39, 70, 71.  Notably, the letters

17   PayPal sent to Plaintiffs and the Class informing them that their funds were being held did not

18   cite to Section 10.6, did not cite to any particular transaction, and did not allege that there was a

19   "high level of risk associated with the transaction."  *Id.* ¶¶ 42-43.

20                      **3.      PayPal is Breaching Section 10.7 of the User Agreement.**

21          Third, PayPal cites to Section 10.7, which authorizes PayPal to place a "Reserve" on

22   funds held in a "Premier or Business Account" when PayPal believes "there may be a high level

23   of risk associated with" an account.  FAC, Exh. 1, § 10.7.  A "Reserve" is defined as "a

24   percentage of the funds received into" an account, which PayPal holds "in order to protect against

25   the risk of Reversals, Chargebacks, Claims or any other liability related to" an account or a

26   customer's use of the service.  *Id.* § 15.av.  In the event of a Section 10.7 hold, the User

27   Agreement obligates PayPal to provide "notice specifying the terms of the Reserve," including

28   any term "that PayPal determines is necessary to protect against the risk" associated with an

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

account. *Id.* § 10.7.[2]

Section 10.7 does not itself define the scope of the nebulous risk against which PayPal claims it is entitled to protect itself. However, the risk at issue must be determined within the four corners of the contract as a whole. Because Section 9 enumerates a comprehensive list of 25 "Restricted Activities" that PayPal prohibits its customers from engaging in, and because those activities all would create a "high level of risk" were they to occur[3], the most reasonable interpretation of the risk at issue in Section 10.7 is the risk that customers will engage in those prohibited activities, thereby resulting in potential liability for PayPal.[4] Because Plaintiffs allege that PayPal has no reason to believe that Plaintiffs or the other members of the Class engaged in any Restricted Activities, PayPal has breached Section 10.7 to the extent is seeks to justify its conduct based on that provision. *See* FAC, ¶ 36.[5] Notably, the letters PayPal sent to Plaintiffs and the Class informing them that their funds were being held did not cite to Section 10.7, did not claim that any Restricted Activities had occurred, and did not allege that there was a "high level of risk associated with" their accounts. *Id.* ¶¶ 42-43.

---

[2] As an initial matter, because PayPal offers three types of accounts ("Personal," "Premier" and "Business"), and because the FAC does not allege which type of account each Plaintiff holds, PayPal has not demonstrated that Section 10.7 could even apply to any of the Plaintiffs. To the extent PayPal is relying on Section 10.7 to justify withholding access to funds in Personal accounts, PayPal is in breach of Section 10.7.

[3] Section 9 Restricted Activities include: "sell counterfeit goods", "Send or receive what we reasonably believe to be potentially fraudulent funds", "provide false, inaccurate or misleading information", "Allow your Account to have a negative Balance" and "Use your Account or the Services in a manner that PayPal, Visa, MasterCard, American Express, Discover or any other electronic funds transfer network reasonably believes to be an abuse of the card system or a violation of card association or network rules." FAC, Exh. 1, § 9.

[4] There is a dissonance here between defined and undefined terms. Section 9 of the User Agreement defines "Restricted Activities" with an enumerated list of 25 prohibited activities, which is then used in Section 10.4. By contrast, Section 10.7's "high level of risk" language is undefined and is vague and ambiguous unless interpreted in line with the "Restricted Activities" delineated in Section 9. This contractual dissonance between defined and undefined terms must be resolved in Plaintiffs' favor because the User Agreement a contract of adhesion.

[5] Alternatively, the risk at issue in Section 10.7 could be determined by the definition of "Reserve," which is a percentage of funds withheld "to protect against the risk of Reversals, Chargebacks, Claims, or any other liability related to your account and/or use of the Services." FAC, Exh. 1, § 15.av. Because Plaintiffs allege that PayPal's withholding of funds was not "reasonably needed to protect against the risk of liability," PayPal is also breaching Section 10.7 under this interpretation to the extent it is relying upon Section 10.7 to justify its conduct.

The plain language of Section 10.7 defeats any reliance by PayPal on that provision to justify its conduct here.  PayPal's citation to that provision becomes even more misguided when considered in the context of this case and the applicable rules of contract interpretation.  Since the User Agreement was drafted by PayPal, any ambiguity must be strictly construed against PayPal.[6]  Furthermore, since the Agreement was drafted by PayPal and presented to Plaintiffs and members of the Class without any opportunity to negotiate the provisions, it is a contract of adhesion which must meet strict clarity and conspicuousness standards.  As California courts have made clear, it is "not enough" that the language at issue in a contract of adhesion "could be deemed to be precise," but it must also be "conspicuous" and "plain and clear" and, "[b]ecause of the nature of the contract and the contracting parties, the most precise language imaginable may prove insufficient."  *See Ponder v. Blue Cross of S. Cal.*, 145 Cal.App.3d 709, 718-19 (Cal.Ct.App. 1983).  As a further aspect of this "conspicuousness," adhesion contracts must be interpreted to avoid disappointing the reasonable expectations of the customer.  *Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 820 (Cal. 1981).

Here, PayPal markets and sells its payment processing service based on two principal features: (1) immediate access to funds; and (2) secure transactions.  FAC, ¶¶ 89, 106.  PayPal's User Agreement and advertising both emphasize these aspects of the service.  *Ibid.*  PayPal's practice of arbitrarily and indiscriminately holding customers' funds for indefinite periods and without explanation undermine both of these aspects of the service since sellers are deprived of immediate access to their funds and since the security of a transaction is worthless if the intermediary (PayPal) can retain the funds on a whim.  A reasonable customer reviewing the agreement and PayPal's advertising would not expect that Section 10.7 (or any other provision in

---

[6]  *See* Cal. Civ. Code § 1654 ("In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."); *see also Gaines v. Sargent Fletcher, Inc. Grp. Life Ins. Plan,* 329 F.Supp.2d 1198, 1216 (C.D. Cal. 2004); *Victoria v. Sup. Ct.,* 40 Cal.3d 734, 739 (Cal. 1985); *Oceanside 84, Ltd. v. Fid. Fed. Bank,* 56 Cal.App.4th 1441, 1448, (Cal.Ct.App. 1997) ("A well-settled maxim states the general rule that ambiguities in a form contract are resolved against the drafter."); *Jacobs v. Freeman,* 104 Cal.App.3d 177, 189 (Cal.Ct.App. 1980) ("If the uncertainty is not removed by application of the other rules of interpretation, a contract must be interpreted most strongly against the party who prepared it.  This last rule is applied with particular force in the case of adhesion contracts." (internal citations omitted)).

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1    the contract) could be used by PayPal to eviscerate these two fundamental aspects of the service.

