UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOISES ZEPEDA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PAYPAL, INC., <br><br> Defendant. | Case No. 10-cv-02500-SBA (JCS) <br><br> **ORDER DENYING PUTATIVE INTERVENERS' SECOND MOTION TO INTERVENE AND AMEND COMPLAINT** <br><br> Re: Dkt. No. 200 |

## I. INTRODUCTION

In this putative class action, non-parties Reginald Burgess ("Burgess"), Lacy Reintsma, Caleb Reintsma, Amy Rickel, Fred Rickel, and Colette Tapia ("Putative Interveners") seek to intervene and file a Third Amended Complaint ("TAC"). This Motion to Intervene and Amend Complaint ("Motion") comes before the Court on an order of referral from Judge Saundra B. Armstrong, presiding in this case. *See* Dkt. Nos. 200 ("Mot."), 203. The Court finds this matter appropriate for decision without oral argument.[1] *See* Civ. L. R. 7-1(b). For the reasons explained below, the Court DENIES Putative Interveners' Motion in its entirety.

## II. BACKGROUND

This motion arises in the course of settlement discussions in two intertwined putative class actions: the instant action, *Zepeda v. PayPal, Inc.*, No. C-10-2500 SBA, and *Fernando v. eBay*, No. C-10-1668 SBA. Both cases concern allegations relating to PayPal, Inc.'s ("PayPal") alleged practice of placing holds on user funds without notice or explanation.

---

[1] Further, Putative Interveners have waived their right to an oral argument. *See* Mot. at 8 ("Oral argument is not requested."). Because there will be no oral argument, Putative Interveners' recent objection to David Hicks' telephonic appearance in this matter is moot. *See* Dkt. Nos. 218, 219.

### A.     *Zepeda*

In *Zepeda*, Plaintiffs allege that PayPal places holds on users' funds while retaining interest from withheld amounts, in violation of the User Agreement. *See* SAC ¶¶ 1, 7. Additionally, Plaintiffs allege that PayPal improperly fails to inform users that their funds are being withheld, why they are being withheld, or how they can have the hold released. *See id.* ¶ 4.

*Zepeda* traces its origins to May 2010 when Ronya Osman and Brian Pattee filed a complaint against PayPal and eBay, Inc. ("eBay"). *See Osman v. PayPal, Inc.*, No. C-10-2046 PVT. In June 2010, Moises Zepeda ("Zepeda") filed the instant action against PayPal. Shortly thereafter, Michael Spear filed a complaint against PayPal and eBay. *See Spear v. PayPal, Inc.*, No. C-10-2555 PVT. In July 2010, the *Osman* and *Spear* actions were voluntarily dismissed without prejudice. *See* Dkt. No. 205 at 3. In their place, Zepeda filed a First Amended Class Action Complaint ("FAC") in which he joined seven additional plaintiffs, including the plaintiffs from the *Osman* and *Spear* actions ("Plaintiffs"). *See* Dkt. No. 22. The FAC alleged causes of action for: (1) breach of contract; (2) breach of fiduciary duty; (3) accounting; (4) violation of California's Consumers Legal Remedies Act; (5) violation of California's Unfair Competition Law; and (6) unjust enrichment. *See id.*

The FAC defined the nationwide class as "[a]ll PayPal, Inc. account holders whose funds have been held by Pay[P]al or whose accounts were closed, suspended, or limited by PayPal," and the natural person class as "[a]ll natural persons whose funds have been held by Pay[P]al or whose accounts were closed, suspended, or limited by PayPal." FAC ¶ 57.

Subsequently, PayPal filed a motion to dismiss the FAC, which was granted with leave to amend within thirty days. *See* Dkt. Nos. 26, 49. Instead of filing an amended complaint within the timeframe, Plaintiffs commenced settlement discussions with PayPal.

