UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MOISES ZEPEDA, MICHAEL SPEAR, RONYA OSMAN, BRIAN PATTEE, CASEY CHING, DENAE ZAMORA, MICHAEL LAVANGA, and GARY MILLER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PAYPAL, INC., E-BAY INC., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No: C 10-2500 SBA<br><br>Related to:<br>No. C 10-1668 SBA<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND OBJECTORS' ADMINISTRATIVE MOTION TO CONSIDER APPOINTMENT OF COUNSEL**<br><br>Dkt. 235, 241 |

Plaintiffs Moises Zepeda, Michael Spear, Ronya Osman, Brian Pattee, Casey Ching, Denae Zamora, Michael Lavanga and Gary Miller (collectively "Plaintiffs") bring the instant putative class action against PayPal, Inc. ("PayPal"), and its parent entity, eBay, Inc. ("eBay"). In their Second Amended Complaint ("SAC"), which is the operative pleading before the Court, Plaintiffs seek to challenge PayPal's alleged: (1) placement of "holds" or "reserves" by PayPal on funds held in their PayPal accounts, along with its corresponding failure to provide notice or an explanation of the same; (2) related violations of the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq. ("EFTA") and; (3) violations of the class settlement reached in In re PayPal Litigation (Comb), Case No. C 02-01227 JF ("Comb").

The Court previously denied Plaintiffs' motion for preliminary approval of their proposed settlement, prompting them to negotiate a revised settlement. Dkt. 205. As such, the parties are now before the Court on Plaintiffs' Motion for Preliminary Approval of Class Action Settlement Agreement. Dkt. 231. Objectors oppose the motion and have separately filed an Administrative Motion for Leave to File Motion to Consider Appointment of Class Counsel. Dkt. 241.[1] Having read and considered the papers filed in connection with these matters and being fully informed, the Court hereby DENIES both motions. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

# I. BACKGROUND

## A. OVERVIEW OF THE DISPUTE

PayPal operates an on-line payment processing service that acts as a third party intermediary to facilitate payments between buyers and sellers of goods and services sold on-line through websites such as eBay. See Second Am. Compl. ("SAC") ¶¶ 26-28, Dkt. 110. Once a purchase is made using PayPal, funds are debited from the buyer's account and credited to the seller's account. Id. Sellers may then opt to transfer funds to their bank account or maintain the funds in their PayPal account. Id. Paypal is the "preferred" method of payment for transactions completed on eBay. Id. ¶ 28.

PayPal's subscribers must agree to its User Agreement, among other agreements. Id. ¶ 33. The User Agreement provides that PayPal "may hold funds in a seller's account by placing reserves on accounts and/or limiting and/or suspending seller's accounts and holding the funds in the accounts for up to and in some cases exceeding 180 days," in the event the user violates such agreement, such as by engaging in defined "Restricted Activities." Id. ¶ 36. Notwithstanding that express provision, Plaintiffs allege that PayPal holds, closes, suspends or limits access to user accounts, irrespective of whether it has a

---

[1] The "Objectors" are Reginald Burgess, Lacy and Caleb Reinstma, Amy and Fred Rickel and Collette Tapia. Some of these individuals are party-plaintiffs in the related action Fernando, et al. v. PayPal, Inc., et al., Case No. 10-CV-01668 SBA.

reasonable belief that the user engaged in such activities or otherwise violated the User Agreement. Id. ¶¶ 1-3, 75. In addition, Plaintiffs complain that PayPal fails to provide adequate notice to affected users as to the reasons their funds are being held, how they can secure the release of their funds, or how to avoid "holds" in the future. Id. ¶ 4.

In addition to allegedly violating its own agreements, PayPal also is accused of violating the EFTA, see SAC ¶¶ 125-138, which was enacted "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems," 15 U.S.C. § 1693(b).[2] According to Plaintiffs, they sought clarification from PayPal regarding the account holds, but PayPal "has refused to provide Plaintiffs and the Class [with] any explanation or reasons for the failure to fully transfer the money into their accounts, in violation of the EFTA." Id. ¶ 136.

