MARK N. TODZO (State Bar No. 168389)
LEXINGTON LAW GROUP
503 Divisadero Street
San Francisco, California  94117
Telephone:     415.913.7800
Facsimile:     415.759.4112
Email: mtodzo@lexlawgroup.com

JEFFREY A. LEON
QUANTUM LEGAL LLC, LLC
513 Central Avenue Suite 300
Highland Park, IL 60035
Telephone:     847.433.4500
Facsimile:     847.433.2500
Email: jeff@QULegal.com

Attorneys for Plaintiff
MOISES ZEPEDA, et. al.
and All Others Similarly Situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – OAKLAND BRANCH**

| | |
|---|---|
| MOISES ZEPEDA, MICHAEL SPEAR, RONYA OSMAN, BRIAN PATTEE, CASEY CHING, DENAE ZAMORA, MICHAEL LAVANGA, and GARY MILLER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PAYPAL, INC., a Delaware Corporation,<br><br>Defendant. | **Case No.  10-CV-02500 SBA**<br><br>NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION SETTLEMENT AGREEMENT<br><br>Action Filed: June 7, 2010<br><br>Date:     October 14, 2015<br>Time:   1:00 p.m.<br>Ctrm.: G |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 14, 2015 at 1:00 p.m., or as soon thereafter as this matter may be heard before the Honorable Saundra Brown Armstrong, in Courtroom 1 of the above-captioned Court, located at 1301 Clay Street, Oakland, California 94612, plaintiffs Moises Zepeda, Michael Spear, Ronya Osman, Brian Pattee, Casey Ching, Denae Zamora, Michael Lavanga and Gary Miller, on behalf of themselves and the putative class, will and hereby do move this Court for entry of an order: (i) granting preliminary approval of the proposed settlement set forth in the class action Settlement Agreement, attached as Exhibit A to Exhibit 1 of the Declaration of Mark N. Todzo; (ii) conditionally certifying the Settlement Class, which is comprised of the Injunctive Relief Class and the Claims Class, for purposes of such settlement by way of a [Proposed] Order Granting Preliminary Approval; (iii) approving plaintiffs' selection of class counsel; (iv) approving the proposed notice plan; and (v) setting a hearing date for final approval thereof.  This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, including the exhibits and declarations attached thereto, the other papers on file in this action, and such other submissions or arguments that may be presented before or at the hearing on this motion.

DATED: September 9, 2015         Respectfully submitted,

QUANTUM LEGAL, LLC


By:   /s/ Jeffrey A. Leon
      Jeffrey A. Leon
      Attorneys for Plaintiffs
      MOISES ZEPEDA, MICHAEL SPEAR,
      RONYA OSMAN, BRIAN PATTEE, CASEY
      CHING, DENAE ZAMORA, MICHAEL
      LAVANGA, and GARY MILLER, on Behalf of
      Themselves and All Others Similarly Situated

DATED: September 9, 2015      Respectfully submitted,

LEXINGTON LAW GROUP

By: /s/ Mark N. Todzo
     Mark N. Todzo
     Attorneys for Plaintiffs
     MOISES ZEPEDA, MICHAEL SPEAR,
     RONYA OSMAN, BRIAN PATTEE, CASEY
     CHING, DENAE ZAMORA, MICHAEL
     LAVANGA, and GARY MILLER, on Behalf of
     Themselves and All Others Similarly Situated

DATED: September 9, 2015      Respectfully submitted,

FARMER, JAFFE, WEISSING, EDWARDS, FISTOS
& LEHERMAN, P.L.

By: /s/ Steven R. Jaffe
     Steven R. Jaffe
     Attorneys for Plaintiffs
     MOISES ZEPEDA, MICHAEL SPEAR,
     RONYA OSMAN, BRIAN PATTEE, CASEY
     CHING, DENAE ZAMORA, MICHAEL
     LAVANGA, and GARY MILLER, on Behalf of
     Themselves and All Others Similarly Situated

DATED: September 9, 2015      Respectfully submitted,

KOHN, SWIFT & GRAF, P.C.

By: /s/ Jonathan Shub
     Jonathan Shub
     Attorneys for Plaintiffs
     MOISES ZEPEDA, MICHAEL SPEAR,
     RONYA OSMAN, BRIAN PATTEE, CASEY
     CHING, DENAE ZAMORA, MICHAEL
     LAVANGA, and GARY MILLER, on Behalf of
     Themselves and All Others Similarly Situated

ii

1

# <u>TABLE OF CONTENTS</u>

2    I.      INTRODUCTION ........................................................ 1

3    II.     STATEMENT OF FACTS ............................................. 3

4          A.     Procedural and Factual Background ................................ 3

5          B.     The Proposed Settlement ......................................... 5

6                  1.     Consideration to the Settlement Class ............................ 5

7                  2.     Attorneys' Fees And Costs And Service Awards .................... 7

8                  3.     Settlement Administration ...................................... 7

9                  4.     The Release ................................................... 8

10   III.    ARGUMENT ........................................................ 8

11          A.     The Court Should Grant Preliminary Approval Of The Settlement. ........... 8

12          B.     This Settlement Is The Product of Serious, Informed, Arm's-Length
               Negotiations. ................................................... 9

13

14          C.     The Settlement Has No "Obvious Deficiencies" And Falls Well Within The
               Range Of Possible Approval. ...................................... 9

15          D.     Provisional Certification Of The Settlement Class Is Appropriate. ........... 13

16                  1.     The Criteria For Class Certification Under Rule 23(a) Are Satisfied. .... 13

17                  2.     The Injunctive Relief Class Meets The Requirements Of Rule 23(b)(2).  14

18                  3.     The Claims Class Meets the Requirements Of Rule 23(b)(3). ........ 15

