UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MOISES ZEPEDA, MICHAEL SPEAR, RONYA OSMAN, BRIAN PATTEE, CASEY CHING, DENAE ZAMORA, MICHAEL LAVANGA, and GARY MILLER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PAYPAL, INC., E-BAY INC., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No: C 10-2500 SBA<br><br>Related to:<br>No. C 10-1668 SBA<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Dkt. 275 |

This is a putative nationwide class action brought by Plaintiffs Moises Zepeda, Michael Spear, Ronya Osman, Brian Pattee, Casey Ching, Denae Zamora, Michael Lavanga and Gary Miller (collectively "Plaintiffs") against PayPal, Inc. ("PayPal") and its parent entity, eBay, Inc. ("eBay"). Plaintiffs allege that PayPal improperly handled disputed transactions relating to their user accounts by unilaterally placing holds and reserves thereon. PayPal also is alleged to have failed to provide annual error-resolution notices and monthly account statements under the Electronic Fund Transfer Act ("EFTA")

The Court denied Plaintiffs' prior motion for preliminary approval. The parties thereafter revised their proposed settlement and have now filed a Motion for Preliminary Approval of Amended Class Action Settlement Agreement. Dkt. 275. Having read and considered the papers filed in connection with these matters and being fully informed, the Court hereby GRANTS Plaintiffs' motion and confers preliminary approval of the Amended Class Action Settlement Agreement.[1]

---

[1] The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. OVERVIEW

Defendant Paypal operates an on-line payment processing service that functions as a third party intermediary to facilitate payments between buyers and sellers of goods and services sold on-line through websites. As a condition of using PayPal's service, subscribers must abide by the PayPal User Agreement ("User Agreement"), among other agreements. Sec. Am. Compl. ¶ 33, Dkt. 110. The User Agreement provides that upon a breach of its terms—such as by engaging in defined "Restricted Activities"—PayPal "may hold funds in a seller's account by placing reserves on accounts and/or limiting and/or suspending seller's accounts and holding the funds in the accounts for up to and in some cases exceeding 180 days." Id. ¶ 36. Among other things, Restricted Activities are defined to include a breach of the User Agreement or any other agreements with PayPal, selling counterfeit goods, and providing false or inaccurate information. Id. ¶ 37.

The operative pleading before the Court is the Second Amended Complaint ("SAC") filed on October 9, 2012.[2] The pleadings allege that each of the representative Plaintiffs has used PayPal as sellers and had the funds in their respective user accounts frozen for 180 days. Id. ¶¶ 10-17. According to Plaintiffs, such conduct violates the terms of the User Agreement because PayPal failed to specify what particular activity led to the freezing of their accounts. Id. ¶ 37. In addition, PayPal allegedly failed to provide them with an opportunity to cure the issue that resulted in the freezing of the accounts in the first instance or avoid future holds from being placed on the accounts. Id. ¶¶ 4, 45-52. From those core set of facts, the SAC alleges the following claims for: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) breach of fiduciary duty; (4) an accounting; (5) violation of the California Consumer Legal Remedies Act; (6) conversion;

---

[2] This action is related to Fernando, et al. v. PayPal, Inc., et al., Case No. 10-CV-01668 SBA. After reaching their first settlement in this and the Fernando action, the parties filed the SAC, which incorporates the claims alleged in Fernando.

(7) violation of California's Unfair Competition Law; (8) unjust enrichment; (9) violation of the EFTA; (10) declaratory relief; and (11) violation of the class settlement reached in In re PayPal Litigation (Comb), No. C 02-01227 JF ("Comb").³ Dkt. 110. As Defendants, Plaintiffs have named PayPal and its parent entity, eBay, Inc.

### B. SETTLEMENT AGREEMENTS

#### 1. Initial Settlement

The parties originally reached tentative settlements in both this and the related Fernando action. In early 2012, Marina Trubitsky, one of the attorneys representing the Fernando plaintiffs, attempted to renege on the settlement, and demanded the opportunity to negotiate individual settlements with Defendants. Dkt. 205 at 4. Defendants refused, and as a result, the parties in this case opted to separately proceed with a settlement in this action only. Id. In response, Ms. Trubitsky commenced a series of actions aimed at disrupting the settlement, including the filing of a new action, which was later dismissed. Id.

