1

David Hicks, APLC
David Hicks, State Bar Numbers: Calif. 053750

2

P.O. BOX 562
Dunsmuir, CA 96025

3

(530) 235-0235 (telephone)
(530) 239-4301 (facsimile)

4

5

MARINA TRUBITSKY *Pro Hac Vice*
(marina.trubitsky@lawcontact.com)

6

11 Broadway, Suite 861
New York, New York 10004

7

Telephone: (212) 732-7707
Facsimile: (212)732-7708

8

9

Attorneys for Plaintiffs

10

**UNITED STATES DISTRICT COURT**
**NORTHERN DIVISION OF CALIFORNIA SAN JOSE DIVISION**

11

12

13

DEVINDA FERNANDO, VADIM TSIGEL,
MICHAIL ZINGER, AMY RICKEL, FRED
RICKEL, IRA GILMAN, LACY REINTSMA,
and SHAUL BEHR on behalf of themselves
and all others similarly situated and on behalf of
the general public of the United States,

14

15

16

Plaintiffs,

17

v.

18

PAYPAL, INC., a Delaware corporation

19

20

Defendants.

Case No. Case No. 10-CV-1668 SBA
Related to : 10-CV-02500 SBA

**NOTICE OF MOTION AND MOTION FOR
ATTORNEY'S FEES AND
REIMBURSEMENT OF EXPENSES**

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

**NOTICE OF MOTION AND MOTION** .......................................................................5

3

**MEMORANDUM OF LAW** ....................................................................... 6

4

II. **FACTUAL AND PROCEDURAL**
5
**BACKGROUND**..........................................................................................6

6

**MEMORANDUM OF POINTS AND AUTHORITIES**
7
**TABLE OF CONTENTS**
TABLE OF AUTHORITIES ................................................................... ii
8
I. INTRODUCTION ............................................................................. 1

9

I. BACKGROUND .......................................................................... 2

10

A. Fernando Counsel Devoted Substantial Time And Resources To The Litigation, Despite The
11
Substantial Risks Involved....................................................................................................10

12

II. ARGUMENT ...................................................................................... 10

13

A. Fernando Counsel Are Entitled To An Award Of Attorney's Fees Because The Litigation
14
Recovered A certain And Calculable Fund For The Plaintiff Class.......................................11

15

B. The Requested Fee Amount Is Reasonable Under The Percentage-Of-
16
The-Fund Method ....................................................................................................... 12

17

1. The percentage-of-the-fund method is an appropriate means of calculating
fees.......................................................................................................................... 12

18

2. A fee of five percent of the monetary recovery is reasonable in

19
this case ...................................................................................................... 13

20

C. The Requested Fee Amount Is Reasonable Under A Lodestar

21
Cross-Check ....................................................................................................... 15

22
1. Class Counsel's lodestar exceeds the fee amount requested............................... 15

23

2. Although Class Counsel do not seek a risk multiplier, the case law
24
regarding risk multipliers further supports the reasonableness of the
25
fee requested ....................................................................................................... 16

26

IV. CONCLUSION ........................................................................... 17

27

28

<u>**PLAINTIFFS' MOTION FOR ATTORNEYS**</u>
<u>**FEES**</u> .
**CASE NO.  10-CV-01668 SBA**

1

2

**TABLE OF AUTHORITIES**

3

**FEDERAL CASES**                                                         **Page(s)**

4

*Barbosa v. Cargill Meat Solutions Corp.*, 2013 WL 3340939, at *15 (E.D. Cal. July 2, 2013)………14

5

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)……………………………………………………13

6

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)………………………………………………....13

7

*Burden v. SelectQuote Insurance Services*, 2013 WL 3988771 (N.D. Cal. Aug. 2, 2013)………....16

8

*Craig Comb, et al. v. PayPal, Inc.,* 218 F.Supp.2d 1165 (N.D.Cal. 2002)…………………………7

9

*Craft v. County of San Bernardino*, 624 F.Supp.2d 1113 (C.D. Cal. 2008)……………………..…16

10

*Estrella v. Freedom Financial Network, LLC*, 2012 WL 4645012 (N.D. Cal. Oct. 1, 2012)……..14, 16

11

*Farinella v. PayPal, Inc.,* 611 F. Supp. 2d 250 (E.D.N.Y. 2009)………………………………..8

12

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994)…………………………………………...…19

13

*In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011)…………………13

14

*In re Pacific Enterprises Securities Litigation*, 47 F.3d 373 (9th Cir. 1995)………………………11, 13