2    Indeed, any reasonable customer would not choose to use PayPal to process a sale if the customer

3    knew that PayPal may retain the seller's funds indiscriminately and indefinitely.

4          PayPal exercised complete control over the drafting of the User Agreement and could

5    have easily included a broad right to withhold seller funds.  FAC, ¶ 33.  Nevertheless, PayPal

6    chose to sell its service by enticing customers with promises of immediate access to funds and

7    secure transactions, and only retained the right to withhold funds in certain narrow exceptions.

8    *Id.* ¶¶ 34-36.  Because these narrow exceptions must be strictly construed against PayPal, any

9    question as to their applicability must be resolved in Plaintiffs' favor.

10         Finally, any reliance by PayPal on Section 10.7 to justify its withholding of Plaintiffs' and

11   the other Class members' funds is also misplaced since that provision requires PayPal to provide

12   "notice specifying the terms" of the hold.  FAC, Exh. 1, § 10.7.  PayPal's failure to provide

13   sufficient notice to Plaintiffs and the Class is a further breach of Section 10.7 to the extent PayPal

14   is seeking to justify its actions under that section.

15         The cases relied upon by Defendant are all distinguishable since in each of those cases it

16   was undisputed or indisputable that the defendant was authorized by the underlying contract to

17   engage in the conduct at issue.  For example, in *Missing Link, Inc v. eBay Inc.*, No. C-07-04487

18   RMW, 2008 WL 3496865 (N.D. Cal. Aug. 12, 2008), the contract authorized eBay to increase its

19   fees with appropriate notice, and it was undisputed that eBay had provided the requisite notice.

20   Here, by contrast, Plaintiffs dispute the applicability of the contract provisions relied upon by

21   PayPal (which are inapplicable on their face), and Plaintiffs allege that PayPal did not provide

22   appropriate notice of the reasons for holding Plaintiffs' funds.

23          **C.    PayPal has Substantively Breached the User Agreement by Failing to
                     Refer to Any of Its Terms in Its Communications with Plaintiffs.**
24

25         The User Agreement does not afford PayPal the power to arbitrarily place holds on users'

26   accounts absent a breach (FAC, ¶¶ 7, 38), and PayPal's own motion admits its purported authority

27   is drawn solely from Sections 10.4, 10.6, and 10.7 of that Agreement.  PayPal has not asserted

28   that Plaintiffs have breached Sections 10.4, 10.6 or 10.7 in their communications with Plaintiffs.

- 9 -

PayPal's assertion that a hold is justified by "excessive risk" and the other language PayPal uses in the letters sent to Plaintiffs and the Class informing them of the holds does not assert a breach of Sections 10.4, 10.6, or 10.7 because that language appears nowhere in those sections.  *Id.* ¶¶ 42-45.  PayPal's notice letters do not specifically refer the PayPal user to a section of the Agreement upon which its actions are predicated, nor does it tell the Plaintiff what they have purportedly done to justify the account hold action.  Absent a breach by Plaintiffs, PayPal's actions constitute a breach.

> **D.      PayPal is Depriving Plaintiffs and the Class of Their Contractual Right to Cure Any Alleged Breach.**

Regardless of the purported contractual basis for PayPal's actions, PayPal's outright refusal to provide Plaintiffs and the Class with any explanation for the basis of its holds violates the fundamental contract principle that a non-breaching party is required to provide the breaching party with notice of the alleged breach and an adequate opportunity to cure the alleged breach. *See, e.g., Stonebrae, L.P. v. Toll Bros., Inc.*, No. C-08-0221 EMC, 2009 WL 1082067 (N.D. Cal. April 22, 2009).  If PayPal believes that Plaintiffs and the Class are engaging in activities that expose PayPal to a risk of liability such that PayPal is entitled to withhold their funds, PayPal is obligated to inform Plaintiffs and the Class with sufficient information to address the alleged risk and thereby gain access to their funds.  By refusing to do so, PayPal is failing to mitigate its own potential damages (by permitting the alleged prohibited activity to continue) and failing to provide Plaintiffs and the Class with their contractual opportunity to cure the alleged breach.

> **E.      Plaintiffs Have Adequately Alleged That Defendant Breached the Covenant of Good Faith and Fair Dealing Implied in the Contract.**

"Generally, every contract . . . imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784, 798 (Cal.Ct.App. 2008).  This covenant "requires that neither party do anything that will injure the right of the other to receive the benefits of the contract." *Habitat Trust for Wildlife, Inc. v. Rancho Cucamonga*, 175 Cal.App.4th 1306, 1332 (Cal.Ct.App. 2009).  From the perspective of sellers who use PayPal to process payments, the benefits of the User Agreement is to ensure immediate and secure access to funds from third parties for goods and services.

1    PayPal's practice of arbitrarily and indiscriminately holding funds that belong to Plaintiffs and the

2    Class for indefinite periods of time and without explanation deprives Plaintiffs and the Class of

3    these benefits of the contract.  FAC, ¶¶ 38, 39, 42-45, 48, 73-75.  Therefore, Plaintiffs have

4    adequately pled a claim for breach of the implied covenant of good faith and fair dealing.

5         PayPal argues that Plaintiffs' breach of implied covenant claim should be dismissed as

6    "superfluous" to Plaintiffs' breach of contract claim.  PayPal's moving papers demonstrate the

7    fallacy of its position.  Defendant's purported justification for holding Plaintiffs' funds is that the

8    contract provides it with unfettered discretion to impose the holds at issue.  MTD, p. 6:10.  As set

9    forth above, Defendant's contention regarding the discretion afforded it in the contract is wrong.

10   However, to the extent the contract grants Defendant certain discretion, the implied covenant

11   imposes an obligation on PayPal to exercise that discretion in good faith and in a manner

12   consistent with the reasonable expectations of the party against whom the discretionary authority

13   is used. *Carma Developers, Inc. v. Marathon Dev., Inc.*, 2 Cal.4th 342, 372 (Cal. 1992) ("The

14   covenant of good faith finds particular application in situations where one party is invested with a

15   discretionary power affecting the rights of another.  Such power must be exercised in good

16   faith.").  Thus, even if the Court were to find that PayPal's actions do not violate the express

17   provisions of the contract, its practice of exercising its discretionary authority to arbitrarily,

18   indiscriminately, for indefinite periods, and without explanation place reserves or holds on

19   Plaintiffs' accounts still violates the implied covenant of good faith and fair dealing.

20        In this respect, this case is analogous to *Malcolm v. JPMorgan Chase Bank, N.A.*, No. 09-

21   4496-JF (PVT), 2010 WL 934252 (N.D. Cal. Mar. 15, 2010).  In *Malcolm*, plaintiffs entered into

22   an agreement for a home equity line of credit with the defendant.  Subsequently, the defendant

23   revalued plaintiffs' property, and did not inform plaintiffs of the methods used to revalue the

24   property.  Plaintiffs filed suit, alleging, among other causes of action, that the defendant's actions

25   of revaluing the property without informing them of the methods for doing so breached the

26   implied covenant of good faith and fair dealing.  The court held that

27                    [a]llegations that Defendant claimed that the property value had declined
                     without a sufficient factual basis, failed to provide specific information as
28                   to how it reached that conclusion, and then required the borrower to pay

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

the cost of an appraisal to show otherwise are sufficient to state a claim for
breach of the implied covenant of good faith and fair dealing.