### B.     *Fernando*

In *Fernando*, the plaintiffs allege that PayPal improperly restricts, freezes or closes accounts because of "suspicious activity" without notice, explanation, or responses to inquiries of affected users. *See Fernando*, Dkt. No. 23 ¶¶ 23–24. The *Fernando* plaintiffs also allege a number of other improper practices, including PayPal's alleged practice of freezing accounts, which

prevents users from cancelling their accounts and recovering funds. *See id.* ¶ 25. The *Fernando* plaintiffs allege violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* and the settlement in *In re PayPal Litigation (Comb v. PayPal, Inc.)*, Nos. C-02-1227 JP, C-02-2777 JF ("*Comb* Settlement"). *See id.*

The *Fernando* action began in April 2010 when Devinda Fernando and Vadim Tsigel filed a class action against PayPal and eBay. *See Fernando*, Dkt. No. 1. In March 2011, the *Fernando* plaintiffs filed a First Amended Class Action Complaint, which joined additional plaintiffs Michail Zinger, Amy Rickel, Fred Rickel, Ira Gilman, Lacy Reintsma, and Shaul Beher. *See Fernando*, Dkt. No. 23 ("*Fernando* FAC"). The *Fernando* FAC alleges causes of action for: (1) violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA"); (2) violation of the *Comb* Settlement; (3) conversion; (4) money had and received; (5) unjust enrichment; and (6) negligence. *See id.*

The *Fernando* FAC defines the nationwide class as: "all companies and individuals whose PayPal accounts were improperly frozen, limited or debited by Defendant PayPal in violation of the [EFTA] and in violation of *Combs v. PayPal, Inc.*, 218 F. Supp. 2d 1165 (and the resulting settlement) and who are interested in pursuing this lawsuit." *Fernando* FAC ¶ 184.

Subsequently, PayPal filed a motion to dismiss the *Fernando* FAC, but the motion was taken off calendar to facilitate settlement discussions. *See Fernando*, Dkt. Nos. 26, 52.

### C. Settlement Negotiations and Subsequent Filings

In or around May 2011, the parties in the *Zepeda* action participated in a mediation, which resulted in a settlement. *See* Dkt. No. 205 at 4. In December 2011, the parties in the *Fernando* action participated in a separate mediation, which resulted in a global settlement of both actions. *See id.* Among other things, the global settlement included an agreement that the *Zepeda* Plaintiffs would file a SAC that included claims from the *Fernando* action and that joined eBay as a defendant. *See id.*

In January 2012, Marina Trubitsky, one of the attorneys for the *Fernando* plaintiffs, announced that two of the *Fernando* plaintiffs—Fred and Amy Rickel—no longer desired to participate in the global settlement. *See id.* Ms. Trubitsky demanded the opportunity to negotiate

individual settlements with PayPal and eBay. *See id.* Following a Case Management Conference in April 2012, the *Zepeda* parties agreed that the settlement should proceed as to its case alone. *See id.* at 4–5. To that end, the *Zepeda* Plaintiffs filed a SAC in October 2011, which was followed by a motion for preliminary approval of class action settlement. *See* Dkt. Nos. 110, 112. The SAC is currently the operative complaint, and it defines the nationwide class as "all current and former users of PayPal in the United States who had an active PayPal account on or after April 19, 2006." *Id.* ¶ 59.

However, the *Fernando* plaintiffs were apparently unhappy that the *Zepeda* parties decided to move forward without them, and they made various filings seemingly designed to disrupt the *Zepeda* settlement. *See* Dkt. No. 205 at 5. Relevant here, Ms. Trubitsky represented two plaintiffs who filed *Dunkel v. eBay, Inc.*, No. C 12-1452 EJD, and who subsequently moved to intervene in *Zepeda*. *See* Dkt. No. 97. Around the same time, Burgess, appearing *pro se*, moved to intervene in *Zepeda*. *See* Dkt. No. 121.

Judge Armstrong, finding that it was in the best interest of all parties (and those seeking intervention) to try to reach a global settlement, denied without prejudice all pending motions—including the *Dunkel* plaintiffs' motion to intervene and the motion for preliminary approval in *Zepeda*—and referred the parties to Magistrate Judge Nathanael Cousins for a mandatory settlement conference. *See* Dkt. No. 122 at 4. A few days later, Judge Armstrong also denied Burgess' motion to intervene as moot in light of the pending settlement conference. *See* Dkt. Nos. 125.