Finally, Plaintiffs aver that PayPal has breached the class action settlement approved in 2004 by the Honorable Jeremy Fogel in Comb. SAC ¶¶ 144-147. In that case, plaintiffs, on behalf of a class defined as "[a]ll Persons who opened a PayPal account during the period from October 1, 1999 through January 31, 2004," alleged that PayPal routinely "froze" customer accounts flagged as "suspicious," without justification or explanation. Comb Dkt. 234 at 6-7. The parties eventually entered into a settlement agreement that provided both injunctive relief and a settlement fund in the amount of $9.25 million. Id. Dkt. 249. The injunctive relief portion of the settlement was intended "to implement the requirements of the [EFTA] . . . and to address the operating practices which led to widespread complaints by users of the PayPal system." Id. Dkt. 247 at 7.

On November 2, 2004, Judge Fogel finally approved the class settlement in Comb and entered a Final Judgment and Order of Dismissal with Prejudice ("Judgment"). Id.

---

[2] The EFTA protects individual consumer rights by "provid[ing] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b). Damages under the EFTA are capped as follows: "the total recovery . . . in any class action or series of class actions arising out of the same failure to comply by the same person shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant." 15 U.S.C. § 1693m(a)(2)(B).

Dkt. 309. The Judgment specifically states that the Court retains jurisdiction over matters relating to the settlement. Id. ¶ 14. In addition, the Judgment recites: "If PayPal fails to fulfill its obligations under this Agreement completely, the Court retains the power to vacate the provisions of the Judgment releasing, relinquishing, and discharging, and barring and enjoining the prosecution of, the Release Claims against the Released Persons, and to reinstate the Release Claims against the Released Persons." Id.

### B. PRIOR SETTLEMENT AGREEMENT

Following separate mediations in this action and related case Fernando, et al. v. PayPal, Inc., et al., Case No. 10-CV-01668 SBA, the parties reached a global settlement involving both actions. See Moon Decl. ¶¶ 2-3, Dkt. 211-1.[3] Among other things, the parties agreed that the Plaintiffs in this case would file a SAC that also included the claims from the Fernando action and joined eBay as a party-defendant. Pursuant to that agreement, Plaintiffs filed their SAC on October 9, 2012. Dkt. 110. The SAC alleges the following claims: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) breach of fiduciary; (4) accounting; (5) violation of the California Consumer Legal Remedies Act; (6) conversion; (7) violation of California's Unfair Competition Law; (8) unjust enrichment; (9) violation of the EFTA; (10) declaratory relief; (11) violation of the settlement agreement in Comb; and (12) money had and received. Id.

Despite the global settlement, certain of the party-plaintiffs and their counsel in Fernando attempted to renege on and disrupt the global settlement. As a result, the parties in this case reached a separate settlement agreement and subsequently moved for preliminary approval thereof. Dkt. 166, 205. The settlement would have provided for prospective injunctive relief for a Settlement Class defined as "all current and former users

---

[3] The party-plaintiffs in the Fernando action are: Devinda Fernando, Vadim Tsigel, Michail Zinger, Amy Rickel, Fred Rickel, Ira Gilman, Lacy Reintsma and Shaul Behr. The Rickels and Lacy Reintsma are among the instant Objectors. The Fernando action is presently stayed due to the pendency of Magistrate Judge Nathanael Cousins' order to show cause regarding dismissal. A more detailed summary of the procedural history in this case and Fernando is set forth in Zepeda v. PayPal, Inc., No. C 10-2500 SBA, 2014 WL 718509, *2-4 (N.D. Cal. Feb. 24, 2014).

of PayPal who had an active PayPal account between April 19, 2006 and the date of entry of the Preliminary Approval Order." Settlement Agt. § 1.26, Dkt. 166-1. According to the Settlement Agreement, "the primary focus of the settlement is the implementation (or maintenance) of business practices," focused largely on PayPal's policies and practices regarding "holds," "reserves" and "limitations," as those terms are used by PayPal. Id. § 3.3. Defendants agreed to pay $1,425,000 into a Settlement Fund, from which $712,500 in attorneys' fees, and $5,000 incentive awards for each of the eight class representatives were to be deducted. Id. § 1.24. The remainder of the Settlement Fund was to be contributed as a cy pres award to the Electronic Frontier Foundation. Id. § 3.7. No part of the Settlement Fund was designated for distribution to class members.