19          E.     The Proposed Class Notice Satisfies The Requirements Of Due Process. ..... 16

20   IV.    CONCLUSION ...................................................... 16

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL
Case No. 10-CV-02500 SBA

1

## **TABLE OF AUTHORITIES**

2

### **CASES**

3   *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . .   8

4   *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

5   *Bjustrom v. Trust One Mgmt. Corp.*, 199 F.R.D. 346, 348 (W.D. Wash. 2001) . . . . . . . . .   13, 14

6   *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D. 623, 630 (N.D. Ca. 2005) . . . . . . . .   15

7   *Cicero v. DirecTV, Inc.*, EDCV 07-1182, 2010 WL 2991486, at \*3 (C.D. Cal. July 27, 2010) .   8

8   *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 592-93 (C.D. Cal. 2011) . . . . . . . . . . . . . . . . . .   14, 15

9   *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007) . . . . . . . . . . . . . . . . . .   13, 14, 15

10  *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig)*, 213 F.3d 454, 458 (9th Cir. 2000) . .   8, 9

11  *Farinella v. PayPal, Inc.*, 611 F. Supp. 2d 250 (E.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . .   12

12  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . .   14, 15

13  *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) . . . . . . . .   7

14  *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) . . . . . . . . . . . . .   8

15  *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other*
16  *grounds*, 459 U.S. 810 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13, 14

17  *Linney v. Cellular Alaska P'ship*, C-96-3008 DLJ, 1997 WL 450064, at \*5 (N.D. Cal. July 18,
    1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

18  *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at \*9 (N.D. Cal.
19  Aug. 28, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

20  *Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 5402120, at \*6 (N.D. Cal. Sept.
    26, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

21  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) . . . . . . . . . . . . . . . . . .   7, 16

22  *Vasquez v. Coast Valley Roofing, Inc.*, 2009 U.S. Dist. LEXIS 106973, 2009 WL 3857428, at \*7
23  (E.D. Cal. Nov. 17, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

24  *Williams v. Costco Wholesale Corp.*, 2010 U.S. Dist. LEXIS 19674, \*15 (S.D. Cal. Mar. 4, 2010)
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

25  *Wright v. Lucas Enterprises*, 259 F.R.D. 468, 472 (E.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . .   8

26

27

### **STATUTES**

28  15 U.S.C. §§ 1693(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

1    15 U.S.C. § 1693M(a)(2)(B)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

2    Cal. Civ. Code § 1750 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

3    Cal. Bus. & Prof. Code § 17200 *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

4                                        **RULES**

5    Fed. R. Civ. P. 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

6    Fed. R. Civ. P. 23(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

7    Fed. R. Civ. P. 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

8

9                                 **OTHER AUTHORITIES**

10   *Manual for Complex Litigation* (Fourth) (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

11   William B. Rubenstein *et al.*, *Newberg on Class Actions* (4th ed. 2002) . . . . . . . . . . . . . . . .   8

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

This case is a consolidation of the claims asserted against defendants PayPal, Inc. ("PayPal") and eBay Inc. ("eBay") (together, "Defendants") in two cases pending before this Court, *Zepeda, et al. v. PayPal, Inc., et al.*, No. 10-CV-02500 SBA, and *Fernando, et al. v. PayPal, Inc., et al.*, No. 10-CV-01668 SBA.  Plaintiffs in these cases had asserted various claims against Defendants primarily arising from: (1) the placement of "holds" or "reserves" by PayPal on funds held in PayPal accounts; and (2) alleged violations of the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.* (the "EFTA"), and a settlement in a prior EFTA-related case, *In re PayPal Litigation (Comb)*, No. CV-02-01227-JF (PVT) (N.D. Cal.).

On August 15, 2014 Plaintiffs Moises Zepeda, Michael Spear, Ronya Osman, Brian Pattee, Casey Ching, Denae Zamora, Michael Lavanga and Gary Miller (the "*Zepeda* Plaintiffs" or "Plaintiffs")  respectfully applied to this Court for entry of an order granting preliminary approval of a proposed class-action settlement (the "Agreement"), which would have resolved both actions.[1]  On March 25, 2015, this Court issued an order denying preliminary approval in which this Court (i) questioned its jurisdiction over enforcement of a prior settlement in the *Comb* action and (ii) had questions about releases for claims dating back to 2006.  After arms-length negotiations, the settlement in this action has been amended to exclude the claim concerning the *Comb* settlement from the proposed Third Amended Complaint,[2] and to exclude the *Comb* settlement from the scope of the release to be given to PayPal.[3]  All of this has been done without

_____

[1] A copy of the Agreement is attached to the Declaration of Mark N. Todzo ("Todzo Decl.") as Exhibit A.

[2] A copy of the proposed Third Amended Complaint is attached to the Todzo Decl. as Exhibit 6.

[3] A copy of the Amendment to Settlement Agreement (the "Amendment") is attached to the Todzo Decl. as Exhibit 1.  To date, the Amendment has been signed by Defendants, Defendants' counsel, Plaintiffs' counsel and Plaintiffs Spear, Pattee, Ching and Miller.  Plaintiffs plan to supplement the record with the remaining Plaintiffs' signatures prior to the October 14, 2015 hearing date.  In the event that Plaintiffs are unable to obtain a signature from one or more of the (footnote continued)

1

1    reducing the class benefit by a single penny. In other words, the release has been narrowed

2    without any reduction in the settlement benefit to be paid to the Class. The Settlement, which

3    makes the class nearly whole for lost interest as a consequence of PayPal holds, including holds

4    that went back all the way to 2006, is more than within the bounds of fairness, reasonableness and

5    adequacy, and should be approved.