In an attempt to refocus the parties in both cases on a global settlement, the Court referred both to Magistrate Judge Nathanael Cousins for a mandatory settlement conference. Id. at 5. The conference was set for January 2013, but Ms. Trubitsky failed to appear. Id. In view of the ongoing issues with counsel in the Fernando action, Plaintiffs' counsel in this action moved for preliminary approval of the settlement they had previously reached with Defendants. Dkt. 166 at 6. The Court denied Plaintiffs' motion on the grounds that the settlement release was overbroad and the lack of any tangible benefits to

---

³ In Comb, plaintiffs, on behalf of a class defined as "[a]ll Persons who opened a PayPal account during the period from October 1, 1999 through January 31, 2004," alleged that PayPal routinely "froze" customer accounts flagged as "suspicious," without justification or explanation. Comb Dkt. 234 at 6-7. The parties eventually entered into a settlement agreement that provided both injunctive relief and a settlement fund in the amount of $9.25 million. Id. Dkt. 249. The injunctive relief portion of the settlement was intended "to implement the requirements of the [EFTA] . . . and to address the operating practices which led to widespread complaints by users of the PayPal system." Id. Dkt. 247 at 7.

the class. Dkt. 205 at 11-12. The Court granted the parties leave to resubmit a renewed motion for preliminary approval. Id. at 12.

### 2. Second Settlement

The parties participated in two full day mediations in March and June 2014 and reached a revised settlement, which includes aspects of the prior settlement and incorporates new provisions, as well. Todzo Decl. Ex. 2 (Infante Decl.) ¶ 3, Dkt. 275-3. As before, the revised settlement requires PayPal to modify the disclosure of its reserve and hold practices and improve transparency regarding the dispute resolution process. Unlike the prior settlement, however, the revised settlement provides for a $3.2 million settlement fund, of which at least $1,840,000 will be available to pay claims of Claims Class members who had holds or reserves placed on their accounts and lost interest income. The revised settlement also creates a separate fund of $800,000 for "Alternate Claims" from which class members can pursue individual claims for damage to business (subject to a $2,000 cap per claimant) upon presentation of proper documentation. Id. Ex. 1 (Settlement Agt.) § 4.4, 4.5, Dkt. 275-2.

To facilitate the provision of injunctive relief and the payment of claims, the revised settlement creates two subclasses: a Claims Class; and an Injunctive Relief Class. Id. § 3.1. The Claims Class is comprised of "all current and former users of PayPal in the United States who: (1) had an active PayPal account between April 19, 2006 and the date of entry of the Preliminary Approval Order; and (2) had a hold or reserve placed on the account and/or the account was closed or suspended by PayPal." Settlement Agt. § 1.6. The Claims Class is intended to address claims for damages allegedly resulting from either a hold or a reserve on funds held in a PayPal account, or due to the suspension or closure of a PayPal account. Id. §§ 1.6, 1.7.

There are two types of monetary relief available to members of the Claims Class: (1) guaranteed payments based on the amount and length of a hold or reserve (a "Basic Claim"); and (2) payments for business damages, subject to proof of such damages by Claims Class members (an "Alternate Claim"). Id. §§ 1.2, 1.3. The payments for Basic

Claims are equal to two-thirds of the average amount of interest at market rates that would have accrued on the funds subject to a hold or reserve, subject to a $3.00 floor and rounded to the nearest $1.00 or $10.00, as follows:

| LENGTH OF HOLD/RESERVE | HOLD/RESERVE UNDER $1,000 | HOLD/RESERVE UP TO $1,000 | HOLD/RESERVE OVER $10,000 |
|---|---|---|---|
| 1-30 days | $3.00 | $3.00 | $3.00 |
| 31-90 days | $3.00 | $5.00 | $150.00 |
| 91-150 days | $3.00 | $10.00 | $100.00 |
| Over 150 days | $14.00 | $25.00 | $440.00 |

Id. § 5.3. Alternate Claims will be paid in full, subject to proof, up to an individual cap of $1,500 per claim. If the total of Alternate Claims (including administration expenses associated with those claims) exceeds $800,000, the Alternate Claims payments will be reduced on a pro-rata basis. However, if the $3.2 million settlement fund is not exhausted by payment of Basic Claims, attorneys' fees and administrative costs, then up to an additional $200,000 from the Settlement Fund may be used to pay Alternate Claims.