15

16

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation,*
56 F.3d 295, 307 (1st Cir. 1995) ...............................................................14

17

*Missouri v. Jenkins*, 491 U.S. 274 (1989) ..................................................................18

18

*Singer v. Becton Dickinson & Co.*, 2010 WL 2196104 (S.D. Cal. June 1, 2010)………...................14

19

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990)……………...13

20

*Stuart v. Radioshack Corp.*, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010)......................................14

21

*Sutton v. Bernard*, 504 F.3d 688 (7th Cir. 2007)……………………………………………....14

22

23

*Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993)……………………………………14

24

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010)…………………...…14, 16

25

*Vincent v. Hughes Air West., Inc.*, 557 F.2d 759 (9th Cir. 1977)……………………………………19

26

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) …………………………….....15, 16, 18

27

*Zepeda v. Paypal, Inc., Inc.*, Civil Action No. 5:10-cv-02500-EJD………………..………..9, 10

28

1

**STATE CASES**

2

*Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43,……………………………………………………… 14

3

*In re Consumer Privacy Cases*, 175 Cal.App.4th 545 (2009)

4

...........................................................................................................................13,15,16,18

5

*Ketchum v. Moses*, 24 Cal.4th 1122 (2001)……………………………..…………..15, 16, 18

6

*Lealao v. Beneficial California*, 82 Cal.App.4th 19 (2000)…………………………………...13, 14

7

*Meewes v. ICI Dulux Paints*, Case No. BC 265880 (Los Angeles Sup. Ct. Sept. 19, 2003)

8

...........................................................................................................................14

9

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 186 Cal.App.4th 399 (2010)

...........................................................................................................................14

10

*Rider v. County of San Diego*, 11 Cal.App.4th 1410 (1992) ..................................................19

11

*Serrano v. Priest*, 20 Cal.3d 25 (1977)……………………………………………...…....12, 13

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES** .

**CASE No. 10-CV-01668 SBA**

1
2
3
4
## NOTICE OF MOTION AND MOTION

5
6
**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

7       **PLEASE TAKE NOTICE THAT** on July 13, 2016 at 9:00 a.m., or as soon thereafter as

this matter may be heard, before the Honorable Saundra B. Armstrong, Courtroom 1, Oakland

8    Courthouse, 1301 Clay Street, Oakland, California 94612, Plaintiffs Devinda Fernando, Vadim

9    Tsigel, Michail Zinger, Amy Rickel, Fred Rickel, Ira Gilman, Lacy Reintsma and Shaul Behr

10   ("Plaintiffs") shall, and hereby do, move the Court to award Fernando Counsel $212,500.00 in

11   attorney's fees. This motion is made on the grounds that the requested award is fair, reasonable, and

12   appropriate under the common fund doctrine. The requested fee award is well within the range of

13   fees commonly awarded in common fund cases of this type. Indeed, the requested amount is less

14   than Class Counsel's lodestar to date, which is $1,025,675.00. The requested fee award is warranted

15   here in light of the results obtained given the significant risks of continued litigation, and the many

16   attorney hours worked to obtain this excellent result for the class. This motion is based on this

17   Notice, the attached memorandum of Points and Authorities, the accompanying declarations of

18   Marina Trubitsky, the Court's file in this action, and any oral and documentary evidence presented

19   at the hearing on the motion.

20
21   Dated: March 11, 2016

22
23                                                                  *s/ Marina Trubitsky*

24                                                        _____
                                                         **MARINA TRUBITSKY**
25                                                       Marina Trubitsky
                                                         11 Broadway, Suite 861
26                                                       New York, New York 10004
                                                         Telephone: (212) 732-7707
27                                                       Facsimile: (212)732-7708

28                                                  E-mail: marina.trubitsky@lawcontact.com

1

2

3                              **MEMORANDUM OF LAW**

4                    **I. FACTUAL AND PROCEDURAL BACKGROUND**

5        The Law Offices of Marina Trubitsky, P.C. ("*Fernando* Counsel" and/or "the Firm")

6   submits this memorandum  of law in support of her application for an award of attorney's fees in

7   connection with Plaintiffs' prosecution and successful resolution of this class action litigation (the

8   "Action") against Defendant PayPal, Inc. ("PayPal"). *See* Declaration of Marina Trubitsky ¶2 in

9   Support of Plaintiffs' Motion to Award Attorneys Fees ("Trubitsky Decl."). The benefits

10  conferred by the Settlement -- the product of six years of work by *Fernando* Counsel, three and a

11  half years of litigation and months of intensive settlement negotiation and a private mediation---

12  embodied in the Amended Settlement Agreement filed September 9, 2015, represent an

13  outstanding result on behalf of the Class (the "Settlement").