*Id.* at *6.   Similarly, Plaintiffs here allege that PayPal is holding Plaintiffs funds without
providing notice as to the reasons why their funds are being held.  FAC, ¶¶ 3, 5, 7.  Further,
Plaintiffs allege that when Plaintiffs and the Class ask PayPal for additional information regarding
the holds, PayPal tells Plaintiffs and the Class to get a subpoena.  *Id.* ¶¶ 5, 45.

PayPal cites to *Levin v. Citibank, N.A.*, No. C-09-0350 MMC, 2009 WL 3008378 (N.D.
Cal. Sept. 17, 2009), to support its argument that Plaintiffs' breach of implied covenant of good
faith claim is superfluous.  MTD, at p. 7.  In *Levin*, the court held that "[b]ecause the time by
which Citibank is required to provide notice is addressed by an express provision of the HELOC,
Levin may not base a claim for breach of the implied covenant of good faith and fair dealing on a
theory Citibank failed to provide timely notice of the subject determination."  *Levin*, *supra* at *5.
This case does not provide support for PayPal's argument because here Plaintiffs allege that
PayPal is holding their funds "through exploiting nonexistent contract terms or vague and
unjustified contract language and interpretation."  FAC, ¶ 39.  The PayPal User Agreement does
not contain an express provision regarding when and what PayPal has to tell Plaintiffs.  *Id.* ¶¶ 43,
44.  Nor does it contain a provision explaining that Plaintiffs and the Class must obtain a
subpoena in order to receive information regarding holds on their accounts.  *Id.* ¶ 45.  Because
these issues are not addressed by the contract, *Levin* is inapposite.

PayPal also argues that Plaintiffs' breach of implied covenant claim should be dismissed
because Plaintiffs have "contractually authorized PayPal to engage in the precise conduct that
they now challenge."  MTD, at p. 8.  PayPal's argument is wrong for the reasons stated above: the
User Agreement does not authorize the arbitrary holds at issue here.  Furthermore, PayPal's
argument ignores its obligation under the implied covenant to exercise any discretion it retained
for itself in a manner that does not frustrate Plaintiffs' benefit of the bargain.[7]

---

[7]  Because the User Agreement does not authorize the conduct at issue, PayPal is wrong that the
terms of the contract defeat Plaintiffs' other claims.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1

## II.    PLAINTIFFS ADEQUATELY ALLEGE A CLAIM UNDER THE CONSUMER LEGAL REMEDIES ACT.

2

3

The CLRA proscribes certain unfair or deceptive practices in connection with the sale or

4

lease of consumer goods or services.  PayPal argues that Plaintiffs have failed to state a claim

5

under the CLRA because: (1) Plaintiffs have not alleged that their transactions with PayPal were

6

for personal, family or household purposes; and (2) PayPal does not offer a good or service

7

subject to the CLRA.  PayPal is wrong on both counts.

8

The FAC explicitly alleges that: (1) PayPal operates an online payment processing

9

service; (2) Plaintiffs and the other Class members use the service for personal, family or

10

household purposes; (3) PayPal promises in its contract and advertising that the service will

11

provide sellers with instant and secure access to funds from buyers; (4) contrary to PayPal's

12

promises, PayPal routinely holds sellers' funds, including funds belonging to Plaintiffs and the

13

Class, without justification or explanation; and (5) PayPal fails to disclose material information

14

regarding its practice of routinely and indiscriminately withholding sellers' funds.  *See, e.g.,* FAC,

15

¶¶ 2-5, 7, 24, 36-39, 42-50, 88-95.  If proven true, these allegations will establish that PayPal

16

represented that its services has characteristics, uses, benefits or qualities which it does not, and

17

that PayPal advertised the service without the intent to provide it as advertised.  *See* Cal. Civ.

18

Code §§ 1770(a)(5), (a)(7), (a)(9).  Therefore, Plaintiffs have adequately alleged a claim under

19

the CLRA.

### A.    Plaintiffs Allege Consumer Transactions Subject to the CLRA.

20

Plaintiffs allege that they and the other putative Class members "have used the [PayPal]

21

service for personal, family and/or household purposes."  FAC, ¶ 88.  This presumptively true

22

allegation is sufficient to allege consumer transactions subject to the CLRA.

23

Nevertheless, Defendant argues that Plaintiffs' allegations that they use PayPal as

24

"sellers" of merchandise establishes that they used PayPal for business rather than personal,

25

family or household purposes.  MTD, p. 9:23.  PayPal's argument conflates a seller with a

26

business, and ignores the indisputable fact that many of PayPal's customers – including Plaintiffs

27

and the other Class members – use the service to facilitate the sale of goods or services for

28

1    personal, family or household purposes.  Thus, for example, a parent who uses PayPal to process

2    the payment for the sale of his or her child's outgrown clothing, or a golfer selling old golf clubs,

3    does not use the service for business purposes just because he or she is selling instead of buying

4    goods.  Indeed, PayPal's own advertising recognizes that individuals use the service to sell items

5    for non-business purposes: "'PayPal enables any individual or business to pay and get paid online

6    safely and easily.'"  FAC, ¶ 89 (*quoting* PayPal's website).[8]

7          PayPal also suggests that the terms of its User Agreement negates Plaintiffs' allegation of

8    consumer use because the agreement provides that "Premier" or "Business" account holders may

9    not "establish" such an account "primarily" for personal, family or household purposes.  FAC,

10   Ex. 1, § 2.2.  As an initial matter, because PayPal offers three types of accounts ("Personal,"

11   "Premier" and "Business"), and because the FAC does not allege which type of account each

12   Plaintiff holds, PayPal has not demonstrated that this provision even applies to any of the

13   Plaintiffs.  Furthermore, even if PayPal required Plaintiffs to upgrade to Premier or Business

14   accounts, such account status does not preclude use of the service for personal, family or

15   household purposes.  Instead, the provision states that a customer may not "establish" a Premier

16   or Business account "primarily" for such purposes.  Because Premier and Business account

17   holders can and do use their accounts for both business and personal sales, the User Agreement

18   provision relied upon by PayPal is a red herring.[9]

19         PayPal also mischaracterizes Plaintiffs' allegation that they used the services for personal,

20   family or household purposes as a "bare" legal conclusion that the Court need not accept as true.