The settlement conference proceeded as scheduled in January 2013. *See* Dkt. No. 205 at 5. However, Ms. Trubitsky failed to appear for the second day of the settlement conference and no global settlement was reached. *See* Dkt. No. 133. Judge Cousins then issued an order to show cause ("OSC") directing Ms. Trubitsky and the *Fernando* plaintiffs to show cause why that action should not be dismissed, civil sanctions should not be imposed, a payment of expenses to the other participants in the settlement conference should not be awarded, and the pro hac vice admissions of Ms. Trubitsky should not be revoked. *See* Dkt. No. 135; *Fernando*, Dkt. No. 100. The *Fernando* action has been stayed pending Judge Cousins' resolution of the OSC. *See Fernando*,

4

Dkt. No. 158 at 9.

In the meantime, Burgess retained his current counsel, Garrett Skelly, and he again moved to intervene in the *Zepeda* action. *See* Dkt. No. 142. Judge Armstrong struck this motion for Burgess' failure to comply with the Federal Rules of Civil Procedure and the Local Rules. *See* Dkt. No. 147. Burgess then again moved to intervene, and Judge Armstrong denied this motion for Burgess' failure to comply with meet and confer rules. *See* Dkt. No. 161 at 3. In February 2014, Burgess once again sought to intervene by filing the instant Motion, and Judge Armstrong referred the Motion to this Court to hear and decide. *See* Dkt. Nos. 200, 203.

Prior to this Court's consideration of the instant Motion, the *Zepeda* parties filed a new motion for preliminary approval of the class action settlement as to the *Zepeda* action only. *See* Dkt. No. 166. Judge Armstrong denied this motion without prejudice in February 2014, citing concerns with the scope of the release and the lack of monetary damages. *See* Dkt. No. 205. Parties currently have until July 9, 2014 to file an amended motion for preliminary approval. *See* Dkt. No. 217.

### III.    DISCUSSION

#### A.    Motion to Intervene

Rule 24 of the Federal Rules of Civil Procedure provides for two types of intervention—intervention as of right and permissive intervention. First, under Rule 24(a), intervention as of right is appropriate when (1) the putative intervener claims an interest that is the subject of the action; (2) the putative intervener may, as a practical matter, be impaired or impeded by disposition of the pending action; and (3) the putative intervener's interest is not adequately represented by existing parties. *See Alaniz v. California Processors, Inc.*, 73 F.R.D. 269, 288 (N.D. Cal. 1976). The motion must also be timely, which the court determines by evaluating three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Cohorst v. BRE Properties, Inc.*, 10CV2666 JM BGS, 2011 WL 3475274, at *4 (S.D. Cal. Aug. 5, 2011) (quoting *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 2007); *Cnty. of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986)). Second, under Rule 24(b), permissive intervention

1 may be allowed in the court's discretion when the putative intervener's claim and the primary
2 action involve a common question of law or fact, and allowing intervention "will not unduly delay
3 or prejudice the adjudication of the rights of the original parties."

4     In both cases, Rule 24 is traditionally construed liberally in favor of applicants for
5 intervention. *See Cohorst*, 2011 WL 3475274, at *4 (citing *Washington State Bldg. & Constr.*
6 *Trades Council v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982)). Specifically as to class actions,
7 Rule 23 also indicates that a court, in order "to protect class members and fairly conduct the
8 action," may allow class members may intervene. Fed. R. Civ. P. 23(d)(1)(B). However, courts
9 have frequently denied intervention in the class action settlement context, citing concerns about
10 prejudice, as well as putative interveners' ability to protect their interests by less disruptive means,
11 such as opting out of the settlement class or participating in the fairness hearing process. *See, e.g.*,
12 *Alaniz*, 73 F.R.D. at 289; *Grilli v. Metro. Life Ins. Co., Inc.*, 78 F.3d 1533, 1536, 1538, *opinion*
13 *clarified*, 92 F.3d 1074 (11th Cir. 1996); *Cohorst*, 2011 WL 3475274, at *6; *In re Warfarin*
14 *Sodium Antitrust Litig.*, 212 F.R.D. 231, 264 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004);
15 *Davis v. J.P. Morgan Chase & Co.*, No. 01-CV-6492L, 2011 WL 1327860, at *2 (W.D.N.Y. April
16 6, 2011); *Doe v. Cin-Lan, Inc.*, 08-CV-12719, 2011 WL 37970, at *2–*3 (E.D. Mich. Jan. 5,
17 2011).