As consideration for the settlement, the Settlement Class (i.e., in essence, anyone who has used PayPal since 2006) was to release Defendants from liability for any Released Claims, which are defined as any claims that: (1) were or could have been brought in this case, the Fernando action or prior actions, including Comb; (2) relate to "the placing of holds, reserves or any other limitations on PayPal transactions or accounts"; (3) relate to the payment of any interest on funds subject to a hold; (4) "in any respect relate to Defendants' obligations under the EFTA and/or Regulation E"; (5) "relate in any respect to Defendants' obligations under the Comb settlement"; or (6) arise out of or relate to the administration of the instant settlement. Id. §§ 1.20, 5.1.

The Court denied the motion for preliminary approval without prejudice due to concerns regarding the overbroad definition of the Settlement Class, the scope of the claims being released and the questionable benefit of the settlement to class members. Dkt. 205.[4] The Court explained:

> The gravamen of Plaintiffs' claims is that PayPal inappropriately places reserve holds of up to 180 days on certain accounts and fails to provide adequate notice of the same to affected users. See, e.g., SAC ¶¶ 1-9. Despite the relatively discrete nature of the business practices being targeted and users affected in this case, the Settlement

---

[4] See Zepeda v. PayPal, Inc., No. C 10-2500 SBA, 2014 WL 718509 (N.D. Cal. Feb 24, 2014).

> Agreement broadly defines the Settlement Class as any person who has used PayPal at any time since April 9, 2006, irrespective of whether the user was affected by this reserve practice at issue. Settlement Agreement § 1.26. At the same time, the Settlement Agreement calls for the Settlement Class to release any and all claims relating not only to such practice—but also any claims "that *relate in any respect* to Defendants' obligations under the EFTA and/or Regulation E" as well as any claims that "*relate in any respect* to Defendants' obligations under the Comb settlement[.]" Id. § 1.20 (emphasis added). In other words, the Settlement Agreement effectively immunizes PayPal and eBay from any liability for any claims predicated on violations of the Comb settlement or EFTA.

Dkt. 205 at 10-11. The Court also questioned Plaintiffs' failure to explain why the Settlement Class includes PayPal users dating back to 2006, when, in the SAC, they allege that PayPal began its allegedly unlawful practice of holding funds in 2008. Id. at 11 n.8 (citing SAC ¶¶ 15, 16). The Court granted Plaintiffs leave to file a renewed motion for preliminary approval within thirty days. Id. The Court subsequently granted the parties' stipulated requests to extend that deadline to facilitate their efforts to revise the settlement. Dkt. 210, 217.

### C. REVISED SETTLEMENT AGREEMENT

Following the Court's rejection of their settlement, the parties convened at JAMS in March and June 2014 for two full day sessions with a private mediator, the Honorable Edward Infante (ret.). Todzo Decl. ¶ 3, Dkt. 235-1; Infante Decl. ¶¶ 2-3, Dkt. 235-1. Messrs. Jeffrey Leon of Quantum Legal Services LLC and Mark Todzo of Lexington Law Group LLC represented Plaintiffs and the Class in their discussions with defense counsel.

Todzo Decl. ¶ 3.[5]  According to Judge Infante, the negotiations were arms-length, non-collusive and contentious.  Infante Decl. ¶ 3.

The revised settlement creates two classes:  (1) an Injunctive Relief Class and (2) a Claims Class.  The Injunctive Relief Class is defined as "all current and former users of PayPal in the United States who had an active PayPal account between April 19, 2006 and the date of entry of the Preliminary Approval Order" and consists of approximately 100 million PayPal accountholders.  Settlement § 1.19.  The Injunctive Relief Class is intended primarily to address claims that are *not* based on damages that arise from a violation of the settlement in Comb and related violations of the EFTA, including PayPal's alleged failure to provide annual error-resolution notices and monthly account statements.  Settlement §§ 1.19, 1.20.

The Claims Class is comprised of "all current and former users of PayPal in the United States who:  (1) had an active PayPal account between April 19, 2006 and the date of entry of the Preliminary Approval Order; and (2) had a hold or reserve placed on the account and/or the account was closed or suspended by PayPal."  Settlement Agt. § 1.6.  The Claims Class is intended to address claims for damages allegedly resulting from either a hold or a reserve on funds held in a PayPal account, or due to the suspension or closure of a PayPal account.  Id. §§ 1.6, 1.7.  Plaintiffs indicate that there are approximately 10.5 million PayPal accountholders in the Claims Class.  Dkt. 235 at 7.