6          As amended, the settlement continues to provide benefits to two separate classes. The first

7    class (the "Injunctive Relief Class") is designed primarily to address claims for violations of the

8    EFTA that are not associated with any alleged damages, including PayPal's alleged failure to

9    provide annual error-resolution notices and monthly account statements, and consists of

10    approximately 100 million PayPal accountholders. The second class (the "Claims Class")

11    (together with the Injunctive Relief Class, the "Settlement Class") is designed to address claims

12    for damages allegedly resulting from either a hold or a reserve on funds held in a PayPal account,

13    or due to the suspension or closure of a PayPal account, and consists of approximately 10.5

14    million PayPal accountholders.[4] The Agreement continues to provide that Settlement Class

15    members who are members of only the Injunctive Relief Class will not release claims for damages

16    (other than statutory damages under the EFTA), and continues to provide a mechanism for

17    members of the Claims Class to submit either a claim for payment from a settlement fund based

18    on the length and amount of any holds or reserves or, alternatively, a claim based on

19    documentation of actual damages.

_____

remaining plaintiffs in advance of the hearing, such individuals will be dropped as class representatives from the forthcoming Third Amended Complaint.

[4] The Injunctive Relief Class is defined as "all current and former users of PayPal in the United States who had an active PayPal account between April 19, 2006 and the date of entry of the Preliminary Approval Order." The Claims Class defined as those members of the Injunctive Relief Class who "had a hold or reserve placed on the account and/or the account was closed or suspended by PayPal." (Agreement §§ 1.6, 1.19.) The class period runs from four years (the applicable limitations period) prior to the filing of the first complaint. Other than a few additional exclusions in the class proposed in the Second Amended Complaint (e.g, for Defendants' employees), the Injunctive Relief Class is identical to the class proposed in the operative Second Amended Complaint, and the Claims Class is a subset of the Injunctive Relief Class.

Finally,  the settlement continues to provide the primary relief to the Settlement Class through reform in the disclosure process employed by PayPal, including: (1) more prominent and clarified disclosure of the fact that, by agreeing to use PayPal, sellers agree that PayPal reserves the right to place holds and reserves on the accounts; (2) PayPal's agreement that they will generally disclose to sellers who have been subjected to holds the reasons for the holds, subject to PayPal's security considerations; and (3) more prominent and clarified disclosure of dispute resolution procedures.  In addition, the Agreement creates a settlement fund of $3.2 million, of which at least $1,840,000 will be available to pay claims of Claims Class members who had holds or reserves placed on their accounts (which is an amount in excess of the amount of interest that would have accrued on the held funds at market rates).  Alternatively, PayPal will pay up to $800,000 to Claims Class members based on documentation of actual damages.  This proposed settlement is fair to all parties and should be preliminarily approved.

## II.   STATEMENT OF FACTS

### A.   Procedural and Factual Background

Defendant PayPal is an online payment processing service that provides individuals and businesses the ability to accept payment for goods and services.   Plaintiffs allege that they are users of the PayPal payment services as sellers.  Plaintiffs seek to represent a nationwide class of PayPal account holders who, like them, have used PayPal to send and receive payments.

The original complaint in this action was filed on June 7, 2010.  (Dkt. No. 1.)  On August 13, 2010, Plaintiffs filed a First Amended Complaint (the "*Zepeda* FAC") challenging PayPal's practice of holding funds in PayPal accounts.  (Dkt. No. 22.)  The *Zepeda* FAC alleged causes of action for: (1) breach of the PayPal User Agreement; (2) breach of fiduciary duty; (3) an accounting; (4) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*; (5) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; and (6) unjust enrichment.  (*Id.*)  Plaintiffs filed a motion to appoint lead counsel on October 21, 2010, which the Court granted on February 15, 2011.  (Dkt. Nos. 28, 49.)

On September 30, 2010, PayPal moved to dismiss the *Zepeda* FAC on the grounds, among

1   others, that the PayPal User Agreement expressly grants sole discretion to PayPal to place holds

2   and reserves on PayPal accounts.  (Dkt. No. 26.)  On February 15, 2011, the Court granted

3   PayPal's motion, dismissing the *Zepeda* FAC with leave to amend.  (Dkt. No. 49.)  The parties

4   subsequently agreed to explore a possible resolution of Plaintiffs' claims.

5           Plaintiffs in *Fernando* (the "*Fernando* Plaintiffs") filed their initial complaint on April 19,

6   2010, asserting claims against PayPal and eBay for: (1) violation of the *Comb* settlement

7   agreement; (2) conversion; (3) money had and received; (4) unjust enrichment; and (5) negligence.

8   (*Fernando* Dkt. No. 1.)   On October 18, 2010, PayPal filed a motion to dismiss the initial

9   complaint.  (*Fernando* Dkt. No. 15.)  Before PayPal's motion was heard, the motion was taken off

10  calendar to allow the *Fernando* Plaintiffs time to amend.  (*Fernando* Dkt. No. 17-22.)  The

11  *Fernando* Plaintiffs thereafter filed their First Amended Complain (the "*Fernando* FAC"), adding

12  claims for breach of the PayPal User Agreement and violation of the EFTA.  (Dkt. No. 23.)

13  PayPal moved to dismiss the *Fernando* FAC on June 27, 2011 (*Fernando* Dkt. No. 26), but the

14  motion was taken off calendar to promote settlement discussions.

15          Defendants and the *Zepeda* Plaintiffs participated in mediation before Randall W. Wulff on

16  May 16, 2011, which resulted in an agreed-upon class settlement.  On December 20, 2011, the

17  parties in *Fernando* participated in a separate mediation before the Honorable Ellen James (Ret.),

18  which resulted in an agreement by all parties to certify a single settlement class and to settle all

19  claims in the *Zepeda* and *Fernando* actions through a unified class settlement in *Zepeda*.  (*Id.*)

20          In October 2012, a Settlement Agreement was executed by the *Zepeda* Plaintiffs and

21  Defendants.  (*Id.*)  Pursuant to the settlement terms, the *Zepeda* Plaintiffs amended their complaint

22  to assert all claims alleged in both *Fernando* and *Zepeda* and thereafter sought preliminary

23  approval of the settlement.  (Dkt. No. 166.)[5]  On February 24, 2014, the Court denied Plaintiffs'

24  motion for preliminary approval without prejudice.  (Dkt. No. 205.)