The Settlement provides for the upward proration of payments to Claims Class members to ensure the maximum possible relief for Settlement Class Members. To that end, the only funds that may need to be distributed on a cy pres basis are leftover funds from uncashed settlement checks. The designated cy pres recipient, the Electronic Frontier Foundation, is a non-profit organization that works to defend civil liberties in the digital world, including the rights of users of commercial websites, such as PayPal.

The Injunctive Relief Class is defined as "all current and former users of PayPal in the United States who had an active PayPal account between April 19, 2006 and the date of entry of the Preliminary Approval Order." Id. § 1.19. The Injunctive Relief Class is intended primarily to address claims that are *not* based on damages that arise from a violation of the settlement in Comb and related violations of the EFTA, including PayPal's alleged failure to provide annual error-resolution notices and monthly account statements. Id. §§ 1.19, 1.20.

On March 25, 2015, the Court issued its ruling on Plaintiffs' renewed motion for preliminary approval. Dkt. 264. The Court found that while the revised settlement

agreement resolved many of the concerns that resulted in the rejection of the prior agreement, two obvious deficiencies remained.  First, the Court questioned whether it was appropriate to allege, much less settle, claims based on alleged violations of the Comb settlement since the judgment in that action specified that any disputes concerning the agreement must be litigated in that action.  Id. at 11.  Second, the Court noted that, although the issue was raised in the order denying the first motion for preliminary approval, the parties still had not explained why both settlement classes include persons who have been PayPal accountholders since 2006, even though the practices at issue allegedly began in 2008.  Id. at 12.

### 3. The Current Settlement

Following the denial of Plaintiffs' second motion for preliminary approval, the parties revised their settlement agreement and have now filed a motion for preliminary approval of the Settlement Agreement, as amended ("Amended Settlement Agreement"). Todzo Decl. ¶ 6.  To address the Court's concerns, the parties have agreed that Plaintiffs will file a Third Amended Complaint that omits any claims based on the alleged breach of the Comb Settlement.  Todzo Decl. Ex. 1 (Am. to Settlement Agt.) ¶ 5, Dkt. 275-2.  The settlement release has correspondingly been modified to eliminate any reference to the Comb Settlement.  Id. ¶¶ 1, 2.  With regard to the issue pertaining to the class period, the parties continue to propose that the class period for both of the proposed settlement classes should run from April 19, 2006, which is four years prior to the filing of the Complaint in the Fernando Action on April 19, 2010 (which claims are now being asserted in the instant action).  Id. Ex. 6 (Proposed Third Am. Compl.) ¶ 59, Dkt. 275-7.  They contend that this class period is appropriate because Plaintiffs claims include allegations based on the closing or suspending of accounts and claims arising from PayPal's handling of buyers' accounts, and these activities occurred both before and after 2008.  Pls.' Mot. for Prelim. Approval at 10.  To that end, the proposed Third Amended Complaint adds allegations that PayPal began engaging in the disputed practices prior to 2006.  Proposed Third Am. Compl. ¶ 39.

Plaintiffs now move for preliminary approval of the Amended Settlement Agreement. In addition, Plaintiffs request: (1) provisional certification of the two proposed Settlement Classes (i.e, the Claims Class and the Injunctive Relief Class); (2) the appointment of (a) the Complex Litigation Group, (b) Lexington Law Group, (c) Farmer, Jaffe, Weissing, Edwards, Fistos & Leherman, P.L., and (d) Seeger Weiss LLP, as Class Counsel; (3) approval of the proposed Class Notice; and (4) and the scheduling of a final approval hearing. Proposed Order, Dkt. 275-8. Non-party Reginald Burgess, acting pro se, has filed an Objection to Preliminary Approval of Settlement Motion and Demand Opt-Out if Proposed Settlement in Approved. Dkt. 277.[4]

## II. DISCUSSION

Class action settlements are governed by Federal Rule of Civil Procedure 23(e), which requires a court to determine whether a proposed settlement is "'fundamentally fair, adequate, and reasonable.'" Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)). To make a "fairness" determination, the district court balances a variety factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. See Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003). In conducting this evaluation, it is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms. See Officers for Justice v. San Fran. Civ. Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).

---

[4] Reginald Burgess, first pro se and later through his attorney, Garrett Skelly, has filed numerous motions in this action in an attempt to thwart the parties efforts to obtain preliminary approval of their proposed class settlement.