14       The requested fee easily passes the test of reasonableness. The settlement agreement

15  executed by the parties provided for *Fernando* counsel the attorney's fee  which is approximately

16  5% of the Settlement Fund, including interest.

17       In August 2002, Craig Comb and others filed a class action against PayPal in *Craig Comb,*

18  *et al. v. PayPal, Inc.*, Northern District of California case No. CV-02-01227-JF (PVT) (the "Comb

19  Action" and/or "Comb Settlement"). They sued PayPal for alleged mishandling of customer

20  accounts and customer services, in violation of PayPal's user agreement. Plaintiffs in the *Comb*

21  Action alleged that PayPal routinely placed  up to 180-day restrictions on deposited funds,  forced

22  customers to arbitrate their disputes under the American Arbitration Association's guidelines (a

23  costly procedure), and required users to file claims individually, restricting class action suits.  In

24  that action Plaintiffs brought various common-law claims against PayPal based on its failure to

25  credit their accounts for the full amount of their purchases and on its practice of limiting and

26  holding funds in their accounts for security or other reasons.  On June 11, 2004, the parties entered

27  into a settlement agreement.  The Section III B(4) of the Injunctive Relief portion of the *Comb v.*

28  *PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement stated that "PayPal will

provisionally credit a customer's account pursuant to the EFTA (15 U.S.C. 1693f(c)) whenever PayPal is unable to complete an investigation of an error within ten (10) days after being notified of an error." *Fernando's* First Amended Complaint, ¶ 58.

Subsequently, *Fernando* counsel ("the Firm") commenced its litigation against PayPal for breach of its User Agreement in 2005 when it challenged PayPal's refund practices (s*ee Farinella v. PayPal, Inc.,* 611 F. Supp. 2d 250 (E.D.N.Y. 2009). The action was subsequently successfully settled in 2008. (*See* Trubitsky's Decl § 5). During the course of this litigation Marina Trubitsky, P.C. has been appointed Rule 23(g) counsel by the Court. During this period, the Firm was contacted by numerous PayPal account holders who complained about PayPal's illegal practice of freezing their accounts in violation of *Comb* Settlement. *Id.*

The Firm commenced its second action against PayPal on April 19, 2010 after it conducted a thorough investigation of PayPal's practices. Before this lawsuit was commenced and during the course of the Firm's first class action litigation against PayPal which was successfully resolved, the Firm paid experts to extensively analyze the allegations giving rise to *Fernando* Action. *(See* Trubitsky's Decl § 6). The Firm has devoted since late 2006 the time of several of its experienced lawyers, its investigators, and its staff, and has incurred significant expenses, in investigating the facts of this case prior to filing the complaint on behalf of its clients. That work has continued after the filing of the complaints. (*See* Trubitsky's Decl § 7).

The *Fernando* Action challenges PayPal's fraudulent practices of holding, freezing and denying access to the funds of Plaintiffs and the putative class for up to 180 days and longer and is of a type consistent with the Firm's acquired experience with PayPal's practices.*(See* Trubitsky's Decl § 11). The *Fernando* Action alleges that notwithstanding the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement, Defendant PayPal continues to violate the Electronic Funds Transfer Act, Defendant's own user Agreement, and *Comb* settlement.

The *Fernando* Action's special emphasis is on PayPal's practice of holding funds in sellers' accounts by placing reserves on accounts and/or limiting and/or suspending sellers' accounts and holding the funds in the accounts for 180 days (collectively referred to as "holding funds"). In *Fernando* Action, Plaintiffs alleged that PayPal placed holds on the funds of users who

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES .**
**CASE NO. 10-CV-01668 SBA**

sell on eBay as well as those who use PayPal as a method of payment on a website other than eBay. This practice has been condemned by numerous PayPal consumers around the country.