21   MTD, at p. 10:12-23.  While courts need not accept a complaint's legal conclusions as true, the

22

23   ---

     [8]  *See also* http://www.paypal-apac.com/sg/how-does-paypal-work/paypal-for-sellers.aspx

24   ("PayPal makes it easy to send and receive online payments, whether you're doing it for business
     or personal reasons . . . .") (visited Nov. 18, 2010).

25   [9]  Thus, for example, while plaintiff Moises Zepeda alleges that he uses PayPal to process
     payments for his gift card business (FAC, ¶ 8), that allegation does not negate nor contradict his

26   allegation that he also uses PayPal for personal, family or household purposes (*id.* ¶ 88).  (Mr.
     Zepeda's allegations are also irrelevant as he intends to file a notice of withdrawal as a plaintiff

27   and is no longer seeking to be appointed as a class representative.)  Additionally, this dual use
     issue can be easily addressed at the remedies phase of the case by limiting the recovery of CLRA

28   damages to personal, family or household transactions.

1    allegation at issue here – the purpose for which Plaintiffs used the service – is a factual question

2    that is subject to the ordinary presumption of truth.  *In re Facebook,* 709 F.Supp.2d at 767-68.

3    Furthermore, PayPal's argument disregards the other allegations in the complaint that support the

4    conclusion that Plaintiffs use the service for personal, family or household purposes.  *See, e.g.,*

5    FAC, ¶ 2 (PayPal's service provides "***individuals*** and businesses the ability to accept payment for

6    goods or services"), ¶ 3 (case challenges holding of funds "in the accounts of entities ***and***

7    ***consumers*** that have collected payments for product and service sales"), ¶ 41 (practice of holding

8    sellers' funds "has met widespread disappointment and anger from ***consumers*** around the

9    country"), ¶ 88 (Defendant's activities "are addressed to the ***consumer market***"), *and* ¶ 111

10   (Defendant's conduct is "substantially injurious to ***consumers***") (emphases added).  Plaintiffs'

11   allegation of consumer use is also supported by Defendant's own advertising, which explicitly

12   acknowledges that individuals use the service to sell items for non-business purposes.  *Id.* ¶ 89;

13   *see also* fn. 8, *supra*.  These presumptively true allegations are sufficient to establish consumer

14   use under the CLRA.

15          None of the cases relied upon by PayPal support its position that the FAC does not

16   sufficiently allege consumer use.  In virtually all of the CLRA cases cited by PayPal, the plaintiff

17   failed to make any allegation that he or she was a consumer under the CLRA,[10] it was undisputed

18   that the plaintiff had not been using the services at issue for personal, family or household

19   purposes,[11] or both.[12]  In contrast, Plaintiffs here clearly allege that they use PayPal's service for

20   personal, family or household purposes.  FAC, ¶ 88.  Finally, because it is not only plausible but

21   demonstrably and indisputably true that many individuals use PayPal to process payments for

22   personal, family or household purposes, PayPal's reliance upon *Twombly* and its progeny is

23

24   _____

25   [10] *Shin v. BMW of N. Am.*, No. CV 09-00398 AHM (AJWx), 2009 WL 2163509, at *3 (C.D. Cal. July 19, 2009).

26   [11] *Person v. Google, Inc.*, No. C06-7297 JF (RS), 2007 WL 832941, at *7 (N.D. Cal. March 16, 2007); *and Mazur v. eBay Inc.*, 257 F.R.D. 563, 568 (N.D. Cal. 2009).

27
28   [12] *Lee v. Gen. Nutrition Cos. Inc.*, No. CV 00-13550LGB (AJWX), 2001 WL 34032651, at *10 (C.D. Cal. Nov. 26, 2001).

1    misplaced.  *See* MTD, p. 10:15-23.[13]

2              **B.     The CLRA Applies to Defendant's Payment Processing Services.**

3         The CLRA broadly defines "services" as "work, labor, and services for other than a

4    commercial or business use, including services furnished in connection with the sale or repair of

5    goods."  Cal. Civ. Code § 1761(b).  As set forth in its own self-description, PayPal furnishes

6    services in connection with the sale of goods and services.  PayPal describes itself as a "global

7    leader in online payment solutions,"[14] and its own User Agreement describes itself as a "Payment

8    Service Provider."  FAC, Ex. 1, § 1.  Nevertheless, PayPal argues that it does not provide any

9    services and is thus immune from liability under the CLRA.  Because PayPal is offering a service

10   under any understanding of the word, the Court should reject PayPal's attempt to avoid

11   application of the CLRA.

12        The cases relied upon by PayPal involve a narrow exception for credit card, loan and

13   insurance transactions that were expressly carved out of the CLRA's definition of service when

14   the Legislature enacted the statute.  In each of those cases, the courts relied on the legislative

15   history discussing the decision not to include the provision of "money or credit" or "insurance" as

16   activities subject to the CLRA when dismissing CLRA claims based on those services.  *See*

17   *Gutierrez v. Wells Fargo & Co.*, 622 F.Supp.2d 946, 957 (N.D. Cal. 2009) (debit card);

18   *O'Donovan v. CashCall, Inc.*, No. C08-03174 MEJ, 2009 WL 1833990, at *5 (N.D. Cal. June 24,

19   2009) (electronic debits, but leave to amend granted to allege additional services); *Van Slyke v.*

20   *Capital One Bank*, 503 F.Supp.2d 1353, 1359 (N.D. Cal. 2007) (credit); *Fairbanks v. Sup. Ct.*, 46

21   Cal.4th 56, 61 (Cal. 2009) (life insurance); *Ball v. Fleet Boston Fin. Corp.*, 164 Cal.App.4th 794,

22   798 (Cal.Ct.App. 2008) (credit card); *and Berry v. Am. Express Publ'g*, 147 Cal.App.4th 224, 230

23

---

[13]   PayPal also cites to inapposite, non-CLRA cases like *Bonner v. Redwood Mortg. Corp.*, No. C
24   10-00479 WHA, 2010 WL 1267069, at *10 (N.D. Cal. Mar. 29, 2010).  *Bonner* was a truth-in-
lending and unfair debt collection case involving a mortgage loan in which the plaintiff alleged
25   that the underlying property was "residential," but failed to allege that the property was the
plaintiff's "primary residence" as required to state a valid claim.  *Id.* at *1.  Because the property
26   shared the same address as the office of plaintiff's counsel, the *Bonner* court dismissed the
complaint with leave to amend.  *Id.* at *11.

27
[14]   *See* https://www.paypal.com/sg/cgi-bin/marketingweb?cmd=p/gen/about-outside (visited Nov.
28   18, 2010).