18     Here, Putative Interveners seek intervention as a matter of right. First, Putative Interveners
19 argue that they "have a substantial legal interest in the subject matter of the litigation." *See* Mot. at
20 8. Second, Putative Interveners argue that "the disposition of this case will impair [their] ability to
21 recover from a dismissal due a [sic] defectively drafted complaint," and "[i]t is self-evident that
22 [they] have an interest in defending against a judgment being entered against them." *See id.* (citing
23 *Int'l Mortgage & Inv. Corp. v. Von Clemm*, 301 F.2d 857, 862 (2d Cir. 1962)). Third, Putative
24 Interveners argue that they are not adequately represented by the *Zepeda* Plaintiffs' current class
25 representatives, that present counsel is inadequate, that "the complaint it [sic] was prepared
26 without proper legal foundation or knowledge and claims under California law," and that
27 "[a]ccording to Ms. Trubitsky, Zepeda[']s] counsel is in 'cohoots' [sic] with [D]efendants aimed
28 upon their settlement fund percentage, not justice for the class." *See* Mot. at 1 (citing *Standard*

*Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1346, 185 L. Ed. 2d 439 (2013)), 8–9 (citing *Fernando*, Dkt. No. 123, Attachment 1 (e-mail from Marina Trubitsky to Burgess)). They appear to argue that Plaintiffs' counsel is inadequate and that the SAC and the *Fernando* FAC are deficient because they are "based on the assumption that the PayPal User Agreement is a lawful agreement[,]" whereas their proposed TAC alleges that the User Agreement is "void as procedurally being a contract of adhesion and has substantively unconscionable policies . . . ." *See* Mot. at 2, 3; Dkt. No. 212 at 6 ("Reply to Defs."). They also appear to argue that the SAC and the *Fernando* FAC do not sufficiently focus on violations of the *Comb* Settlement. *See id.* at 3. Finally, Putative Interveners argue that their motion is timely because they "move to intervene inside the period for filing a responsive pleading and prior to any preliminary approval of a settlement and, [sic] intervention will neither delay these proceedings nor prejudice the rights of any of the existing parties." *See* Mot. at 8.

Putative Interveners' proposed TAC defines two classes: (1) "All companies and individuals who are unable to sell and/or list its products on eBay's website, due adverse [sic] PayPal actions; and who are interested in pursuing this lawsuit," and (2) "All PayPal, Inc. account holders whose funds have been held by PayPal or whose accounts were closed, suspended, or limited by PayPal, initiated through an eBay relationship or not, and are current and former users of PayPal in the United States who had an active PayPal account on or after April 19, 2006." TAC ¶ 1.

Defendants oppose the Motion, and the *Fernando* plaintiffs concur. *See* Dkt. Nos. 211 ("Defs.' Opp'n"), 213 ("*Fernando* Pls.' Opp'n"). First, Defendants argue that Burgess fails to establish a significant protectable interest because his proposed claims "are premised on his own dissatisfaction with eBay's Buyer Protection Program, and specifically the resolution of one particular complaint lodged against Burgess by a fellow eBay user."[2] *See* Defs.' Opp'n (citing TAC ¶¶ 194–222). Defendants argue that these claims have nothing to do with the claims in this case, "which do not involve either eBay's or PayPal's complaint resolution process." *See* Mot. at

---

[2] Defendants appear to treat the Motion as if it were brought only by Burgess, rather than all six Putative Interveners listed in the Motion. *See generally* Defs.' Opp'n. *See also* Part III.A.1., *infra*.

7

12. Second, Defendants argue that Burgess fails to show that a disposition of the action may impair or impede his interests because he has alternate means by which he can protect his interest. *See id.* Specifically, they argue that "Burgess could simply file another action" or, "if the proposed settlement were to be approved and a settlement class certified in this case, Burgess could simply opt out or remain in the class and object to the settlement." *See id.* (citing *Alaniz*, 73 F.R.D. at 289; *Cohorst*, 2011 WL 3475274). Third, Defendants argue that the Motion is untimely because they have "spent extensive time and resources negotiating the terms of a settlement" and, although Judge Armstrong denied the motion for preliminary approval, the parties still have an opportunity to amend the motion. *See* Defs.' Opp'n at 13–14; Dkt. No. 217 (granting stipulation to continue deadline to file amended motion until July 9, 2014). Finally, Defendants argue that although Burgess did not seek permissive intervention, any request would be improper because Burgess shares no common questions of law or fact with the claims asserted in the SAC, the motion would be untimely and prejudice the parties, and Burgess has a "well-established track record of filing frivolous and improper motions and other documents." *See* Defs.' Opp'n at 13–14. *See also Fernando* Pls.' Opp'n at 1–2 (suggesting that the Court declare Burgess a vexatious litigant).