---

[5] Pursuant to Federal Rule of Civil Procedure 23(g), Judge Fogel, who previously presided over this action, appointed Freed & Weiss LLC, as Interim Lead Counsel, and Lexington Law Group LLC as Interim Liaison Counsel.  Dkt. 49.  Freed & Weiss later changed its name to Complex Litigation Group LLC, Dkt. 77, which then became Quantum Legal Services.  Dkt. 262.  Objectors assert that Mr. Leon had no right to represent Plaintiffs and negotiate the settlement because (1) he is not authorized to practice in this Court and (2) his firm, Quantum Legal Services, was not among the firms appointed as interim counsel.  These contentions lack merit.  Though Mr. Miller inadvertently failed to file a pro hac vice application when he first appeared in this action, he has since been admitted pro hac vice.  See Dkt. 252.  As to Objectors' second point, the record indicates that Quantum Legal Services is the successor to Freed & Weiss.  Dkt. 49, 77, 262.  Though Objectors claim that Quantum Legal Services is an entirely "new firm," they provide no factual support for that assertion.

- 7 -

As before, the revised settlement requires PayPal to modify the disclosure of its reserve and hold practices and improve transparency regarding the dispute resolution process. Unlike the prior settlement, the revised settlement provides for a $3.2 million settlement fund, of which at least $1,840,000 will be available to pay claims of Claims Class members who had holds or reserves placed on their accounts and lost interest income. The revised settlement also creates a separate fund of $800,000 for "Alternate Claims" from which class members can pursue individual claims for damage to business (subject to a $2,000 cap per claimant) upon presentation of proper documentation. Settlement §§ 4.4, 4.5.

In response to the Court's concern that the prior class release was overbroad, the revised settlement provides that Settlement Class members who only are members of the Injunctive Relief Class will not release claims for damages (other than statutory damages under the EFTA). Second, to address the Court's concern that the prior settlement included a release of claims for monetary damages but did not provide for payments to class members, the current settlement provides that members of the Claims Class may submit either a claim for payment from a settlement fund based on the length and amount of the longest hold or reserve placed on the account or, alternatively, a claim based on documentation of actual damages.

On August 14, 2014, Plaintiffs filed their amended motion for preliminary approval, to which Defendants have filed a joinder. Dkt. 235, 237. In addition to seeking preliminary approval of the settlement as summarized above, Plaintiffs request: (1) provisional certification of the two proposed Settlement Classes, (2) the appointment of (a) the Complex Litigation Group, (b) Lexington Law Group, (c) Farmer, Jaffe, Weissing, Edwards, Fistos & Leherman, P.L., and (d) Seeger Weiss LLP, as Class Counsel; (3) approval of the proposed Class Notice; and (4) and the scheduling of a final approval hearing.

In response to Plaintiffs' motion, the Court has received Objectors' "Objection to Preliminary Approval of Settlement Re: Settlement Motion, Consent Judgment." Dkt. 238.

Separately, Objectors filed an Administrative Motion for Leave to File Motion to Consider Appointment of Class Counsel, which is separately opposed by Plaintiffs and Defendants. Dkt. 238, 241.

## II. DISCUSSION

### A. MOTION FOR PRELIMINARY APPROVAL

#### 1. Legal Standard

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlement in order "to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." In re Syncor ERISA Litig., 516 F.3d 1095, 1100 (9th Cir. 2008). The approval process entails two-steps: (1) preliminary approval of the settlement; and (2) final approval of the settlement at a fairness hearing following notice to the class. See Manual for Complex Litig. § 21.632 (4th ed. 2004). Final approval is conferred "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982).

To make a Rule 23(e) fairness determination, the district court must balance a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. See Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003). These factors are subject to "heightened scrutiny" in cases, such as the present, where the settlement is reached prior to class certification. In re Online DVD-Rental Antitrust Litig., -- F.3d --, 2015 WL 846008, *5 n.6 (9th Cir. Feb. 27, 2015) (citing In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 940 (9th Cir. 2011)).

At the preliminary approval stage, "a full fairness analysis is unnecessary . . . ." Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotations and

citation omitted). Rather, preliminary approval of a settlement and notice to the proposed class is appropriate: if "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval . . . ." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)). The "initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." Officers for Justice, 688 F.2d at 625.