25

26          [5] Required notice under the Class Action Fairness Act was provided in connection with the
    filing of the prior preliminary approval motion and will be provided again within ten days after the

27  filing of this Motion.

28

MOTION FOR PRELIMINARY APPROVAL
Case No. 10-CV-02500 SBA

1    The parties subsequently engaged in a renewed mediation, this time supervised by the

2    Honorable Edward A. Infante (Ret.), a former Chief Magistrate Judge for the Northern District.

3    After two full-day mediation sessions with Judge Infante and significant additional arms-length

4    negotiations, the parties agreed to modify the settlement, as set forth in the revised Agreement.

5    That new Settlement Agreement was presented to this Court for Preliminary Approval on

6    August 14, 2014, and this Court denied Preliminary Approval in an order dated March 25, 2015,

7    stating that "the Court has concerns regarding whether it is appropriate for Plaintiffs to allege – or

8    the parties to settle – a claim based on a breach of the Comb settlement agreement, particularly

9    where … the settlement agreement contemplates that disputes over the settlement will be raised in

10   that action."  (Dkt. No. 264 at 11.)  The Court further asked for an explanation as to why the class

11   includes persons who had holds since 2006 when the allegations of improper conduct are focused

12   on the 2008 period.  (*Id.* at 12.)

13   **B.    The Proposed Settlement**

14   **1.    Consideration to the Settlement Class**

15   As part of the settlement, PayPal will again agree to commit to the following business

16   practices and to maintain them for two years pursuant to the terms of the Agreement: (1) PayPal

17   will disclose its use of fraud and risk modeling in the PayPal User Agreement; (2) PayPal will no

18   longer respond to requests for information with an email advising users that they must seek a

19   subpoena to obtain information and will revise its email response to advise users to communicate

20   with PayPal to seek additional information; (3) PayPal will revise the PayPal User Agreement to

21   more clearly distinguish among "holds," "reserves" and "limitations"; (4) PayPal will enhance the

22   disclosures on its website by including a list of Frequently Asked Questions (FAQ) providing

23   users with greater detail on holds, reserves and limitations; and (5) in response to calls to customer

24   service, PayPal will disclose the reason for a hold, reserve or limitation to the extent not

25   inconsistent with PayPal's security requirements.[6]

26   _____

27   [6] As reflected in the Agreement and Exhibits thereto, PayPal has already made the required
(footnote continued)

28

5

In addition, the Agreement makes two types of monetary relief available to members of the Subclass: (1) guaranteed payments based on the amount and length of a hold or reserve (a "Basic Claim"); and (2) payments for business damages, subject to proof of such damages by Claims Class members (an "Alternate Claim").  The payments for Basic Claims are equal to two-thirds of the average amount of interest at market rates that would have accrued on the funds subject to a hold or reserve, subject to a $3 floor and rounded to the nearest $1 or $10, as follows:

| Length of Hold/Reserve | Hold/Reserve under $1,000 | Hold/Reserve $1,000 to $10,000 | Hold/Reserve over $10,000 |
|---|---|---|---|
| 1-30 days | $3.00 | | |
| 31-90 days | $3.00 | $5.00 | $150.00 |
| 91-150 days | $3.00 | $10.00 | $100.00 |
| Over 150 days | $14.00 | $25.00 | $440.00 |

(Settlement Agreement Section 5.3.)  Alternate Claims will be paid in full, subject to proof, up to an individual cap of $1,500 per claim.  If the total of Alternate Claims (including administration expenses associated with those claims) exceeds $800,000, the Alternate Claims payments will be reduced on a pro-rata basis.  However, if the $3.2 million settlement fund is not exhausted by payment of Basic Claims, attorneys' fees and administrative costs, then up to an additional $200,000 from the Settlement Fund may be used to pay Alternate Claims.

The Settlement provides for the upward proration of payments to Claims Class members to ensure that the maximum possible relief goes to Settlement Class Members rather than a *cy pres* recipient, so the only funds that should need to be distributed on a *cy pres* basis are funds from uncashed settlement checks.  The designated *cy pres* recipient, the Electronic Frontier Foundation, is a non-profit organization that works to defend civil liberties in the digital world, including the rights of users of commercial websites, such as PayPal.  Like the Settlement Class, which is representative of online users of the country as a whole, the Electronic Frontier Foundation works for the rights of internet users nationwide.

For most Claims Class members, the payment amount exceeds any potential recovery

---

changes to its User Agreement, website and certain business practices.

1    through litigation.  While members of only the Injunctive Relief Class will not receive any direct

2    payments, those members also are not releasing any claims for monetary relief other than claims

3    for statutory damages under the EFTA, which are capped at $500,000.  *See* 15 U.S.C. §

4    1693M(a)(2)(B)(ii).  Members of the Claims Class may also opt out if they do not believe they are

5    being adequately compensated for their claims.

6        **2.      Attorneys' Fees And Costs And Service Awards**

7        Pursuant to the Agreement and following the Court's preliminary approval of the

8    settlement, Class Counsel will submit an application to the Court for an award of attorneys' fees

9    and costs not to exceed 30% of the Settlement Fund, an amount that is less than Class Counsel's

10   lodestar.  Any attorneys' fees recoverable by counsel for the *Fernando* plaintiffs will be paid out

11   of the total fee award.  The Agreement contains no clear-sailing agreement.

12       The Agreement provides for a service award of up to $2,500 per class representative,

13   which is equal to or less than amounts commonly awarded in this district.  *See, e.g.*, *Rodriguez v.*

14   *W. Pub'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (recognizing that "[i]ncentive awards are fairly

15   typical in class action cases"); *Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL

16   5402120, at *6 (N.D. Cal. Sept. 26, 2013) ("In this district, a $5,000 payment is presumptively

17   reasonable.")  To the extent the Court denies some part of Class Counsel's fee request or the

18   request for service awards, the unawarded amounts will not revert to PayPal, but will be used to

19   increase payments to members of the Claims Class.  Class Counsel's motion for attorneys' fees

20   will be filed sixty days before the deadline for objecting to the settlement.  *See In re Mercury*

21   *Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010).