1   Given that some of the aforementioned fairness factors cannot be fully assessed until
2 the Court conducts the final approval hearing, "a full fairness analysis is unnecessary at this
3 stage." Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotations
4 marks and citation omitted). Rather, preliminary approval of a settlement and notice to the
5 proposed class is appropriate: if "[1] the proposed settlement appears to be the product of
6 serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not
7 improperly grant preferential treatment to class representatives or segments of the class,
8 and [4] falls with the range of possible approval . . . ." In re Tableware Antitrust Litig., 484
9 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second
10 § 30.44 (1985)). The "initial decision to approve or reject a settlement proposal is
11 committed to the sound discretion of the trial judge." Officers for Justice, 688 F.2d at 625.
12   In the instant case, the In re Tableware Antitrust Litigation factors weigh in favor of
13 preliminarily approving the settlement. First, the settlement is the result of non-collusive
14 negotiations; i.e., a mediation conducted by Magistrate Judge Infante (ret.), which, in turn,
15 led to continued negotiations and the execution of the Amended Settlement Agreement.
16 Second, there are no longer any obvious deficiencies. As discussed above, the two issues
17 cited by the Court in its prior order denying preliminary approval have been addressed by
18 the parties. Specifically, the Amended Settlement Agreement omits any claims based on
19 the Comb settlement from the Third Amended Complaint and the settlement release. As
20 for the scope of the class period, Plaintiffs have sufficiently explained that the 2006 date
21 was chosen as the commencement of the class period based on (1) the statute of limitations
22 and the filing date of the Fernando action, and (2) the inclusion of claims based on conduct
23 occurring prior to 2008. Notwithstanding these modifications, the parties have not reduced
24 the settlement benefits to the Class. Lastly, there is no indication that the settlement

improperly grants preferential treatment to class representatives or segments of the class, or that it is outside the range of possible approval.[5]

The Court is unpersuaded by Burgess' objections. As an initial matter, since Burgess is not a party to the action, it is questionable whether he has standing to object to the proposed settlement at this juncture. See Standard Fire Ins. Co. v. Knowles, 133 S.Ct. 1345, 1349 (2013) ("A nonnamed class member is not a party to the class-action litigation before the class is certified."). Even if he had standing, Burgess' objections do not militate against preliminarily approving the settlement. Burgess' contentions regarding his inability to participate in the settlement negotiations and the authority and the competency of Plaintiffs' counsel to represent the Class have previously been considered and rejected by the Court. E.g., Dkt. 125 at 1-2, 131 at 1, 205 at 9; 264 at 7 n.5. With respect to Burgess' remaining objections, they are germane to whether the agreement is "fair, reasonable and adequate" within the meaning of Rule 23(e), rather than to the In re Tableware factors discussed herein. See Narouz v. Charter Commc'ns, LLC, 591 F.3d 1261, 1267 (9th Cir. 2010) (noting that the fairness hearing is the time when "members of the class may be heard concerning their support for, or objection to, the settlement").[6]

---

[5] The Court notes that Plaintiffs' request for attorneys' fees based on 30 percent of the Settlement Fund is slightly higher than the Ninth Circuit's benchmark of 25 percent See In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011). Although such request is not so far beyond benchmark to constitute an obvious deficiency with the settlement, Plaintiffs' counsel should be mindful of addressing these issues and providing appropriate detail and documentation in connection with their motions for attorneys' fees and for final approval.

[6] For example, Burgess complains that the proposed incentive award, which has been reduced to $2,500 from $5,000, is too high. Objections at 2. "In this District, a $5,000 incentive award is presumptively reasonable." Villegas v. J.P. Morgan Chase & Co., No. C 09-0261 SBA, 2012 WL 3542187, *6 (N.D. Cal., Aug. 14, 2012) (Armstrong, J.) (citing cases). In any event, the reasonableness of the proposed incentive award will be assessed in connection with the final approval hearing. See Staton v. Boeing Co., 327 F.3d 928, 977 (9th Cir. 2003) (stating that in reviewing whether an incentive based award is appropriate, a court should consider the following factors: "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation."). Any request by Plaintiffs for the approval incentive awards *shall* include a discussion based on the aforementioned legal standard.

In sum, the Court finds that Plaintiffs have made a sufficient showing to warrant preliminary approval of the Amended Settlement Agreement.