**Related Action**

On or about June 4, 2010, another action was commenced by Plaintiffs in *Zepeda v. Paypal, Inc.*, Civil Action No. 5:10-cv-02500-EJD (the "*Zepeda Action*") before this Court. On September 30, 2010, Defendant PayPal filed a motion to dismiss in *Zepeda* Action (Docket No. 26). Subsequently, on October 7, 2010, Plaintiffs' Counsel, Freed & Weiss LLC and Lexington Law Group in *Zepeda Action* filed a motion to get appointed as interim class counsel. Said motion was not opposed by any other third party and on February 14, 2011, this Court granted Zepeda Counsel's motion to get appointed as interim lead, liaison and interim class counsel (Docket Nos. 26 and 28).

On March 22, 2011, Plaintiffs in *Fernando* Action, still being unaware of the Zepeda action, filed its First Amended Complaint. (Docket No. 23).  After Plaintiffs in *Fernando* action learned about a related *Zepeda* action, they filed an administrative motion to relate both cases.  On August 31, 2011, this Court found the cases to be related under Local Rule 3-12(a). (Docket No. 36).

Soon after both cases were found to be related, on October 3, 2011 the Firm filed their Motion to Consolidate *Fernando* action with the related *Zepeda* action.(*See* Trubitsky's Decl § 16).

**The Firm's Early Efforts Laid The Groundwork for the Filing of a Single Consolidated Complaint**

The Firm also took substantial efforts to advance *Fernando* case procedurally. Shortly after their cases were filed, the Firm began organizing and streamlining the litigation by filing related case motions. The process of getting the related cases before one judge proved unexpectedly difficult, as Defendant failed to inform Plaintiffs about *Zepeda* action and ultimately decided to oppose the motion. (*See* Trubitsky's Decl. §15). Plaintiffs' counsel's early efforts have laid the groundwork for the filing of a single consolidated complaint for both *Zepeda* and *Fernando*

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES** .
                                    **CASE NO.  10-CV-01668 SBA**

actions.

### *DECEMBER 21, 2011 MEDIATION*

After the motion to intervene and motion to consolidate were filed, Defendant proposed a private mediation with Plaintiffs' Counsel in *Fernando* action. (Trubitsky's Decl § 17). In light of this proposition, Plaintiffs' Counsel in *Fernando* agreed to take off both motions off the calendar. In December 2011, Plaintiffs' Counsel in *Fernando* and Defendant's Counsel had a private mediation session with Hon. Ellen Sickles James (Ret.) during which they have entered into a tentative settlement agreement, (Trubitsky's Decl § 18). Guided by Judge James, the parties have made efforts to address and satisfy the Court's concerns, as expressed in its December 2011 settlement term sheet. (Trubitsky's Decl § 19).

In addition, on December 21, 2011 after carefully considering the parties' positions and Plaintiffs' Counsel's work on the matter, Honorable Judge James reached the conclusion that $212,500.00 was a reasonable fee to account for all the work that had been done up to that date. (Trubitsky's Decl § 20).

Honorable Judge James's conclusion should be given considerable deference, considering her role as parties' Special Mediator for purposes of discovery and settlement, and the depth of her experience in class action matters. The fee recommendation was based on her evaluation of the fee as a percentage of the fund and in relation to the time expended, as well as the various benefits conferred by the settlement. Today, four years and three months after the mediation session on December 18, 2011 and after numerous further negotiations with Defendants and extensive motion practice, *Fernando* Counsel is asking the Court to award $212,500.00 to account for all the work done up to date and for all the work which would be essential in discharging *Fernando* Counsel's continuing monitoring obligations through the conclusion of this matter. Notably, *Fernando* counsel expended in excess of 2085 hours on this action. In view of the uncertainties surrounding the amount of time counsel will be called upon to devote in discharging their continuing monitoring obligations, the requested fee appears to be very reasonable.

The requested fee is also eminently reasonable in light of *Fernando* Counsel's ability to preserve the amount of the Settlement Fund to be allocated by Defendants for the benefit of the

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES** .
**CASE NO. 10-CV-01668 SBA**

Class in exchange for a limited release.

The requested fee is also reasonable in light of the immense effort this litigation has required from Plaintiffs' Counsel and the significant risks in bringing this litigation. Plaintiffs have brought their claims against Defendant alleging violation of EFTA. This litigation was more complex than other class actions as it involved EFTA, cyberlaw and consumer law issues, all in one lawsuit.  The research conducted by *Fernando* Counsel showed that PayPal operates as a bank when they hold customers' money and should be governed by laws regulating banks. Notably, cases involving EFTA allegations are some of the most complex cases to prosecute because of the extremely factual and legal issues involved.