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1    (Cal.Ct.App. 2007) (credit card).  Here, however, Plaintiffs do not allege that PayPal extends

2    credit, lends money, or insures against risk.  Rather, as alleged and as PayPal admits, PayPal

3    provides payment services that facilitate the exchange of money between third parties.  The

4    Legislature made no exception for this type of service when it enacted the CLRA.  Thus, the

5    holding of the cases cited by PayPal and the legislative history upon which those holdings are

6    based do not apply.

7         Other courts have recognized that the CLRA applies to financial services other than the

8    narrow credit, loan and insurance limitations addressed by the statute's legislative history.  *See,*

9    *e.g., Hernandez v. Hilltop Fin. Mortg., Inc.*, 622 F.Supp.2d 842, 851 (N.D. Cal. 2007) (mortgage

10   loan services); *Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F.Supp.2d 1095 (C.D. Cal.

11   2006) (financial planning services are covered but insurance is not).[15]  As explained by one court,

12   reading further exceptions to the CLRA's reach would conflict with the Legislature's directive

13   that the CLRA be applied broadly to achieve its protective purposes.  *See* Cal. Civ. Code § 1760;

14   *Jefferson v. Chase Home Fin. LLC*, No. C06-6510 TEH, 2007 WL 1302984, at *3 (N.D. Cal.

15   May 3, 2007).  Because PayPal's payment services are akin to financial services that other courts

16   have found to be within the purview of the CLRA, and because there is nothing in the statute or

17   its legislative history that excludes payment processing services from its purview, the Court

18   should reject PayPal's attempt to immunize itself from the CLRA.

19        **III.    PLAINTIFFS ADEQUATELY ALLEGE A CLAIM UNDER THE UNFAIR
                   COMPETITION LAW.**

20

21        Plaintiffs allege that PayPal's indiscriminate placement of holds on Plaintiffs' accounts

     without disclosing that it will do so and while promoting the service as providing Plaintiffs with
22

23   immediate access to transferred funds, constitutes unlawful, unfair and deceptive acts under the

24   ─────────────────
     [15]   There is a split of authority as to whether the CLRA applies to mortgage loan services
25   ancillary to the actual lending of money to purchase a home.  *See, e.g, Consumer Solutions REO,
     LLC v. Hillery*, 658 F.Supp.2d 1002, 1017 (N.D. Cal. 2009) (mortgage loan services not covered).
26   While most of the cases favor applying the CLRA to such services, the Court need not resolve
     this disagreement to conclude that PayPal's payment processing services, which do not involve
     any lending activities, are covered by the CLRA.  *See also Labrador v. Seattle Mortg. Co.*, No.
27   08-2270 SC, 2008 WL 4775239, at *5 (N.D. Cal. Oct. 29, 2008) (mortgage loan services covered
     by CLRA); *Knox v. Ameriquest Mortg. Co.*, No. C 05 00240 SC, 2005 WL 1910927, *4 (N.D.
28   Cal. Aug. 10, 2005) (same).

1  UCL.  FAC, ¶¶ 101-113.  Plaintiffs allege that PayPal violates a number of laws and those

2  violations serve as predicate unlawful acts under the UCL: (1) violations of the CLRA; (2) breach

3  of contract; (3) breach of the implied covenant of good faith and fair dealing; and (4) conversion.

4  PayPal does not address the substance of Plaintiffs' allegations that PayPal's conduct constitutes

5  unfair or deceptive acts under the UCL.  Rather PayPal limits its attack to only Plaintiffs' UCL

6  claim to the extent it is predicated on a claim of conversion and PayPal's contention that

7  Plaintiffs' UCL claim is subject to the Rule 9(b) pleading standard applicable to claims sounding

8  in fraud.  Even so limited, PayPal's arguments fail.[16]

9  **A.      Plaintiffs Properly Allege a UCL Claim Predicated on Conversion.**

10  Plaintiffs allege that by indiscriminately placing holds on their PayPal accounts and

11  thereby denying them the right to possess and use the funds in those accounts, PayPal is liable

12  under the tort of conversion.  *See, e.g., In re Easysaver Rewards Litig.,* No. 09-CV-2094-MMA

13  (BLM), 2010 WL 3259752, at *16 (S.D. Cal. Aug. 13, 2010).  PayPal claims that Plaintiffs'

14  conversion claim fails for two reasons: (1) money cannot be the subject of a conversion claim

15  unless there is a specifically identifiable sum involved; and (2) funds held on deposit cannot be

16  the subject of a conversion claim because the funds represent a general obligation of the

17  depository institution rather than an entitlement of the depositor to any specific monies.  MTD, at

18  pp. 12-13.  PayPal misapprehends both the allegations in the FAC and the law.

19  PayPal relies on three cases in which conversion claims against federally chartered banks

20  were rejected, all of which are distinguishable.  MTD, at pp. 12-13.[17]  There is a material factual

21

22  [16] Because the UCL prohibits any unlawful, unfair or deceptive acts, Plaintiffs' entire UCL claim survives as long as any of the three theories alleged in the FAC survives.  *Somerville v. Stryker Orthopaedics*, No. C 08-02443 JSW, 2009 WL 2901591 (N.D. Cal. Sept. 4, 2009) ("On this basis, Plaintiff has satisfied the requirement of alleging unlawful conduct under Section 17200.

23  Therefore, regardless of the other contentions of unfair and fraudulent conduct, because the requirement is conjunctive, the Court need not reach the other elements and finds Plaintiff has

24  stated a cause of action under Section 17200.").

25

26  [17] PayPal cites *McKell v. Wash. Mut.*, 142 Cal.App.4th 1457, 1492 (Cal.Ct.App. 2006), for the proposition that Plaintiffs' money must be a specifically identifiable sum to state a claim for conversion.  PayPal also cites *Gutierrez, supra,* and *Lawrence v. Bank of Am.,* 163 Cal.App.3d

27  431, 437 (Cal.Ct.App. 1985), for the proposition that deposited funds cannot be the subject of a conversion claim because they represent a general obligation of the institution rather than an

28  entitlement by the depositor to any specific monies.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1    distinction between the circumstances of this case and the underlying fact pattern in all three of

2    PayPal's authorities – unlike the defendants in each of the authorities PayPal relies upon – PayPal

3    is not a bank.

4           The fundamental difference in the ownership rights to the deposits at issue in the banking

5    cases and the PayPal accounts demonstrate that the banking cases do not govern this case.  In

6    *Gutierrez*, the Court found that bank overcharges could not be the basis of a conversion claim

7    because, once a depositor puts money into an account, the money becomes "literal property of the

8    bank, and cannot be converted."  *Gutierrez,* 622 F.Supp.2d at 956.  In contrast, the money in

9    Plaintiffs' and other customers' PayPal accounts always remains the property of the customer.

10   The PayPal User Agreement expressly states that "nothing in this Agreement grants PayPal any

11   ownership right to the principal of the funds you maintain with PayPal."  FAC, Exh. 1, § 5.2.