Putative Interveners filed two replies. Putative Interveners argue that the settlement negotiations reflect a "reverse auction" settlement involving "defendant's collusive selection of the weakest attorney among a number of plaintiff attorneys." *See* Reply to Defs. at 2–3. Putative Interveners also allege that *Fernando* plaintiffs' attorneys Ms. Trubitsky and David Hicks are engaging in the unauthorized practice of law. *See id.* at 2; Dkt. No. 214 at 1–2 ("Reply to *Fernando* Pls."). Putative Interveners also argue that it would not be appropriate to declare Burgess a vexatious litigant. *See* Reply to *Fernando* Pls. at 2.

The Court generally agrees with Defendants. Intervention is not warranted here because, as explained below, Putative Interveners have other means to protect their interests.

### 1. Putative Interveners' interest in the action

In light of the fact that the TAC and the SAC bring largely identical causes of action, involve similar classes of people, and seek similar relief, the Court finds that Putative Interveners have sufficient legal interest in this action. *See* Defs.' Opp'n at 2 (noting that all but three claims

8

in both complaints are nearly identical). *Compare* SAC at 31 (Prayer for Relief) *with* TAC at 113–14 (Prayer for Relief). *Compare* SAC ¶ 59 (class defined as "all current and former users of PayPal in the United States who had an active PayPal account on or after April 19, 2006") *with* TAC ¶ 1 (defining classes as "[a]ll companies and individuals who are unable to sell and/or list its products on eBay's website, due adverse PayPal actions; and who are interested in pursuing this lawsuit" and "[a]ll PayPal, Inc. account holders whose funds have been held by PayPal or whose accounts were closed, suspended, or limited by PayPal, initiated through an eBay relationship or not, and are current and former users of PayPal in the United States who had an active PayPal account on or after April 19, 2006.").

In making this determination, the Court declines Defendants' invitation to focus on Burgess' individualized grievances alone. *See* Defs.' Opp'n at 11–12. The Motion is brought not only by Burgess, but also by five other Putative Interveners, the claims of which Defendants do not address. *See* Dkt. No. 196 (Judge Armstrong referring to previous motion to intervene as one brought by Burgess and five other Putative Interveners listed on the instant Motion). The Court acknowledges Defendants' footnote indicating their belief that it is unclear on whose behalf the Motion was brought, and that the references to "Burgess" in their opposition are intended to refer to all Putative Interveners. *See* Defs.' Opp'n at 1 n.2. However, the opposition itself—including the section regarding the requirement that interveners have an interest in the action—addresses the issues as if Burgess were the only individual seeking intervention. *See id.* at 11–12. Defendants' focus on the claims that they view as unique to Burgess misses the mark. Here, Putative Interveners are bringing essentially the same claims based on the same facts on behalf of a similar putative class. It is apparent that Putative Interveners have an interest in the action. *See Cin-Lan*, 2011 WL 37970, at *2 (finding "no dispute" that proposed interveners, certified classes in a similar action in another state, possessed interest in settlement of nationwide claims).

**2.     Impairment of Putative Interveners' interest**

Assuming that Putative Interveners have a protectable interest in the action, they have not shown that this interest has been impaired. Putative Interveners argue that their interests can only be protected by allowing intervention and an amended complaint. *See* Mot. at 4. Specifically, they

9

argue that that "the disposition of this case will impair [their] ability to recover from a dismissal due a [sic] defectively drafted complaint." *See id.* at 8. This argument is not persuasive. If the class is certified and Putative Interveners are members of the class, then Putative Interveners do have means to protect their interests. That is, they may object to the settlement during the hearings on motions for preliminary or final approval, or they may opt out of the class and pursue their claims separately.