### 2. Analysis

To assess whether the proposed settlement is the result of non-collusive negotiations, the Court first considers the means by which the parties reached their settlement. See Staton v. Boeing Co., 327 F.3d 938, 960 (9th Cir. 2003). Here, the parties engaged in two separate, full-day mediations overseen by Judge Infante, a neutral mediator. Todzo Decl. ¶ 3; Infante Decl. ¶¶ 2-6. Judge Infante confirms that the negotiations were arms-length and adversarial. Infante Decl. ¶ 3. The involvement of a mediator in the settlement process weighs against a finding of collusion. See In re Bluetooth Headset Products Liab. Litig., 654 F.3d at 948 (holding that the participation of mediator is "a factor weighing in favor of a finding of non-collusiveness"). Although Objectors assert that the settlement discussions were collusive, they offer no factual support for this conclusory assertion.

The next relevant consideration is whether there are obvious deficiencies in the settlement agreement. The Court previously expressed concern, inter alia, that the releases were overbroad in relation to the injunctive relief being afforded. The parties have purported to address those concerns by offering both injunctive and monetary relief. To effectuate this change, the revised settlement creates two settlement classes—one to facilitate claims for actual damages and the other which will be entitled to injunctive relief. The releases have been narrowed concomitant with the relief the class member is receiving; e.g., class members who are only members of the Injunctive Relief Class will not release claims for damages (other than statutory damages under the EFTA).

Objectors do not specifically address the terms of the revised settlement. Rather, they summarily assert that both settlements are the "same," and that the revised settlement is "primarily designed to destroy the force and effect of the Comb v. Paypal settlement," insofar as it relates to the EFTA. Dkt. 238 at 3-6. As an initial matter, Objectors' objections are not properly before the Court. Objections to a proposed class settlement are more appropriately adjudicated at the final approval hearing, as opposed to the preliminary approval stage. See Lane v. Facebook, Inc., No. C 08-3845 RS, *5 (N.D. Cal., Oct. 23, 2009). But even if the objections were properly before the Court, Objectors fail to identify what benefit of the Comb settlement will be lost as a result of the revised settlement or otherwise provide any cogent legal analysis to support their argument.

The above notwithstanding, the Court independently questions whether any claim based on alleged violations of the Comb settlement can and/or should be litigated *in this action*. Under the terms of the Judgment entered in Comb, the Court retained jurisdiction over any dispute over the enforcement of that settlement, including any claim that PayPal has not fulfilled its obligations under that agreement. Comb Dkt. 309 ¶ 14. Given that provision, the Court has concerns regarding whether it is appropriate for Plaintiffs to allege—or the parties to settle—a claim based on a breach of the Comb settlement agreement, particularly where, as here, the settlement agreement contemplates that disputes over the settlement will be raised in that action.

In their reply, Defendants suggest that there is limited overlap between this case and Comb, claiming that "the Comb settlement does not resolve the same claims that are at issue here, and the Settlement Class here does not cover the same time period or involve the same underlying agreements." Dkt. 254 at 6-7. It is true that the class period in Comb (i.e., persons who *opened* a PayPal account from October 1, 1999 through January 31, 2004) differs from the class in this action (i.e., persons who *had* an active PayPal account between April 19, 2006, and the date of the preliminary approval order). However, as Defendants acknowledge, there is overlap between the two classes, as PayPal accounts opened between October 1, 1999 and January 31, 2004, could very well be in existence as of April 19, 2006.

1   Moreover, the substantive interrelationship between this action and Comb is readily
2   apparent, as exemplified by the SAC's allegation that "PayPal has repeatedly disregarded
3   and violated the above listed provisions [of the Comb settlement agreement] with respect to
4   Plaintiffs and the class."  SAC ¶ 146.
5       Finally, the Court notes that the parties still do not explain why both settlement
6   classes include persons who have been PayPal accountholders since 2006, given that the
7   disputed practices began in 2008.  As the Court noted in its prior order, "[t]here are no
8   allegations of improper conduct occurring in 2006 or 2007, and the earliest that any of the
9   named class representatives suffered any alleged injury was in August 2008.  Id. at 11 n.8
10  (citing SAC ¶¶ 15, 16).  None of the motion papers submitted by Plaintiffs and Defendants
11  in connection with the instant motion address this issue.
12      In sum, the Court finds that while the revised settlement addresses a number of the
13  concerns that led to the rejection of the prior settlement, obvious deficiencies continue to
14  exist.  Because of these deficiencies, the Court is not persuaded that the settlement would
15  ultimately pass muster as "fair, reasonable and adequate, as required by Rule 23(e)(2),
16  particularly under heightened scrutiny to which pre-certification settlements are subject.  In
17  light of this decision, the Court need not reach Plaintiffs' remaining request to conditionally
18  certify a settlement class.  Accordingly, Plaintiffs' Motion for Preliminary Approval of
19  Class Action Settlement Agreement is DENIED.
20      **B.    OBJECTORS' ADMINISTRATIVE MOTION**
21      Objectors contend that both this case and the related Fernando action are
22  "essentially . . . enforcement actions of the Comb v. PayPal settlement" which therefore
23  should be consolidated with a new class representative and new counsel appointed to
24  prosecute the matter.  Dkt. 241 at 3.  To that end, Objectors seek an order: (1) "draft[ing]"
25  the law firm of Girard Gibbs LLP ("Girard Gibbs") to act as class counsel in this case;
26  (2) requiring all parties "to work with them" in negotiating a new settlement; (3) directing
27  Liaison Counsel "to file a consolidated complaint . . . to include the putative interveners as
28