22       **3.      Settlement Administration**

23       Subject to the Court's approval, the parties have selected Epiq Systems ("Epiq") to serve

24   as the Settlement Administrator.  Epiq was selected after the parties received multiple bids to

25   ensure that the notice and administration costs were competitively priced.  The Agreement

26   provides for notice and administrative costs for Basic Claims of up to $400,000 to be paid from

27   the Settlement Fund.  PayPal also will separately pay administrative costs associated with

28

7

1 | additional claims.  These costs are reasonable in relation to the value of the settlement.

2 | **4.     The Release**

3 | The Agreement includes a release by members of the Settlement Class of all claims that

4 | relate to the claims asserted in the proposed Third Amended  Complaint, which itself simply

5 | combines the claims asserted in the First Amended Complaint in *Zepeda* and the First Amended

6 | Complaint in *Fernando*, with the exception of claims predicated on alleged violations of the *Comb*

7 | settlement. However, for Settlement Class members who are members of only the Injunctive

8 | Relief Class, or who timely opt out of the Claims Class, the release does *not* extend to any claim

9 | for monetary relief other than a claim for statutory damages under the EFTA.

10 | **III.     ARGUMENT**

11 | **A.     The Court Should Grant Preliminary Approval Of The Settlement.**

12 | A proposed settlement may be approved by the trial court if it is determined to be

13 | "fundamentally fair, adequate, and reasonable."  *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec.*

14 | *Litig)*, 213 F.3d 454, 458 (9th Cir. 2000).  At the preliminary approval stage, the Court "need only

15 | review the parties' proposed settlement to determine whether it is within the permissible 'range of

16 | possible judicial approval' and thus, whether the notice to the class and the scheduling of the

17 | formal fairness hearing is appropriate."  *Williams v. Costco Wholesale Corp*., 2010 U.S. Dist.

18 | LEXIS 19674, *15 (S.D. Cal. Mar. 4, 2010) (citing William B. Rubenstein et al., *Newberg on*

19 | *Class Actions* § 11:25 (4th ed. 2002)); *see also Wright v. Lucas Enterprises*, 259 F.R.D. 468, 472

20 | (E.D. Cal. 2009); *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 666 (E.D. Cal. 2008)).

21 | Preliminary approval of a settlement and notice to the proposed class is appropriate: "[i]f

22 | [1] the proposed settlement appears to be the product of serious, informed, noncollusive

23 | negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment

24 | to class representatives or segments of the class, and [4] falls with the range of possible approval"

25 | *Williams*, 2010 U.S. Dist. LEXIS 19674, *15-17 (citing *Vasquez v. Coast Valley Roofing, Inc*.,

26 | 2009 U.S. Dist. LEXIS 106973, 2009 WL 3857428, at *7 (E.D. Cal. Nov. 17, 2009) (citing *In re*

27 | *Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007))). This settlement meets

28 |

8

1   all of the above criteria.

2   **B.      This Settlement Is The Product of Serious, Informed, Arm's-Length Negotiations.**

3          Where a class settlement has been reached "after arm's length negotiation, conducted by

4   capable counsel, it is presumptively fair.'" *Cicero v. DirecTV, Inc.*, EDCV 07-1182, 2010

5   WL 2991486, at *3 (C.D. Cal. July 27, 2010) (citations omitted); *see also Linney v. Cellular*

6   *Alaska P'ship*, C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) (same).  Here,

7   the parties' negotiations were adversarial and at arm's length.  Counsel for plaintiffs have

8   considerable experience in class action litigation in general, and with the legal and factual issues

9   of this case in particular.  Furthermore, Plaintiffs obtained from PayPal a detailed explanation of

10  its hold and reserve policy as well as information regarding the amounts and duration of holds and

11  reserves placed on Claims Class members' accounts.  *See, e.g. Dunleavy v. Nadler (In re Mego*

12  *Fin. Corp. Sec. Litig.),* 213 F.3d 454, 459 ("[I]n the context of class actions settlements, formal

13  discovery is not a necessary ticket to the bargaining table where the parties have sufficient

14  information to make an informed decision about settlement").  This sharing of information

15  ensured sophisticated and meaningful settlement negotiations, which were overseen by Judge

16  Infante, over several months.  In short, Plaintiffs were fully informed of all relevant facts at the

17  time a settlement was reached.

18  **C.      The Settlement Has No "Obvious Deficiencies" And Falls Well Within The Range Of**
19  **Possible Approval.**

20         This Court in its March 25, 2015 order only noted two deficiencies in the Settlement.

21  First, the Court expressed jurisdictional concerns over its authority to address alleged violations of

22  the *Comb* settlement agreement.  That concern has been fully eliminated by excluding allegations

23  of violations of the Comb settlement from the proposed Third Amended Complaint and from the

24  scope of the release as set forth in the Amendment.  Even though the release has been narrowed,

25  the class consideration remains as it was in the prior settlement submitted to this Ccourt.

26         As with the settlement previously submitted to this Court, the settlement as amended

27

28                                                       9

1   continues to provide nearly complete relief both under the EFTA[7] and for claims for lost interest,[8]

2   while providing a convenient and abbreviated no-cost forum for class members to pursue the

3   individualized claims they might have for loss of business resulting from holds or reserves.