### A. CONDITIONAL CLASS CERTIFICATION

Plaintiffs seek conditional certification of a settlement class under Rule 23(a) and (b)(3). A class action will only be certified if it meets the four prerequisites identified in Federal Rule of Civil Procedure 23(a) *and* additionally fits within at least one of the three subdivisions of Federal Rule of Civil Procedure 23(b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).

#### 1. Rule 23(a) Requirements

"The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co., 593 F.3d 802, 806 (9th Cir. 2010). Although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, the court must conduct a rigorous inquiry before certifying a class. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1977); Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011).

##### *a) Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ.P. 23(a)(1). Numerosity is satisfied here, as the proposed settlement class includes millions of potential members. Joinder of millions of individual class members would be impracticable in this action. See Altamirano v. Shaw Indus., Inc., No. CV-00939-HSG, 2015 WL 4512372, *4 (N.D. Cal., July 24, 2015) ("Numerosity is satisfied here because the proposed settlement class includes millions of potential members.").

### b) Commonality

Class certification is appropriate only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) should be construed permissively, meaning that "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "[E]ven a single common question" is sufficient. Wal-Mart Stores, Inc. v. Dukes, -- U.S. --, 131 S.Ct. 2541, 2556 (2011). The common question, however, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 2551.

With respect to the Claims Class, Plaintiffs allege that Defendants breached standardized form contracts in the same manner with respect to Plaintiffs and the other members of the proposed class. With respect to the Injunctive Relief Class, Plaintiffs allege that PayPal failed to provide monthly statements and annual notices to all members of the class. Because these claims arise from a standard course of conduct adversely affecting a group of individuals, each of the two proposed classes satisfies the commonality requirement. See In re First Alliance Mortg. Co., 471 F.3d 977, 990-91 (9th Cir. 2006) (class treatment of fraud claims is favored where claims stem from common course of conduct).

### c) Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Parsons

1 v. Ryan, 754 F.3d 657, 685 (9th Cir. 2014) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)).  In this case, there is no dispute that the injuries suffered by Plaintiffs are essentially the same as those of the class and result from PayPal's course of conduct relating to account holds and reserves and providing the requisite statements.

### d) Adequacy

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Ellis, 657 F.3d at 985.

At this juncture, the only conflict that has surfaced is between Burgess and Plaintiffs' counsel.  However, as discussed above and in numerous prior orders of this Court, Burgess' complaints lack merit and are inconsistent with Rule 11 of the Federal Rules of Civil Procedure.  In addition, the record shows that Plaintiffs' counsel have been vigorously litigating this case in furtherance of the interests of the class.  The Court is therefore satisfied that the adequacy requirement, along with the other Rule 23(a) requirements, has been sufficiently demonstrated.

### 2. Rule 23(b) Requirements

Plaintiffs seek to certify the Injunctive Relief Class under Rule 23(b)(2) and the Claims Class under Rule 23(b)(3).

### a) 23(b)(2)

"Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive."  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011).  Certification is proper where "class members complain of a pattern or practice that is generally applicable to the class as a whole," even if "some class members

may have suffered no injury or different injuries from the challenged practice[.]" Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2557 (2011) (internal quotation marks omitted).[7]

Here, the principal relief sought with respect to the Injunctive Relief Class consists of changes to PayPal's business practices regarding its hold and reserve policies, including additional disclosures to PayPal customers. The conduct to be enjoined will affect all class members. Because an injunction would offer all class members "uniform relief" from this harm, class certification of the Injunctive Relief Class is appropriate under Rule 23(b)(2). Dukes, 131 S.Ct. at 2557.

### b)  23(b)(3)

In contrast to Rule 23(b)(2), individualized monetary claims belong under Rule 23(b)(3), "with its procedural protections of predominance, superiority, mandatory notice, and the right to opt out." Id. at 2545. Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are called the "predominance" and "superiority" requirements. Hanlon, 150 F.3d at 1022-23. Rule 23(b)(3) does not require plaintiffs seeking class certification to prove that each element of their claim is susceptible to classwide proof. See Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 133 S.Ct. 1184, 1196 (2013). Rather, plaintiffs need only show that "common questions 'predominate over any questions affecting only individual [class] members.'" Id. (quoting Fed. Rule Civ. Proc. 23(b)(3)).