Researching and developing EFTA allegations took additional amount of time on behalf of Plaintiffs' Counsel. The extensive efforts of Plaintiffs' Counsel, a small firm with limited financial resources have been undertaken without compensation of any kind. The attorney time, as well as the substantial expenses incurred to successfully prosecute this litigation, has been wholly contingent upon the result achieved. (Trubitsky's Decl § 56,57).

Plaintiffs' EFTA claims also present many unresolved legal issues of first impression. In addition, Defendant has vigorously contested Plaintiffs' allegations throughout the litigation. While Plaintiffs believe that their claims are strong, they recognize the unresolved legal issues and contested factual disputes pose substantial risks.  The settlement was negotiated in good faith and at arms' length, following a private mediation. Its terms are based on an agreement in principle that the parties reached in December 2011 with Judge's assistance. In the face of substantial risks and uncertainties, this settlement provides timely and meaningful monetary relief for its class members.

**Fernando Counsel Devoted Substantial Time And Resources To This Litigation, Despite The Substantial Risks Involved.**

The Firm had taken significant steps to identify and investigate Plaintiffs' claims and to advance this litigation. It was the first to investigate PayPal's practice of putting a hold on its customers' funds without providing any explanation as to why their accounts were frozen. Before this lawsuit was commenced and during the course of the Firm's first class action litigation against

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES .**
**CASE NO. 10-CV-01668 SBA**

1  PayPal which was successfully resolved, the Firm paid experts to extensively analyze the

2  allegations giving rise to *Fernando* Action. (Trubitsky Decl. ¶¶ 5, 6, 7).

3      Through February 2016, Class Counsel have devoted over 2085 hours of time, representing a

4  lodestar value of over $1,025,675.00  to this matter. By the time of the hearing on this motion, Class

5  Counsel will have performed substantial additional work and will be required to perform even more

6  work. ( Trubitsky Decl. ¶61). All of this work has been done on a purely contingency fee basis, and

7  *Fernando* Counsel have devoted time to this case that otherwise would have been spent on other

8  matters, including matters in which clients pay an hourly fee on a regular, non-contingent basis.

9  (Trubitsky Decl. ¶62).

10      In addition, Class Counsel have incurred over $81,080.34 in expenses in connection with the

11  prosecution of this case. These are expenses that *Fernando* Counsel would bill to regular fee paying

12  clients, and include filing fees, mediator's fee, copying and postage, travel expenses, and deposition

13  transcripts. (Trubitsky Decl. ¶63).

14  **II. ARGUMENT**

15      **A. Fernando Counsel Are Entitled To An Award Of Attorney's Fees Because The**
16  **Litigation Recovered A Certain And Calculable Fund For The Plaintiff Class**

17      California and federal courts have long recognized that when counsel's efforts result in the

18  creation of a common fund that benefits a class, counsel have an equitable right to be compensated

19  from that fund as a whole. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (United

20  States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common

21  fund . . . is entitled to a reasonable attorney's fee from the fund as a whole"); *Serrano v. Priest*, 20

22  Cal.3d 25, 35 (1977) (*Serrano III*).

23      This litigation resulted in the "recovery of a certain or easily calculable sum of money,"

24  *Serrano III*, 20 Cal.3d at 35, for the benefit of the plaintiff class – namely, a settlement fund of

25  $4,000,000. Because none of class members have paid fees to Class Counsel for their efforts during

26  the litigation, equity requires them to pay a fair and reasonable fee, based on what the market would

27  traditionally require, no less than if they had hired private counsel to litigate their cases individually.

28  *Boeing*, 444 U.S. at 478-82. *Fernando* Counsel is therefore entitled to fees from the settlement fund as

a whole.

**B. The Requested Fee Amount Is Reasonable Under The Percentage-Of-The-Fund Method.**

　　*Fernando* Counsel seek fees in the amount of approximately five percent of the settlement fund, or $212,500. The amount requested is reasonable under the percentage-of-the fund method, and, as discussed below, is also reasonable under a lodestar cross-check.