12          Likewise, PayPal grossly overstates the hurdle that identification of specific monies poses

13   involving deposited funds.  Money is a proper subject for a conversion claim provided that a

14   specifically identifiable and definite sum is involved, though ***the funds need not be specifically***

15   ***earmarked***.  *Lowery v. Blue Steel Releasing, Inc.,* No. CV04-8850-DSF (CTx), 2005 WL

16   6215610, at *2 (C.D. Cal. Nov. 2, 2005) (*citing Haigler v. Donnelly,* 18 Cal.2d 674, 681 (Cal.

17   1941)).  Because Plaintiffs' claims are based upon certain sums of money, identified in a

18   straightforward manner in the FAC (¶¶ 8-15), they are properly the subject of a conversion claim.

19   *Shahood v. Cavin,* 154 Cal.App.2d 745, 748 (Cal.Ct.App. 1957) ("While it is true that money

20   cannot be the subject of an action for conversion unless a specific sum capable of identification is

21   involved, it is not necessary that each coin or bill be earmarked."); *see also Fischer v. Machado,*

22   50 Cal.App.4th 1069, 1073 (Cal.Ct.App. 1996); *Weiss v. Marcus,* 51 Cal.App.3d 590, 599

23   (Cal.Ct.App. 1975); *and In re Easysaver, supra,* at *16 (California courts have loosened the

24   historic restrictions on the tort, such that "it is not necessary that each coin or bill be earmarked")

25   (*citing Haigler,* 18 Cal.2d at 681).[18]  Because Plaintiffs have identified the sums involved in their

26   conversion claims, they have properly stated a cause of action for conversion.

27   _____

18   *See also Kassa v. BP West Coast Products, LLC,* No. C-08-02725 RMW, 2008 WL 3494677,
28   at *4 (N.D. Cal. Aug. 12, 2008) ("Such discrete withdrawals seem eminently 'capable of
     identification' based on bank records of the transactions.  *Accord PCO, Inc. v. Christensen,*

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

**B.      Plaintiffs' Claims do Not Sound in Fraud and Therefore Need Not be Pled with the Specificity Required Under Rule 9(b).**

The UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  Here, all of Plaintiffs' claims arise as a result of PayPal's indiscriminate, unauthorized and unlawful placement of holds on its customers' accounts. FAC, ¶ 3.  PayPal nevertheless contends that the Rule 9(b) pleading standard applicable to common law fraud applies to Plaintiff's UCL and CLRA claims.  PayPal is incorrect.

Under Ninth Circuit precedent, a UCL claim may be subject to Rule 9(b) pleading standards where such claim "sounds in fraud." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1104 (9th Cir. 2003).  A UCL claim is held to sound in fraud where the plaintiff alleges a "unified course of fraudulent conduct." *Ibid.*  However, because fraud is not a necessary element of a UCL claim, a court must review the particulars of a UCL claim to determine whether or not a unified course of fraudulent conduct is alleged such that Rule 9(b) applies. *In re Mattel, Inc.*, 588 F.Supp.2d 1111, 1118 (N.D. Cal. 2008).

While PayPal does not specify which aspects of Plaintiffs' UCL claims are allegedly subject to the heightened pleading standard, it is clear that, to the extent Plaintiffs' UCL claim is based on the unlawful and unfair prongs, Rule 9(b) does not apply.  The conduct underlying such claims, which is that constituting conversion, breach of contract and breach of the implied covenant of good faith and fair dealing, is in no way based on alleged fraudulent conduct. Moreover, even with regard to the fraudulent prong of the UCL, Rule 9(b) does not apply.

In *Mattel*, the court determined that Rule 9(b) did not apply, even though the plaintiffs therein alleged that Mattel had engaged in a "fraudulent" business practice.  The court held that *Vess* was distinguishable because:

> Here, Plaintiffs merely allege that the representations were likely to deceive and that Plaintiffs were damaged by the deception; they make no effort to allege common law fraud elements such as intent to deceive or any overarching fraudulent scheme to defraud the individual Plaintiffs or the

*Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP,* 150 Cal.App.4th 384, 397 (Cal.Ct.App. 2007).").

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1    public.

2    *In re Mattel*, 588 F.Supp.2d at 1118.  The same is true here.  Although Plaintiffs allege that

3    Defendant has engaged in a fraudulent business practice, the gravamen of that claim is that

4    Defendant's indiscriminate placement of holds on customers' accounts without disclosing that it

5    can or will utilize such holds and while promoting the service as providing customers with

6    immediate access to their funds is likely to deceive Plaintiffs and the Class.  FAC, ¶ 110.

7    Accordingly, Rule 9(b) does not apply.

8        Even if the Court were to apply the standards of Rule 9(b) to the FAC, Plaintiffs have pled

9    their allegations with sufficient particularity to put Defendant on notice of their claims.  First,

10   because the deceptive prong of Plaintiffs' UCL claim is primarily based on Defendant's material

11   omission of its indiscriminate hold policy, Rule 9(b) standards would be relaxed.  *In re Apple &*

12   *AT & TM Antitrust Litig.*, 596 F.Supp.2d 1288, 1310 (N.D. Cal. 2008).  Second, by detailing the

13   specifics of the alleged affirmative representations Plaintiffs allege are likely to deceive (FAC,

14   ¶¶ 89-90, 106-107), identifying where those representations were made (on Defendant's

15   website[19]) and to whom such representations were made (Plaintiffs and the Class), Plaintiffs have

16   satisfied Rule 9(b).  *Marolda v. Symantec Corp.*, 672 F.Supp.2d 992, 1001 (N.D. Cal. 2009).

17   ### IV.    PLAINTIFFS HAVE ADEQUATELY PLED THEIR UNJUST
18   ###        ENRICHMENT CLAIM.

19       Plaintiffs have adequately pled a claim for unjust enrichment by alleging that PayPal has

20   received benefits in the form of fees from Plaintiffs and the Class, and that PayPal has unjustly

21   retained those benefits since it did not provide Plaintiffs and the Class with immediate and secure

22   access to their funds.  FAC, ¶¶ 6, 40, 47-48, 115-117.  Nevertheless, PayPal argues that Plaintiffs'

23   unjust enrichment claim should be dismissed because unjust enrichment is: (1) not recognized as

24   a cause of action under California law; and (2) unavailable where a written contract exists

25   between the parties.  PayPal is wrong on both counts.

26       While courts are split on this issue, the trend is clearly in favoring of recognizing unjust

27   enrichment as a stand-alone cause of action in California.  *See Nordberg v. Trilegiant Corp.*, 445

---

[19]  FAC, ¶¶ 89, 106.