Numerous courts have taken this approach. *See*, *e.g.*, *Alaniz*, 73 F.R.D. at 289 (in denying intervention in class action, reasoning that "the ability to opt out precludes the [i]ntervenors from satisfying the impairment-of-interest test") (citing *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 845 (5th Cir. 1975)); *Grilli*, 78 F.3d at 1536, 1538 (affirming district court's denial of intervention in class action because interveners could object to the settlement or opt out and litigate separately); *Cohorst*, 2011 WL 3475274, at *6 (in denying intervention in class action, reasoning that intervener could opt out of the class and pursue her own damages action or raise objections to the settlement during the final fairness hearing); *Davis*, 2011 WL 1327860, at *2 (in denying intervention in putative class action, reasoning that putative interveners' interests "can be fully protected at the fairness hearing for final approval of the settlement" and "class members who do not want to be bound by the settlement will be given an opportunity to opt out and pursue their own claims separately"); *Cin-Lan*, 2011 WL 37970, at *2–*3 (despite fact that interveners' motion was timely and they possessed interest in putative class action, "intervention is not necessary to prevent their claims from being settled without their input" and interveners could simply opt out of the class or remain in the class and voice concerns at the fairness hearing) (citations omitted). Here, Putative Interveners present no argument or authority as to why the Court should deviate from this precedent. In their six lines of text directed to this issue, they have not addressed these alternative means of protecting their interests, nor have they explained why they are not sufficient in this case. *See* Mot. at 8.

Putative Interveners also argue that "[i]t is self-evident that [they] have an interest in defending against a judgment being entered against them." *See id.* (citing *Int'l Mortgage*, 301 F.2d at 862). Indeed, where interveners would be barred from filing alternative actions by the principles

10

of *stare decisis* or collateral estoppel, courts have found impairment of interest. *See, e.g.*, *Cin-Lan*, 2011 WL 37970, at *3 (compiling cases); *Jansen v. City of Cincinnati*, 904 F.2d 336, 342 (6th Cir. 1990) (finding impairment of interest where disposition of case "in an adverse manner would impede the proposed intervenors' ability to enforce the provisions of the consent decree"). Here, however, Putative Interveners make no argument as to how they would be bound by the settlement if they exercise their rights to opt out.

### 3. Inadequacy of existing representation

The burden to show inadequacy of representation is minimal. *See Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972). But, "[h]owever 'minimal' this burden may be, it cannot be treated as so minimal as to write the requirement out of the rule." *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984). "Where the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (quoting *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 951 (9th Cir. 2009); *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)).

Here, Putative Interveners have not met their burden. They argue that the complaint is legally inadequate, and the settlement is an improper "reverse auction." *See* Mot. at 8–9; Reply to Defs. at 2–3. However, these allegations are conclusory and unsupported by evidence. Ms. Trubitsky's e-mail asserting that *Zepeda* Plaintiffs' counsel is in "cohoots [sic] with [D]efendants aimed upon their settlement fund percentage, not justice for the class," is devoid of explanation. Putative Interveners' arguments do nothing to overcome the presumption of adequacy that arises as a result of the fact that Putative Interveners and *Zepeda* Plaintiffs appear to be seeking the similar goals on behalf of similar classes—injunctive relief and damages to remedy PayPal's alleged practices of restricting users' funds without adequate explanation. *See Freedom from Religion Found.*, 644 F.3d at 841. *Compare* SAC ¶ 31 (Prayer for Relief) *with* TAC at 113–14 (Prayer for Relief). *Compare* SAC ¶ 59 *with* TAC ¶ 1.

Further, the Court notes that Putative Interveners' substantive concerns do not appear to be well-founded. For example, Putative Interveners argue that the SAC is "based on the assumption