1  parties"; and (4) excusing Mr. Leon, Marina Trubitsky, David Hicks and Julie Miller from
2  the foregoing process. Dkt. 242 at 4.[6] Plaintiffs and Defendants oppose the motion.
3       As an initial matter, the Court disagrees with the premise that Plaintiffs' claim
4  regarding Paypal's alleged violation of the Comb settlement is the only salient claim
5  remaining in this action. But even if it were, the Court, for the reasons discussed above,
6  has serious concerns regarding whether a claim predicated upon compliance with the Comb
7  settlement is more appropriately pursued directly in the Comb action. That aside, the Court
8  cannot simply appoint Girard Gibbs to replace Quantum Legal Services as Interim Lead
9  Counsel. Rule 23(g) typically allows a district court to appoint as class counsel only
10 counsel who have actually applied for the position. See Fed. R. Civ. P. 23(g) Advisory
11 Committee Notes, 2003 Amendments, Subdivision (g), Paragraph (2) ("In a plaintiff class
12 action the court usually would appoint as class counsel only an attorney or attorneys who
13 have sought appointment."); Williams v. Jones, No. 9:14-cv-00787-RMG-BM, 2014 WL
14 2155251, *6 (D.S.C. May 22, 2014) ("Rule 23(g) presumes that, in the typical class action,
15 the court will be approving the appointment of counsel who has previously applied for such
16 appointment."). Girard Gibbs has not sought to be appointed as Interim Lead Counsel nor
17 is there any indication that it is even aware that Objectors are seeking its appointment in
18 this action. Accordingly, Objectors' Administrative Motion to Consider Appointment of
19 Class Counsel is DENIED.

20 **III.   CONCLUSION**
21       In view of the heightened standard of scrutiny applicable to pre-class certification
22 settlements, the Court is not persuaded that preliminary approval of the revised settlement
23 is warranted. Accordingly,
24 //
25 //
26

---

27  [6] Marina Trubitsky and David Hicks are plaintiffs' counsel in Fernando. Ms. Miller previously represented Plaintiffs in this action, but has not been counsel of record since
28 July 18, 2013. Dkt. 182.

- 13 -

IT IS HEREBY ORDERED THAT:

1. Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Dkt. 235) is DENIED.

2. Objectors' Administrative Motion to Consider Appointment of Class Counsel (Dkt. 241) is DENIED.

3. Within twenty-one (21) days of the date this Order is filed, the parties (i.e., Plaintiffs and Defendants) shall file a Joint Case Management Conference Statement. In the course of preparing the joint statement, the parties shall meet and confer regarding, without limitation: (1) the propriety of litigating and/or settling any claims based on alleged violations of the Comb settlement, particularly in light of the retention of jurisdiction provision contained in the Comb Judgment; (2) whether a further mediation is anticipated; (3) a proposed pretrial and trial schedule in accordance with Federal Rule of Civil Procedure 16; and (4) whether they anticipate consenting to the jurisdiction of a Magistrate Judge of this Court for all purposes. The results of the meet and confer process shall be set forth in the Joint Case Management Statement, which shall comply with the Standing Order for All Judges of the Northern District of California and the Standing Orders of this Court. Upon its review of the joint statement, the Court may convene a Case Management Conference or issue a scheduling order, as it deems appropriate. The Court may strike any unauthorized filing relating to the joint statement.

IT IS SO ORDERED.

Dated: 3/25/15

SAUNDRA BROWN ARMSTRONG
United States District Judge