4          As for the Court's question regarding the inclusion of class members who had holds as

5   early as 2006, Plaintiffs note that the proposed class period for both of the proposed settlement

6   classes runs from April 19, 2006, which is four years (the applicable limitations period) prior to

7   the filing of the Complaint in *Fernando* on April 19, 2010.  The parties believe that this class

8   period is appropriate for both the Injunctive Relief Class ("all current and former users of PayPal

9   in the United States who had an active PayPal account between April 19, 2006 and the date of

10  entry of the Preliminary Approval Order") and the Claims Class (those members of the Injunctive

11  Relief Class who "had a hold or reserve placed on the account and/or the account was closed or

12  suspended by PayPal").  Although the complaints filed in this case have focused most specifically

13  on PayPal's actions concerning the holding of funds in sellers' accounts in 2008, Plaintiffs' claims

14  are not limited solely to improper holds on sellers' accounts arising in or after 2008.[9]  For

15  example, Plaintiffs also assert claims based on the closing or suspending of accounts and claims

---

17      [7] Specifically, Section 916 of the EFTA states that a financial institution that fails to comply

18  with the EFTA "is liable to such consumer in an amount equal to the sum of … in the case of a
    class action … the total recovery under this subparagraph in any class action or series of class

19  actions arising out of the same failure to comply by the same person shall not be more than the
    lesser of $500,000 or 1 percent of the net worth of the defendant…."  15 U.S.C. § 1693m(a).There

20  is no circumstance under which a case predicated on the EFTA could earn the class more than
    $500,000, yet the proposed Settlement not only includes payment of the EFTA statutory maximum

21  (*see* Settlement Agreement Section 4.1), but it also pays for lost interest (*see* Settlement
    Agreement Section 4.4), provides a fund for persons to pursue lost business claims (*see* Settlement

22  Agreement Section 4.5), and imposes important changes in disclosure and alterations of PayPal's

23  business practices (*see* Settlement Agreement Section 4.2).

24      [8] Interest rates were quite low in the period since 2008.  The amount of money set aside to

25  repay interest is likely to pay all claimants the entire interest they lost on the money, and in many
    instances class members might receive more than the interest they actually would have earned on

26  the funds had they not been held or reserved by PayPal.

27      [9] *See, e.g.*, [Proposed] Third Amended Complaint, ¶39.

28                                                    10

arising from PayPal's handling of buyers' accounts.  Since these claims are based on activities that occurred both before and after 2008, the relevant class period should run from April 19, 2006 through the date of preliminary approval.  Plaintiffs also note that class members who had holds in the 2006-2007 timeframe are eligible to receive interest reimbursement in the same manner as are any other class members.

As amended, the settlement is well within the range of possible approval given the nature of Plaintiffs' claims and the strength of Defendants' defenses.  In particular, to the extent Plaintiffs' claims are based on the imposition of holds or reserves or the suspension or closing of accounts, Plaintiffs' claims have already been rejected by the Court.  In granting PayPal's Motion to Dismiss the First Amended Complaint, the Court held that Plaintiffs' contract claims failed because: (1) PayPal's "user agreement contains at least two other provisions that give PayPal broad discretion to place holds on its users' accounts, neither of which requires that the users have engaged in restricted activities"; (2) "PayPal could have placed holds on Plaintiffs' accounts in its 'sole discretion' even if Plaintiffs never engaged in restricted activities"; and (3) PayPal's User Agreement does not require PayPal to disclose reasons for holds.  (Dkt. No. 145 at 4-5.) Similarly, the Court dismissed Plaintiffs' consumer fraud claims, reasoning that because Plaintiffs are sellers, they cannot be consumers under the Consumers Legal Remedies Act, and therefore are unable to state a claim under that statute.  (*Id*. at 7-8.)  Furthermore, the Court found that "a valid express contract exists between the parties that covers the subject matter at issue" and therefore Plaintiffs cannot successfully bring a claim for unjust enrichment.  (*Id*. at 9).  Given this Court's prior rulings, there is a substantial chance Plaintiffs' claims would be unsuccessful.

Similarly, Defendants possess substantial defenses to Plaintiffs' claims based on violation of the EFTA.  As an initial matter, it is unclear whether a court would find that the EFTA applied to PayPal, as it has been previously ruled in other courts that PayPal is not a bank, and therefore

1   liability under the EFTA is speculative at best.[10]  Moreover, Defendants maintain that Plaintiffs'

2   claims are defeated because Plaintiffs cannot establish that their accounts were established

3   primarily for "personal, family, or household" purposes, which is a required element of Plaintiffs'

4   claims under the EFTA.  *See* 15 U.S.C. § 1693a(2) (EFTA applies only to accounts "established

5   primarily for personal, family, or household purposes").  Further, Defendants will argue that a

6   substantial number of class members' claims are barred because their claims were expressly

7   released by the settlement of another class action challenging PayPal's refund practices.  *See*

8   *Farinella v. PayPal, Inc.*, 611 F. Supp. 2d 250 (E.D.N.Y. 2009).

9        As to Plaintiffs' remaining claims, Defendants will contend that, among other things: (1)

10  Plaintiffs' conversion claim fails because PayPal's actions were authorized by the parties'

11  contract; (2) Plaintiffs' claim for money had and received fails because PayPal did not receive, and

12  does not have, Plaintiffs' money; (3) Plaintiffs' claim for unjust enrichment fails because unjust

13  enrichment is not an independent cause of action and because Plaintiffs admit that their accounts

14  are governed by a written contract; (4) Plaintiffs' claim for negligence fails because PayPal's only

15  duty was to transfer funds in accordance with the senders' instructions and the dispute-resolution

16  provisions of the PayPal User Agreement, which PayPal did; and (5) Plaintiffs' claim for breach

17  of the PayPal User Agreement fails because Plaintiffs do not and cannot identify any particular

18  provision of the User Agreement that PayPal allegedly breached.  Moreover, given the prevalence

19  of individualized issues associated with these claims, it would be very difficult for Plaintiffs to

20  successfully obtain class certification if these claims were litigated.

21        By settling now, all PayPal customers will be more informed of what limitations can be

22  placed on their accounts and will have better opportunity to know why their money was held.