With respect to members of the Claims Class, Plaintiffs allege that PayPal utilized standardized form contracts and uniformly breached those contracts in the same manner with respect to Plaintiffs and the other members of the Claims Class. This is sufficient to show that common questions of fact and law predominate. See Gutierrez v. Wells Fargo

---

[7] Unlike Rule 23(b)(3), a plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class. Rather, only a showing of cohesiveness of class claims is required. Walters v. Reno, 145 F.3d 1032, 1047 (9th Cir. 1998).

1 Bank, No. C 07-5923 WHA, 2008 WL 4279550, *17 (N.D. Cal. Sept. 11, 2008) (finding
2 that commonality and predominance requirements were satisfied where "[t]he challenged
3 practice is a standardized one applied on a routine basis to all customers" by the bank); see
4 also In re Med. Capital Secs. Litig., 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011)
5 ("Courts routinely certify class actions involving breaches of form contracts."). Moreover,
6 resolving those claims in a single action is superior to attempting to resolve the class
7 members' claims through individual actions. Class certification as to the Claims Class is
8 therefore appropriate under Rule 23(b)(3).

9     **B.**    **CLASS NOTICE**

10 Notice to the class is required for classes certified under Rule 23(b)(3), but not for
11 classes certified under (b)(1) or (b)(2). Fed. R. Civ. P. 23(c)(2), (e)(1); see Dukes, 131
12 S.Ct. at 2558 ("The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt
13 out, and does not even oblige the District Court to afford them notice of the action.").[8]
14 Notice must generally describe the terms of the settlement in sufficient detail to alert those
15 with adverse viewpoints to investigate and to come forward and be heard. Mendoza v.
16 United States, 623 F.2d 1338, 1352 (9th Cir. 1980). In order to satisfy due process
17 considerations, notice must be "reasonably calculated, under all the circumstances, to
18 apprise interested parties of the pendency of the action and afford them an opportunity to
19 present their objections. Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994).

20 Here, notice to the Settlement Class will be sent by e-mail, which is the primary
21 method that PayPal uses to communicate with its subscribers. The e-mail notice will
22 contain a hyperlink to the settlement website, where a detailed long-form notice will be

---

[8] For classes certified under Rule 23(b)(3), the Court must direct to class members "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Id. 23(c)(2)(B). The notice must "clearly and concisely state in plain, easily understood language": (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Id.

1 available. For Claims Class members eligible to submit a claim over $3.00 but whose e-
2 mail addresses "bounce back," the e-mail notice will be followed by a postcard notice sent
3 by regular mail. In addition, the settlement administrator will conduct an Internet notice
4 program consisting of banner ads placed on websites likely to be visited by PayPal users.
5 The email and Internet notice will be provided to Settlement Class Members so that they
6 have at least sixty days before the opt-out and objection deadline, and the mailed notice will
7 be mailed at least thirty days before the deadline, thus providing Settlement Class members
8 more than sufficient time to decide whether to participate in the settlement, object, or (as to
9 the Claims Class) opt out. The Court finds that Plaintiffs' proposed methods of
10 disseminating notice of the settlement is the best notice practicable given the
11 circumstances.

12 Furthermore, the Court finds the content of the proposed notice to be appropriate.
13 The notice outlines: the background of the case; a summary of the settlement; the
14 definition of the classes certified; how to opt out, object or otherwise comment on the
15 settlement; attorney's fees; who to contact for additional information; and a paragraph
16 outlining the review and approval process the court will implement to determine whether
17 the settlement warrants approval. See Todzo Decl. Ex. 1 at 95-110. Thus, the proposed
18 form of notice provides class members with information on which to base their decision to
19 remain in the class, to opt out or to object to the settlement. Rodriguez v. West Publ'g
20 Corp., 563 F.3d 948, 962 (9th Cir. 2009) (finding that the content of a notice to class
21 members "is satisfactory if it 'generally describes the terms of the settlement in sufficient
22 detail to alert those with adverse viewpoints to investigate and to come forward and be
23 heard.'") (citation omitted). Accordingly, the court approves the proposed notice, as to
24 both form and content.