　　**1. The percentage-of-the-fund method is an appropriate means of calculating fees.**

　　Where, as here, fees are requested from a certain and calculable common fund, the court has discretion to use either the percentage-of-the-fund method or the lodestar method to evaluate the reasonableness of the fee amount requested. *In re Consumer Privacy Cases*, 175 Cal.App.4th 545, 557-58 (2009); *see also In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). In common fund cases, courts frequently award fees "based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("[A] reasonable fee under the common fund doctrine is calculated as a percentage of the recovery.").

　　The percentage-of-the-fund method is appropriate for a number of reasons. The percentage method serves one of the primary goals in setting fees: approximating the legal marketplace. *See Lealao v. Beneficial California*, 82 Cal.App.4th 19, 47-48 (2000) (noting importance of awarding fees to "mimic the market"); *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) (directing district courts to "to award counsel the market price for legal services"). As the California Court of Appeal explained:

> Given the unique reliance of our legal system on private litigants to enforce substantive provisions of law through class and derivative actions, attorneys providing the essential enforcement services must be provided incentives roughly comparable to those negotiated in the private bargaining that takes place in the legal marketplace, as it will otherwise be economic for defendants to increase injurious behavior.

*Lealao*, 82 Cal.App.4th at 47.

　　And, "[c]ourts agree that, because the percentage-of-the-benefit approach 'is result-oriented rather than process-oriented, it better approximates the workings of the marketplace than the lodestar approach.'" *Id.* at 48 (quoting a *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel*

*Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995)); *see also, e.g.*, *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) ("[A] percentage-of-the-fund approach more accurately reflects the economics of litigation practice.").

**2. A fee of 5% of the monetary recovery is more than reasonable in this case.**

Many federal courts within this circuit have awarded one-third of the common fund. *See, e.g.*, *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming fee award of one-third of settlement); *Barbosa v. Cargill Meat Solutions Corp.*, 1:11-CV-00275-SKO, 2013 WL 3340939, at *15 (E.D. Cal. July 2, 2013) (awarding 33.3 percent of fund in wage and hour class action); *Estrella v. Freedom Fin. Network*, LLC, CV 09-03156 SI, 2012 WL 4645012, at *3 (N.D. Cal. Oct. 1, 2012) (awarding $633,333 from $1.9 million settlement fund); *Stuart v. Radioshack Corp.*, C-07-4499 EMC, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010) (awarding one-third of settlement fund in wage and hour class action and noting that "[t]his is well within the range of percentages which courts have upheld as reasonable in other class action lawsuits"); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (awarding 33⅓ percent in wage and hour class action); *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *8-9 (S.D. Cal. June 1, 2010) (awarding 33⅓ percent).

California state courts have also recognized that fee awards in the amount of approximately one third of a class settlement fund are reasonable. *See Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66 n.11 ("fee awards in class actions average around one-third of the recovery") (internal quotation marks omitted); *Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 186 Cal.App.4th 399, 403 (2010) (affirming settlement with 30% fee award); *Meewes v. ICI Dulux Paints*, Case No. BC 265880 (Los Angeles Sup. Ct. Sept. 19, 2003 Order at 2) (33 1/3 % fee award).

*Fernando* Counsel in this case are requesting fees of at least five percent (5.3%) of the $4,000,000 common fund, or $212,500. As detailed below, this is significantly less than their lodestar to date, which is $1,025,675. The 5⅓ percent award sought by *Fernando* Counsel is also significantly less than the range of common fund awards generally granted by state and federal courts in California.

The amount requested here is amply justified by relevant considerations such as the result

Page 13 <span>**PLAINTIFFS' MOTION FOR ATTORNEYS FEES** .</span>
**CASE NO. 10-CV-01668 SBA**

1    obtained for the Class, the novelty of the issues presented, the effectiveness of Class Counsel's legal

2    representation, and the contingent risk involved. *See Ketchum v. Moses*, 24 Cal.4th 1122, 1132-33

3    (2001) (describing these as factors to be considered in determining a reasonable fee award); *In re*

4    *Consumer Privacy Cases*, 175 Cal.App.4th 545, 556 (2009) (same); *Vizcaino*, 290 F.3d at 1048-50

5    (identifying similar factors as relevant in adjusting the percentage of the fund).