28

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1    F.Supp.2d 1082, 1099-1100 (N.D. Cal. 2006).  For example, in *Ghirardo v. Antonioli*, 14 Cal.4th

2    39 (Cal. 1996), the California Supreme Court reversed the Court of Appeal and held that the

3    cross-complainant was "entitled to seek relief under traditional equitable principles of unjust

4    enrichment."  *Id.* at 50.  The *Ghirardo* court found that "an individual may be required to make

5    restitution if he is unjustly enriched at the expense of another. . . . A person is enriched if he

6    receives a benefit at another's expense."  *Id.* at 51 (citation omitted); *see also Lectrodryer v.*

7    *SeoulBank*, 77 Cal.App.4th 723, 726 (Cal.Ct.App. 2000) ("[Plaintiff] Lectrodryer satisfied the

8    elements for a claim of unjust enrichment: receipt of a benefit and unjust retention of the benefit

9    at the expense of another.") (*citing First Nationwide Sav. v. Perry*, 11 Cal.App.4th 1657, 1662-63

10   (Cal.Ct.App. 1992)).[20]

11           Even courts that have concluded that there is no cause of action for "unjust enrichment" in

12   California have looked "past the formal label of a claim" to permit a plaintiff to pursue equitable

13   recovery of ill-gotten gains.  *See, e.g., Miletak v. Allstate Ins. Co.*, No. 06-03778 JW, 2010 WL

14   809579, at *8 (N.D. Cal. March 5, 2010).  In *Miletak*, the court found that "there is no cause of

15   action in California for unjust enrichment," but denied defendants' motion for summary judgment

16   (which was based upon an argument similar to the one Defendant makes here), and held that

17   "Plaintiff may establish an unjust enrichment claim by proving that (1) the Defendants received a

18   benefit (2) that it unjustly retained."  *Ibid.*  Accordingly, unjust enrichment has been recognized

19   and applied as a stand-alone claim, and courts have looked past the name of the claim to allow

20   recovery for unjust enrichment, including disgorgement of ill-gotten gains.

21           Indeed, PayPal concedes that unjust enrichment is an available form of quasi-contractual

22   relief in California in the absence of a breach of contract claim, but argues that "an unjust

23   enrichment claim does not lie where an enforceable written contract between the parties exists."

24   _____

25   [20]  *See also Walters v. Fid. Mortg. of Cal.*, No. 2:09-cv-3317 FCD/KJM, 2010 WL 1493131, at
     *12-*13 (E.D. Cal. Apr. 14, 2010) (holding that California recognizes claim for unjust
     enrichment, citing elements of claim, denying motion to dismiss); *Cartwright v. Viking Indus.,*

26   *Inc.*, No. 2:07-CV-02159-FCD-EFB, 2009 WL 2982887, at *13 (E.D. Cal. Sept. 14, 2009);
     *Mazza v. Am. Honda Co.*, 254 F.R.D. 610, 627 (C.D. Cal. 2008); *Peterson v. Cellco P'ship*, 164

27   Cal.App.4th 1583, 1593 (Cal.Ct.App. 2008); *and Hirsch v. Bank of Am.*, 107 Cal.App.4th 708,
     721-22 (Cal.Ct.App. 2003) (analyzing the elements of an unjust enrichment claim and

28   determining that appellants had satisfied the pleading requirements).

1   MTD, p. 15:11-12.  PayPal's argument ignores Rule 8, which entitles Plaintiffs to plead

2   alternative and potentially inconsistent claims for relief.   Fed. R. Civ. P. 8(a)(3) and (d)(3).

3   Under Rule 8, Plaintiffs are entitled to assert their breach of contract claim along with any other

4   claims they may have, including their unjust enrichment claim.

5        Rule 8's endorsement of pleading alternative and potentially inconsistent theories makes

6   sense since an alternate rule would require a party to waive potential claims and defenses at the

7   pleading stage, without the benefit of either discovery or pre-trial rulings.  For example, while

8   PayPal may be correct that an unjust enrichment claim is a quasi-contractual theory of recovery,

9   Plaintiffs are entitled to assert this equitable theory of recovery in the event they are unable to

10  recover for breach of contract for any reason.  *See, e.g., Ace Chrome Corp. v. IBEX Constr.*, No.

11  08 Civ. 10401(TPG), 2009 WL 2482136, *4 (S.D.N.Y. Aug. 13, 2009) (unjust enrichment may

12  be pled as alternative to breach of contract).

13  **V.     THE FAC PROPERLY SEEKS INJUNCTIVE RELIEF UNDER THE
         CLRA AND THE UCL TO REDRESS THE ONGOING HARM CAUSED**
14       **BY DEFENDANT'S CONDUCT.**

15       Plaintiffs seek injunctive relief as a remedy for Defendants' ongoing violations of the

16  CLRA and UCL.  These statutes expressly provide that injunctive relief is an available remedy to

17  consumers.  Cal. Civ. Code § 1780(a)(2); Cal. Bus. & Prof. Code § 17203.  Moreover, California

18  courts have upheld the availability of injunctive relief in CLRA and UCL cases such as the instant

19  action.  *See, e.g., Clayworth v. Pfizer*, 49 Cal.4th 758, 790 (Cal. 2010); *Cruz v. Pacificare Health

20  Systems, Inc.*, 30 Cal.4th 303 (Cal. 2003).

21       The CLRA provides that "[a] consumer who suffers damage as a result of any of the acts

22  or practices declared to be unlawful under section 1770 [of the CLRA] may, as was done here,

23  bring a class action to obtain injunctive relief or other relief."  *Ting v. AT&T*, 182 F.Supp.2d 902,

24  922 (N.D. Cal. 2002) (*reversed in part on other grounds*).  Plaintiffs have alleged that Defendant

25  violated multiple provisions of Section 1770 (FAC, ¶ 93) and that Plaintiffs and Class members

26  have been irreparably harmed by these violations of the CLRA (*id.* ¶ 94).  Accordingly, Plaintiffs

27  have adequately pled entitlement to injunctive relief as a remedy for Defendant's ongoing

28  violations of the CLRA.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1    Just as it is available under the CLRA, injunctive relief is "the primary form of relief
2    available under the UCL." *Clayworth*, at 790.  It is well established that a party with standing
3    under Section 17204 of the UCL may pursue a claim for injunctive relief pursuant to Section
4    17203 of the UCL.  *Id.* at 788.  Standing exists under the UCL if a party "suffered an injury in
5    fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code
6    § 17204.  In other words, Plaintiffs may obtain injunctive relief under the UCL if they "lost
7    money or property as a result of Defendant's unfair business practices."[21]  *Clayworth*, at 788.
8    Plaintiffs have adequately pled entitlement to injunctive relief under the UCL because they have
9    alleged that they "suffered injury in fact and have lost money or property as a result of PayPal's
10   actions."  FAC, ¶ 101.  Plaintiffs have further alleged that PayPal has engaged in specific conduct
11   and made specific representations which violate the UCL and thereby provide a further basis for
12   injunctive relief under the UCL.  FAC, ¶¶ 106-112.  Defendant has failed to identify any basis
13   that would preclude Plaintiffs and the Class members from obtaining injunctive relief under their
14   UCL claim based upon Defendant's alleged unfair business practices.