11

1   the PayPal User Agreement is a lawful agreement," and the proposed TAC remedies this because
2   it argues that "the entire PayPal User Agreement remains void as procedurally being a contract of
3   adhesion and has substantively unconscionable policies . . . ." *See* Mot. at 2, 3. Putative
4   Interveners argue that "nowhere in the SAC is any reference to California law violations defined
5   found [sic]." *See id.* at 4. However, the SAC does in fact allege a contract of adhesion and
6   unconscionability under California law. *See* SAC ¶¶ 41–42 ("The [User] Agreement is a classic
7   contract of adhesion under California law" and is "procedurally and substantively
8   unconscionable"). Putative Interveners also argue that the SAC should have included citations to
9   specific California Civil Code sections. *See* Mot. at 4. Even assuming that it would have been
10  better to include such citations, the Court finds that the SAC alleges what the Putative Interveners
11  want it to allege—that the User Agreement is a contract of adhesion and is unconscionable under
12  California law. Putative Interveners also appear to argue that "[t]he merit to the complaint is that
13  the Defendants['] conduct violates the [*Comb* Settlement]" and that the SAC does not focus on it
14  sufficiently. *See id.* at 3. However, as Putative Interveners themselves note, a violation of the
15  *Comb* Settlement is included in the SAC as a cause of action. *See id.*; SAC ¶¶ 144–147. Further,
16  even if the alleged infirmities of the SAC resulted in the action's dismissal, it is only the named
17  Plaintiffs who would be prejudiced. Because class certification has not occurred, any dismissal
18  would not affect other potential class members.
19         As for Putative Interveners' citation to *Standard Fire*, their reliance is misplaced. In that
20  case, the Supreme Court held that where a class-action plaintiff stipulates to a limitation on
21  damages before class certification, that stipulation is not binding on a federal court's determination
22  of whether it has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). *Standard*
23  *Fire*, 133 S. Ct. at 1347. The central issue in *Standard Fire* has nothing to do with the case here.
24  As part of its reasoning, the Supreme Court illustrated how the class-action plaintiff's stipulation
25  was contingent—as opposed to binding—and therefore not appropriately relied upon to determine
26  CAFA jurisdiction. *See id.* at 1349. For example, the Court noted that the stipulation was
27  contingent because a court could find that the class-action plaintiff was inadequate as a result of
28  his stipulated minimum damages. *See id.* Here, Plaintiffs have not made any similar stipulation or

1  placed any other analogous limit on their claims. The Court in *Standard Fire* also suggested that
2  "another class member could intervene with an amended complaint (with a stipulation [regarding
3  damages]), and the District Court might permit the action to proceed with a new representative."
4  *See id.* (citing 5 A. Conte & H. Newberg, Class Actions § 16:7, p. 154 (4th ed. 2002)). However,
5  this merely suggests that intervention in class actions is a *possibility*.
6        Putative Interveners' arguments about the inadequacy of counsel and of the complaint also
7  go to issues of class certification and fairness of the settlement—issues which are not before the
8  Court today. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (certification
9  requires, *inter alia*, that "the representative parties will fairly and adequately protect the interests
10 of the class.") (citing Fed. R. Civ. P. 23(a)(4)); *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir.
11 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir.
12 2010)) (to make fairness determination, district court must balance various factors, including, *inter
13 alia*, the strength of plaintiffs' case and the amount offered in settlement). Putative Interveners'
14 citation to *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007) in the
15 context of the "reverse auction" argument actually illustrates this point. In that case, a district
16 court—upon a motion for final approval of a class settlement—refused to grant the motion
17 because of, *inter alia*, procedural fairness issues. *See id.* Additionally, Putative Interveners citation
18 to objections in *Klee v. Nissan North America, Inc.*, 12-cv-08238-AWT-PJW, also illustrate this
19 point—these objections were raised in the context of a motion for final approval of a class
20 settlement. *See id.*, Dkt. Nos. 71, 80. Like the plaintiffs in Putative Interveners' cited cases, the
21 proper place for expressing concerns regarding fairness is in the preliminary and final approval
22 proceedings, which will be held by Judge Armstrong as the presiding judge in this action.

      **4.    Timeliness**

24       The Court declines to find that the Motion is untimely at this stage of the pleadings, before
25 an amended motion for preliminary approval has been filed. *Compare Cin-Lan*, 2011 WL 37970,
26 at *1, *2 (finding no dispute that motion to intervene was timely where it was filed during
27 pendency of motion for preliminary approval of settlement) *with Cohorst*, 2011 WL 3475274, at
28 *5–*6 (motion was untimely where motion to intervene was filed two weeks after the court issued

13

preliminary approval of class settlement). However, one of the timeliness factors is prejudice. *See Cohorst*, 2011 WL 3475274, at *4 (citations omitted). The Court notes that intervention at this stage—after extensive mediated settlement negotiations and when an amended motion for preliminary approval is to be filed soon—would delay the potential resolution of this case. *See, e.g.*, *Cin-Lan*, 2011 WL 37970, at *4. Allowing the Putative Interveners to opt out or object to the settlement in the fairness hearings would be far less disruptive than allowing them to intervene, and it would still preserve their interests. *See id.*

Having found that prejudice would occur, the Court also exercises its discretion to find that permissive intervention under Rule 24(b) is not appropriate because it would "unduly delay . . . the adjudication of the rights of the original parties." *See* Fed. R. Civ. P. 24(b).