23  Moreover, all Claims Class members are eligible for monetary relief.  The basic claims amounts in

24  _____

25        [10]  It would be difficult to establish that PayPal, which is not a federally or state charted bank,
    is a "financial institution" within the meaning of that term in the EFTA.  Section 903 of the EFTA
26  defines a financial institution as "a State or National bank, a State or Federal savings and loan
    association, a mutual savings bank, a State or Federal credit union, or any other person who,
27  directly or indirectly, holds an account belonging to a consumer."

28

the Agreement provide relief that is likely better than what most Claims Class members could

have received in interest payments had they had use of the funds that were subjected to the holds

and reserves.  Moreover, to the extent any Claims Class members suffered actual damages beyond

loss of interest, such members may either opt out or submit claims via the alternate claims process.

This relief is significant in light of the hurdles faced by Plaintiffs and the class going forward.

Accordingly, this Court should find that the Agreement falls within the range of possible approval

and grant preliminary approval to the settlement.  *See, e.g.*, *Moore v. Verizon Commc'ns Inc.*, No.

C 09-1823 SBA, 2013 WL 4610764, at *9 (N.D. Cal. Aug. 28, 2013) (finding settlement was fair,

reasonable and adequate where settlement provided for injunctive relief, payments based on actual

damages according to proof and payments at fixed amounts absent proof of damages).

**D.      Provisional Certification Of The Settlement Class Is Appropriate.**

Plaintiffs seek the provisional certification of the Injunctive Relief Class pursuant to

Federal Rule of Civil Procedure 23(b)(2) and of the Claims Class pursuant to Federal Rule of Civil

Procedure 23(b)(3).  As discussed below, the requirements of Rule 23(b)(2) and (b)(3), as well as

the requirements of Rule 23(a), are satisfied here.

**1.      The Criteria For Class Certification Under Rule 23(a) Are Satisfied.**

To merit class certification under Rule 23(a), the proponent of class certification must

show that:  (1) the class is so numerous that joinder is impracticable; (2) questions of law or fact

are common to the class; (3) the claims of the class representatives are typical of the claims of the

class; and (4) the class representatives will fairly and adequately protect the interests of the class.

Each of these criteria are met here for both the Injunctive Relief Class and the Claims Class.

*First*, joinder of all members is impracticable.  The Claims Class alone has approximately

10.5 million members, and the Injunctive Relief Class has several times this number.  The size of

the class establishes the impracticability of joining all members as plaintiffs.  *See Jordan v.*

*County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S.

810 (1982).

*Second*, common issues of law and fact exist.  The test for common questions of law and

13

1   fact is "qualitative rather than quantitative—one significant issue common to the class may be

2   sufficient to warrant certification." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007).

3   With respect to the Claims Class, Plaintiffs allege that Defendants breached standardized form

4   contracts in the same manner with respect to Plaintiffs and the other members of the proposed

5   class and utilized advertising campaigns which included uniform misrepresentations.  With respect

6   to the Injunctive Relief Class, Plaintiffs allege that PayPal failed to provide monthly statements

7   and annual notices to all members of the class.  Each of the two proposed classes satisfies the

8   commonality requirement because the claims arise from "a standard course of conduct which

9   adversely affects a group of individuals and gives rise to a claim for relief." *Bjustrom v. Trust*

10  *One Mgmt. Corp.*, 199 F.R.D. 346, 348 (W.D. Wash. 2001).

11          *Third*, Plaintiffs' claims are typical of those of the class.  Representative claims are typical

12  if they are "reasonably coextensive with those of the absent class members." *Dukes*, 509 F.3d at

13  1184 (citing *Hanlon*, 150 F.3d at 1020).  "[A] named plaintiff's claim is typical if it stems from

14  the same event, practice or course of conduct . . . and is based upon the same legal or remedial

15  theory." *Jordan*, 669 F.2d at 1321.  It is not necessary that Plaintiffs' injuries be identical to all

16  class members, "only that the unnamed class members have injuries similar to those of the named

17  plaintiffs and that the injuries result from the same injurious course of conduct." *Armstrong v.*

18  *Davis*, 275 F.3d 849, 869 (9th Cir. 2001).  Here, Plaintiffs' injuries are similar to those of other

19  class members and arise out of the same allegedly unlawful conduct.

20          *Fourth*, Plaintiffs and their counsel will adequately represent the proposed Settlement

21  Class.  The adequacy of representation requirement is satisfied if: (1) the proposed representative

22  plaintiff does not have conflicts with the proposed class; and (2) the plaintiff is represented by

23  qualified and competent counsel.  *See Dukes*, 509 F.3d at 1185; Fed. R. Civ. P. 23(a)(4).  Because

24  Plaintiffs and the Settlement Class members have been allegedly injured in the same manner and

25  seek relief for the same claims, their interests are coextensive.  Plaintiffs' agreement to serve as

26  class representatives—as well as their active participation in this litigation—demonstrates their

27  commitment to the Settlement Class as a whole.  Plaintiffs' counsel are qualified and experienced

28
                                                    14

1   in litigating, trying, settling and administering nationwide class actions similar to this case.

2     **2.  The Injunctive Relief Class Meets The Requirements Of Rule 23(b)(2).**

3     A class is properly certified under Rule 23(b)(2) if the defendant "acted or refused to act on

4   grounds that apply generally to the class, so that final injunctive relief or corresponding

5   declaratory relief is appropriate respecting the class as a whole" and the class representatives are

6   seeking "final injunctive relief." Fed. R. Civ. P. 23(b)(2); *see also Dukes*, 131 S. Ct. at 2557.

7   Rule 23(b)(2) "injunction-only" classes are appropriate where consumer plaintiffs seek to enjoin

8   misrepresentations on consumer products insofar as an injunction prohibiting such

9   misrepresentations will benefit plaintiffs and similarly situated class members. *See Delarosa v.*

10  *Boiron, Inc.*, 275 F.R.D. 582, 592-93 (C.D. Cal. 2011); *accord Dukes,* 131 S. Ct. at 2557-58.

11  Here, the principal relief in the Agreement consists of changes to PayPal's business practices

12  regarding its hold and reserve policies, including additional disclosures to PayPal customers,

13  which apply to and benefit all members of the Settlement Class. Accordingly, the Injunctive

14  Relief Class should be certified pursuant to Rule 23(b)(2).

15    **3.  The Claims Class Meets the Requirements Of Rule 23(b)(3).**

16    Rule 23(b)(3) applies to settlements of class claims where common questions of fact or law

17  predominate and where class actions are superior. Fed. R. Civ. Pro. 23(b)(3). In the Ninth

18  Circuit, "when common questions present a significant aspect of the case and they can be resolved

19  for all members of the class in a single adjudication, there is a clear justification for handling the

20  dispute on a representative rather than on an individual basis. *Breeden v. Benchmark Lending*

21  *Group, Inc.*, 229 F.R.D. 623, 630 (N.D. Ca. 2005) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d

22  1011, 1022 (9th Cir. 1998).

23    Here, Plaintiffs allege that PayPal acted uniformly towards Claims Class members by

24  utilizing standardized form contracts and uniformly breaching those contracts in the same manner

25  with respect to Plaintiffs and the other members of the Claims Class. Accordingly, common

26  questions of fact and law predominate. Moreover, resolving those claims in a single action plainly

27  is superior to attempting to resolve class members' claims through individual actions.

28

**E.      The Proposed Class Notice Satisfies The Requirements Of Due Process.**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class [is] certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Litig.* at § 21.312.  Here, the method proposed for providing notice to Class Members is "reasonable" and should be approved.  Notice to the Settlement Class will be achieved by e-mail, the primary method PayPal used to communicate with the Settlement Class.  The e-mail notice will contain a hyperlink to the settlement website, where a detailed long-form notice will be available.  For Claims Class members who would be eligible to submit a claim over $3.00 and whose e-mail addresses "bounce back," the e-mail notice will be followed by a postcard notice sent by mail.  In addition, the settlement administrator will conduct an Internet notice program consisting of banner ads placed on websites likely to be visited by PayPal users.  The email and Internet notice will be provided to Settlement Class Members so that they have at least sixty days before the opt-out and objection deadline, and the mailed notice will be mailed at least thirty days before the deadline, thus providing Settlement Class members more than sufficient time to decide whether to participate in the settlement, object, or (as to the Claims Class) opt out.

The contents of the notice to class members "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.' " *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009).  Here, the settlement web site and proposed form of notice include all of the information recommended by the Northern District's Procedural Guidance for Class Action Settlements (the "Guidance"), including, among other things: (1) contact information for class counsel to answer questions; (2) links to the notice and motions for approval and for attorneys' fees; (3) instructions on how to access the case docket via PACER or in person at any of the court's locations; and (4) an estimate of the amount of recovery a Claims Class member should expect to recover.  The long-form notice will state the date of the final approval hearing and clearly state that the date may change without further notice to the class, and class members will be advised to check the settlement website or the Court's PACER site to confirm that the date has not been changed.  The

16

1  long-form notice also will include the specific language suggested for inclusion in class notices by

2  the Guidance.

3  **IV.    CONCLUSION**

4       For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant

5  preliminary approval to the proposed settlement, provisionally certify the proposed settlement

6  class, appoint as "Class Counsel" Quantum Legal, LLC, Lexington Law Group, Farmer, Jaffe,

7  Weissing, Edwards, Fistos & Leherman, P.L., and Kohn, Swift & Graf, P.C., approve the

8  proposed notice plan and schedule a formal fairness hearing on final settlement approval at least

9  two hundred seventy (270) days after entry of the Preliminary Approval Order.

10

11  DATED: September 9, 2015        Respectfully submitted,

                                QUANTUM LEGAL, LLC

12

13

14                                  By:   /s/ Jeffrey A. Leon
                                      Jeffrey A. Leon

15                                        Attorneys for Plaintiffs
                                      MOISES ZEPEDA, MICHAEL SPEAR,

16                                        RONYA OSMAN, BRIAN PATTEE, CASEY
                                      CHING, DENAE ZAMORA, MICHAEL

17                                        LAVANGA, and GARY MILLER, on Behalf of
                                      Themselves and All Others Similarly Situated

18

19  DATED: September 9, 2015        Respectfully submitted,

                                  LEXINGTON LAW GROUP

20

21

22                                  By:   /s/ Mark N. Todzo
                                      Mark N. Todzo

23                                        Attorneys for Plaintiffs
                                      MOISES ZEPEDA, MICHAEL SPEAR,

24                                        RONYA OSMAN, BRIAN PATTEE, CASEY
                                      CHING, DENAE ZAMORA, MICHAEL

25                                        LAVANGA, and GARY MILLER, on Behalf of
                                      Themselves and All Others Similarly Situated

26

27

28

17

DATED: September 9, 2015

Respectfully submitted,

FARMER, JAFFE, WEISSING, EDWARDS, FISTOS & LEHERMAN, P.L.

By:   /s/ Steven R. Jaffe
Steven R. Jaffe
Attorneys for Plaintiffs
MOISES ZEPEDA, MICHAEL SPEAR,
RONYA OSMAN, BRIAN PATTEE, CASEY
CHING, DENAE ZAMORA, MICHAEL
LAVANGA, and GARY MILLER, on Behalf of
Themselves and All Others Similarly Situated

DATED: September 9, 2015

Respectfully submitted,

KOHN, SWIFT & GRAF, P.C.

By:   /s/ Jonathan Shub
Jonathan Shub
Attorneys for Plaintiffs
MOISES ZEPEDA, MICHAEL SPEAR,
RONYA OSMAN, BRIAN PATTEE, CASEY
CHING, DENAE ZAMORA, MICHAEL
LAVANGA, and GARY MILLER, on Behalf of
Themselves and All Others Similarly Situated

18