25     **C.**    **APPOINTMENT OF CLASS COUNSEL**

26 "An order certifying a class action . . . must appoint class counsel under Rule 23(g)."
27 Fed. R. Civ. P. 23(c)(1)(B). The court considers several factors, including: the work
28 counsel has done in identifying or investigating potential claims in the action; counsel's

1 experience in handling class actions, other complex litigation and the types of claims
2 asserted in the action; counsel's knowledge of the applicable law; and the resources that
3 counsel will commit to representing the class.  Fed. R. Civ. P. 23(g).
4      In their motion, Plaintiffs propose appointing four law firms as Class Counsel:
5 (1) Quantum Legal, LLC (formerly known as Complex Litigation Group LLC, see Dkt.
6 262); (2) Lexington Law Group; (3) Farmer, Jaffe, Weissing, Edwards, Fistos & Leherman,
7 P.L.; and (4) Kohn, Swift & Graf, P.C.. Dkt. 275 at 23.  The instant motion does not
8 address the qualifications of any of these firms in the context of the Rule 23(g) factors.
9 Nonetheless, the Court notes that Quantum Legal and Lexington Law Group negotiated the
10 instant settlement and have submitted the vast majority of filings on behalf of Plaintiffs in
11 this case.  In addition, Plaintiffs have submitted short firm biographies for both of Quantum
12 Legal and Lexington Law Group which summarize their experience in class actions.  Todzo
13 Decl. Exs. 4, 5.  In contrast, no information is offered regarding the other two firms, whose
14 involvement in this action—based on the information presented—appears to have been
15 minimal.  Accordingly, the Court approves only Quantum Legal and Lexington Law Group
16 as Class Counsel.

17     **D.     SCHEDULE**

18      Though not addressed in Plaintiffs' motion for preliminary approval, the
19 accompanying proposed order includes a schedule for the final approval of the settlement.
20 Proposed Order at 3-8, Dkt. 275-8.  Of particular note is Plaintiffs' request for a period of
21 180 days from the preliminary approval date to effectuate notice to the class and to file their
22 motion for attorneys' fees. Id. at 3.[9]  They also request that the final approval hearing be
23 scheduled no earlier than 275 days (i.e., approximately 9 months) from the date the
24 preliminary approval order. Id. at 6.  Neither Plaintiffs nor Defendants offer any
25 explanation to justify the proposed extended schedule nor is the need for one readily
26 apparent to the Court.  Accordingly, the parties shall meet and confer and jointly propose a

---

28  [9] There is no proposed deadline for filing a motion for final approval.

- 16 -

final approval schedule that will result in a final approval hearing schedule no less than six months from the date this order is filed. If the parties are in agreement that advancing the final approval schedule in that manner is not practicable, the stipulation and proposed order shall provide a detailed explanation for their proposed final approval schedule.

### III. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Plaintiffs' Motion for Preliminary Approval of Class Action Settlement is GRANTED, as follows:

1. Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2) & (3), the Court conditionally certifies, for settlement purposes only, a proposed Settlement Class comprised of a Claims Class and an Injunctive Relief Class.

   a. The Injunctive Relief Class is defined as: "All current and former users of PayPal in the United States who had an active PayPal account between April 19, 2006 and the date of entry of the Preliminary Approval Order."

   b. The Claims Class is defined as: "All current and former users of PayPal in the United States who: (1) had an active PayPal account between April 19, 2006 and the date of entry of the Preliminary Approval Order; and (2) had a hold or reserve placed on the account and/or the account was closed or suspended by PayPal. Excluded from the Claims Class are judicial officers presiding over this action and the members of their immediate families and judicial staff."

2. The Court hereby appoints Plaintiffs Moises Zepeda, Michael Spear, Ronya Osman, Brian Pattee, Casey Ching, Denae Zamora, Michael Lavanga and Gary Miller as class representatives pursuant to Rule 23 of the Federal Rules of Civil Procedure.

3. Jeffrey A. Leon of Quantum Legal LLC and Mark N. Todzo and Howard Hirsch of Lexington Law Group are appointed as counsel for the Settlement Class.

4. Epiq Systems is appointed as Settlement Administrator and shall perform the duties described in the Amended Settlement Agreement.

5.  Within fourteen (14) days of the date this Order is filed, the parties shall, in the manner discussed above, submit a stipulation and proposed order to schedule deadlines for, inter alia, filing the Third Amended Complaint, providing notice to the class, the filing of motions for final approval and motion for attorneys' fees and incentive awards, responding to any objections, and the final approval hearing.

IT IS SO ORDERED.

Dated:  11/5/15

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
Senior United States District Judge