6            First, and perhaps most importantly, the fairness of the award sought is supported by the

7    effectiveness of *Fernando* Counsel's legal representation, the results obtained, and the risks of

8    continued litigation. The efforts expended by *Fernando* Counsel in this case are described above and

9    in the Trubitsky Declaration.  As this declaration reflects, Class Counsel's diligent and efficient pursuit

10   of this matter positioned Plaintiffs to successfully settle both actions, to provide meaningful redress for

11   the entire class, and to avoid the substantial risk and expense attendant to protracted litigation. This

12   result is particularly remarkable in light of the novel and unresolved legal issues presented in this case,

13   which created substantial risk and uncertainty. (Trubitsky Decl. ¶¶64,65). Under these circumstances,

14   the statewide settlement achieved is exceptional and supports the fairness of the requested fee amount.

15   *See, e.g.*, *id.* (awarding 33⅓ percent fee where case required "specialized skills to . . . litigate cutting-

16   edge legal theories surrounding rest and meal periods" that were pending before the California

17   Supreme Court); *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556 (identifying "the novelty

18   and complexity of the issues" as a factor to be considered in determining a reasonable fee). Moreover,

19   despite the substantial risk involved, *Fernando* Counsel undertook this representation on a contingency

20   basis, to the exclusion of other paying work, devoting substantial time and out-of-pocket costs to this

21   litigation. *See Ketchum*, 24 Cal. 4th at 1132 (identifying "the contingent nature of the fee award" and

22   "the extent to which the nature of the litigation precluded other employment by the attorneys" as

23   factors to be considered).

24           In addition, courts frequently award higher percentage recoveries in cases such as this, where

25   the common fund is relatively small. *See, e.g.*, *Burden v. SelectQuote Ins. Servs.*, C 10-5966 LB, 2013

26   WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) ("Awarding fees at a rate higher than the 25% benchmark

27   is appropriate in cases involving a relatively small settlement fund."); *Craft v. Cnty. of San*

28   *Bernardino*, 624 F.Supp.2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 Million will often result

Page 14          **PLAINTIFFS' MOTION FOR ATTORNEYS**
                                          **FEES .**
                              **CASE NO.  10-CV-01668 SBA**

1    in . . . fees above 25%."). As the Ninth Circuit has observed, in so-called "megafund" cases – that is,

2    common fund settlements of $50-200 million, where application of the 25% benchmark will result in a

3    commensurately large absolute fee amount – a majority of fee awards are "clustered in the 20-30

4    percent range." *Vizcaino*, 290 F.3d at 1047, 1050 n.4, & Appendix.

5           But in common fund settlements of less than $50 million, courts have awarded a higher

6    percentage of the common fund as attorney's fees. *See, e.g.*, *In re Pacific Enterprises Sec. Litig.*, 47

7    F.3d at 378-79 (affirming an award equal to one-third of the $12 million settlement fund); *Estrella*,

8    2012 WL 4645012, at *3 (awarding $633,333 from $1.9 million settlement fund); *Vasquez*, 266 F.R.D.

9    at 492 (awarding fees of 33⅓ percent of $300,000 settlement).  For these reasons, an award of at least

10   5.3% percent of the common fund is reasonable.

11

12   **C. The Requested Fee Amount Is Reasonable Under A Lodestar Cross-Check.**

13   **1. Fernando Counsel's lodestar dramatically exceeds the fee amount requested.**

14          Courts may also use the lodestar method for calculating fees in common fund cases, or "cross-

15   check" the results of one method against the other. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050 ("[W]hile the

16   primary basis of the fee award remains the percentage method, the lodestar may provide a useful

17   perspective on the reasonableness of a given percentage award."); *In re Consumer Privacy Cases*, 175

18   Cal.App.4th at 557. The lodestar is calculated based on reasonable hours at prevailing hourly rates for

19   each attorney. *Ketchum*, 24 Cal.4th at 1131-32. Those rates reflect "the general local hourly rate for a

20   *fee-bearing* case" and do "*not* include any compensation for contingent risk, extraordinary skill, or any

21   other factors." *Id.* at 1138. The lodestar can be adjusted or enhanced based on various factors, which

22   constitutes a multiplier. *Id.* at 1132; *see also Vizcaino*, 290 F.3d at 1051 (multiplier may be applied to

23   lodestar in common fund case based on factors such as "the complexity of th[e] case, the risks

24   involved and the length of the litigation"). Here, a lodestar cross-check confirms that the percentage

25   requested is quite reasonable. Indeed, the requested fees of at least $212,500 are *lower* than Class

26   Counsel's current lodestar of $1,025,675.00 (*See* Trubitsky Decl. ¶58). And *Fernando* Counsel will

27   perform additional work in the future which will include responding to numerous class member

28   inquiries about the settlement.

The accompanying declaration of Marina Trubitsky sets forth the number of hours and rates used to calculate *Fernando* Counsel's lodestar. As set forth in the declaration, *Fernando* Counsel had devoted over 2085 hours to this litigation. *See* Trubitsky Decl. ¶58.  In reaching this figure, *Fernando* Counsel had exercised billing judgment as they would for a fee-paying client, reducing hours billed to exclude redundancies, inefficiencies, or other time not appropriately charged to a paying client. Trubitsky Decl. ¶60.  Moreover, the attached declaration reports time only through February 2016 and thus does not include many hours of additional time that *Fernando* Counsel will continue to spend counseling class members about the settlement. Trubitsky Decl. ¶61.

As reflected above and in the accompanying declaration, the tasks performed by *Fernando* Counsel for the benefit of the class have included numerous site visits; drafting a thoroughly researched and documented mediation statement and preparing updates thereto based on new law; preparing for and participating in a private mediation and settlement conferences; preparing numerous motions in the course of this  litigation and negotiating the Settlement Agreement with Defendant. Trubitsky Decl. ¶55. Given these numerous tasks, the hours of work performed by *Fernando* Counsel (which have been reduced in the exercise of billing judgment) are reasonable.

The rates used in calculating the lodestar are likewise reasonable. The lodestar should be calculated using hourly rates that are "the prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895. Courts typically apply each attorney's current rates for all hours of work regardless of when performed in order to account for the delay in payment resulting from the years it took to litigate the case. *See Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989) (court should account for delay in payment by applying current rather than historic hourly rates). Here, *Fernando* Counsel's experience, reputation, and ability, as detailed in the accompanying declarations, justify the rates charged.

Further, these rates are commensurate with those prevailing for attorneys with comparable skill and experience litigating complex wage and hour class and collective actions. Trubitsky Decl. ¶68. These hourly rates, or their historical equivalents, have been paid to counsel by paying clients, and have been repeatedly approved by other courts. *Id.*

**2. Although *Fernando* Counsel does not seek a risk multiplier, the case law regarding risk multipliers further supports the reasonableness of the fee requested.**

**PLAINTIFFS' MOTION FOR ATTORNEYS FEES .**
**CASE NO.  10-CV-01668 SBA**

In common fund cases, courts frequently apply multipliers to the lodestar to reflect the risks involved, the complexity of the litigation, and other relevant factors. *In re Consumer Privacy Cases*, 175 Cal.App.4th at 556; *Vizcaino*, 290 F.3d at 1051. Such an enhancement "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino*, 290 F.3d at 1051; *accord Ketchum*, 24 Cal.4th at 1132-33. A risk multiplier also serves to bring the financial incentives for enforcing important rights "into line with incentives [attorneys] have to undertake claims for which they are paid on a fee-for-services basis." *Ketchum*, 24 Cal. 4th at 1132.

As discussed above, the EFTA claims in this case presented issues of first impression that significantly increased the risks of litigating this case. Both California and federal courts recognize that attorneys should be compensated for taking on such contingent risks and provided with financial incentives to enforce important rights and protections like those at issue in this case. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051; *Ketchum*, 24 Cal. 4th at 1132-33. Thus, although *Fernando* Counsel does not seek a risk multiplier in this case (indeed, they seek a *negative* multiplier), the rationale for granting risk multipliers in common fund cases applies here and further demonstrates that the fee amount requested is reasonable.

## IV. CONCLUSION

For the foregoing reasons, *Fernando* Counsel respectfully requests that the Court approve the payment of at least $212,500.00 as reasonable attorney's fees

Dated: March 11, 2016

New York, New York.

THE LAW OFFICES OF MARINA TRUBITSKY, P.C.
(marina.trubitsky@lawcontact.com)

By: _____/s/_____
Marina Trubitsky (MT-9371)
Attorneys for Plaintiffs

1
2

**CERTIFICATE OF SERVICE**

3

I hereby certify that, on March 11, 2016, I electronically filed the foregoing document

4

with the Clerk of the Court using the CM/ECF system. The Court or the CM/ECF system will
send notification of such filings to all CM/ECF participants.

5
6

*/s/ Marina Trubitsky*
Marina Trubitsky

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFFS' MOTION FOR ATTORNEYS
FEES** .
CASE NO. 10-CV-01668 SBA