15        Nevertheless, PayPal argues that Plaintiffs' claim for injunctive relief should be dismissed
16   because Plaintiffs have an adequate remedy at law in the form of money damages.  MTD, p. 16:8-
17   12.  As an initial matter, PayPal's reliance upon the common law test for the availability of
18   injunctive relief is misplaced as Plaintiffs are seeking injunctive relief under the CLRA and UCL,
19   both of which explicitly authorize injunctive relief without any need to plead or prove the absence
20   of adequate remedies at law.

21        PayPal's argument also ignores Plaintiffs' allegations that the conduct at issue is ongoing.
22   The instant action is a quintessential injunctive relief case because Defendant's ongoing conduct
23   subjects Plaintiffs and Class members to recurring harm thereby rendering money damages
24   inadequate.  Moreover, the ongoing harm suffered by Plaintiffs and Class members could only be

25   _____
26   [21] The four prong criteria for determining the availability of injunctive relief in breach of contract
     claims is *not* applicable to Plaintiffs' claims for injunctive relief under the CLRA and UCL
27   respectively. *See Ebay Inc. v. Mercexchange, LLC*, 547 U.S. 388 (2006).  PayPal ignores the fact
     that Plaintiffs' injunctive relief claims were asserted under the CLRA and UCL respectively and
28   instead mistakenly assumes that they're premised on a breach of contract claim in order to have
     this Court apply a standard which it believes to be more stringent. *See* MTD, at pp. 15-16.

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1    remedied by a multiplicity of suits.  Accordingly, Defendant's motion to dismiss Plaintiffs'

2    injunctive relief claims under the CLRA and UCL respectively must be denied

3            VI.    **THE FAC PROPERLY SEEKS DECLARATORY RELIEF.**

4            "Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party

5    opposing the class has acted or refused to act on grounds generally applicable to the class.'"

6    *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Plaintiffs allege that Defendants

7    have acted towards Plaintiffs and Class members in a uniform way by, *inter alia*, systemically

8    placing excessive reserves and holds on the monies received into the PayPal accounts of Plaintiffs

9    and Class members.  *See, e.g.,* FAC, ¶ 60.  Plaintiffs seek to enjoin PayPal's practices pursuant to

10   the CLRA and UCL.  Accordingly, Plaintiffs seek "corresponding declaratory relief" under Rule

11   23(b)(2), meaning declaratory relief which corresponds to the final injunctive relief being sought.

12   Thus, Plaintiffs' declaratory relief claim does not "duplicate" Plaintiffs' claims for damages as

13   Defendant erroneously argues.  *See* MTD, at p. 16.  Rather, Plaintiffs' declaratory relief claim

14   properly "corresponds" to the injunctive relief being asserted pursuant to Rule 23(b)(2).

15           Plaintiffs seek declaratory relief, in addition to other remedies, for themselves and Class

16   members.  FAC, ¶ 60; *id.* Prayer for Relief, ¶ 3.  "Declaratory judgments are available where

17   appropriate even though other remedies are also available."  *Davis v. Romney*, 490 F.2d 1360 (3d

18   Cir. 1974); *Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.*, 636 F.3d 995 (C.D. Cal. 2009) (where a

19   declaratory relief claim is joined with other claims for which there exist an independent

20   jurisdictional basis, "the district court should not, as a general rule, remand or decline to entertain

21   the claim for declaratory relief." (internal citations omitted)).  Plaintiffs have stated cognizable

22   claims for corresponding declaratory relief under Rule 23(b)(2) which must not be dismissed.

23                                    **CONCLUSION**

24           For all the reasons set forth herein, PayPal's motion should be DENIED.

25

26   / / / /

27

28

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1    DATED:  November 19, 2010                Respectfully submitted:

2

3                                             /s/ Mark N. Todzo

4                                             **LEXINGTON LAW GROUP**
                                              Mark M. Todzo (SBN 168389)
5                                             Howard Hirsch (SBN 213209)
                                              1627 Irving Street
6                                             San Francisco, CA  94122
                                              Telephone:    (415) 759-4111
7                                             Facsimile:    (415) 759-4112
                                              mtodzo@lexlawgroup.com
8

9                                             **FREED & WEISS LLC**
                                              Eric D. Freed (SBN 164526)
10                                            Jeffrey A. Leon (*Pro hac* forthcoming)
                                              Julie D. Miller (*Pro hac* forthcoming)
11                                            111 West Washington St., Suite 1331
                                              Chicago, Illinois 60602
12                                            Telephone:    (312) 220-0000
                                              Facsimile:    (312) 220-7777
13                                            eric@freedweiss.com
                                              julie@freedweiss.com
14

15                                            **SEEGER WEISS LLP**
                                              Jonathan Shub (SBN 237708)
16                                            jshub@seegerweiss.com
                                              1818 Market St, 13th Floor
17                                            Philadelphia, PA 19102

18
                                              **FARMER, JAFFE, WEISSING,**
19                                            **EDWARDS, FISTOS & LEHRMAN, P.L.**
                                              Steven R. Jaffe (*Pro hac* forthcoming)
20                                            steve@pathtojustice.com
                                              Mark S. Fistos (*Pro hac* forthcoming)
21                                            mark@pathtojustice.com
                                              Seth M. Lehrman (SBN 178303)
22                                            seth@pathtojustice.com
                                              425 North Andrews Avenue, Suite 2
23                                            Fort Lauderdale, FL 33301
                                              (954) 524-2820
24
                                              *Counsel for Plaintiffs and the Class*
25

26

27

28

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

<u>**CERTIFICATE OF SERVICE**</u>

On November 19, 2010, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of California, using the electronic case files ("ECF") system of the Court.  All parties who have consented to electronic service will receive notice of this filing by operation of the ECF system.  Any parties who have not consented to electronic service will receive a paper copy of this electronically filed document through the United States Postal Service.

/s/ Mark N. Todzo
Mark N. Todzo
LEXINGTON LAW GROUP
1627 Irving Street
San Francisco, CA 94122
Telephone: (415) 759-4111
Facsimile: (415) 759-4112
Email: mtodzo@lexlawgroup.com