### 5. Putative Interveners' other arguments

Putative Interveners also oppose Judge Armstrong's referral of the instant Motion to this Court. *See* Reply to Defs. at 1–2, 3, 9. However, Judge Armstrong has already overruled this objection as it was first presented by Putative Interveners in Docket Number 204. *See* Dkt. No. 206. Moreover, the Court finds that the decision expressed in this order is non-dispositive and thus within the purview of a Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(A). In making this determination, the Court has considered the split in authority noted by Judge Armstrong, and it agrees with those courts that have found that motions to intervene are non-dispositive. *See* Dkt. No. 206 at 2 (citing *Los Cangris v. UMG Recordings, Inc.*, CIV. 10-1349 JAG, 2012 WL 1952824, at *6 n.5 (D.P.R. May 30, 2012)) (collecting cases demonstrating split in authority and concluding that motion to intervene was non-dispositive). As in *Los Cangris* and similar cases, the order on the instant Motion will not dispose "of a party's claim or defense" because Putative Interveners are not parties to this action. *See id.*; Fed. R. Civ. P. 72(a).

Further, 28 U.S.C. § 636(b)(1)(A) provides that a district judge may designate a magistrate judge to "determine" pending pretrial matters, except for certain motions listed in that subsection of the statute; motions to intervene do not appear in that list of exceptions. *See Los Cangris*, 2012 WL 1952824, at *6 n.5. As noted by Judge Armstrong, the instant Motion is not, as asserted by Putative Interveners, one "to dismiss or to permit maintenance of a class action." *See id.* at 2 n.1

14

("maintenance of a class action" exception in 28 U.S.C. § 636(b)(1)(A) refers to a ruling on a motion for class certification).[3]

As for Putative Interveners' arguments regarding Ms. Trubitsky and Mr. Hicks' alleged unauthorized practice of law and other infirmities, the Court notes that these attorneys represent the *Fernando* plaintiffs, and that action is stayed until Judge Cousins rules on the OSC regarding Ms. Trubitsky's failure to appear at the settlement conference in January. *See* Dkt. Nos. 135, 158. *See also* Dkt. No. 205 (Judge Armstrong noting that both Ms. Trubitsky and Mr. Hicks remain counsel of record for *Fernando* plaintiffs). The instant Motion concerns the *Zepeda* action only. Although the Court has noted the *Fernando* plaintiffs' notice of concurrence with Defendants' opposition, their arguments do not have bearing on the instant Motion for the Putative Interveners to become parties to the *Zepeda* action.

Further, Putative Interveners assert that "[t]he court . . . seems to have difficulty understanding class action procedure and lingo" and "confuses a 'non-named class member' to [sic] an appearing 'named class member' who by appearance and submission to the jurisdiction to the court is absolutely a 'party.'" *See* Mot. at 5. The Court finds that this argument is inapposite to the instant issue of whether intervention should be allowed. Further, Putative Interveners' argument that the "tell-tale" of this issue is that *Zepeda* Plaintiffs have not filed an opposition to the Motion is also inapposite. *See* Reply to Defs.' at 8.

Accordingly, Putative Interveners' Motion is DENIED.

**B.      Motion to Amend Complaint**

The Federal Rules of Civil Procedure provide that a court should give leave to plaintiffs to file an amended complaint when justice so requires. *See* Fed. R. Civ. P. 15(a)(2). However, because Putative Interveners may not intervene in this action, they are not plaintiffs and they may not file an amended complaint. Accordingly, the Court DENIES AS MOOT the Motion insofar as it seeks to amend the SAC.

---

[3] If, upon review, Judge Armstrong disagrees and finds that this Motion is dispositive, then this order shall be construed as a report and recommendation of the undersigned. *See* 28 U.S.C. § 636(b)(1)(B).

15

### C. Other Suggestions and Motions

To the extent that Putative Interveners or the parties seek any other relief, the Court DENIES AS MOOT those requests.

## IV. CONCLUSION

For the reasons explained above, the Court DENIES Putative Interveners' Motion. Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, any objections to this Order shall be filed within fourteen days of the date of this Order.

**IT IS SO ORDERED.**

Dated: April 23, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge