MARK N. TODZO (State Bar No. 168389)
LEXINGTON LAW GROUP
503 Divisadero Street
San Francisco, California  94117
Telephone:     415.913.7800
Facsimile:      415.759.4112
Email: mtodzo@lexlawgroup.com

JEFFREY A. LEON
QUANTUM LEGAL LLC, LLC
513 Central Avenue Suite 300
Highland Park, IL 60035
Telephone:     847.433.4500
Facsimile:      847.433.2500
Email: jeff@QULegal.com

Attorneys for Plaintiff
MOISES ZEPEDA, et. al.
and All Others Similarly Situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND BRANCH

MOISES ZEPEDA, MICHAEL SPEAR, RONYA OSMAN, BRIAN PATTEE, CASEY CHING, DENAE ZAMORA, MICHAEL LAVANGA, and GARY MILLER, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

PAYPAL, INC., a Delaware Corporation,

Defendant.

Case No.  10-CV-02500 SBA

**NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, AND REIMBURSEMENT FOR COSTS AND SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Action Filed: June 7, 2010

Date:    July 13, 2016
Time:    1:00 p.m.
Ctrm.:  1

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 13, 2016 at 1:00 p.m., or as soon thereafter as this matter may be heard before the Honorable Saundra Brown Armstrong, in Courtroom 1 of the above-captioned Court, located at 1301 Clay Street, Oakland, California 94612, plaintiffs Moises Zepeda, Michael Spear, Ronya Osman, Brian Pattee, Casey Ching, Denae Zamora, Michael Lavanga and Gary Miller, on behalf of themselves and the putative class, will and hereby do move this Court for entry of an order: (i) approving an award of attorneys' fees and reimbursement of costs to Class Counsel in the amount of $940,000; and (ii) approving service awards to each of the class representatives in the amount of $2,500.  This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the declarations of Mark N. Todzo and Jeffrey Leon submitted in support of the motion and the exhibits attached thereto, the other papers on file in this action, and such other submissions or arguments that may be presented before or at the hearing on this motion.

DATED: March 11, 2015            Respectfully submitted,

                                 LEXINGTON LAW GROUP

                                 By:  /s/ Mark N. Todzo
                                      Mark N. Todzo
                                      Attorneys for Plaintiffs
                                      MOISES ZEPEDA, MICHAEL SPEAR,
                                      RONYA OSMAN, BRIAN PATTEE, CASEY
                                      CHING, DENAE ZAMORA, MICHAEL
                                      LAVANGA, and GARY MILLER, on Behalf of
                                      Themselves and All Others Similarly Situated

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

BACKGROUND.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    The Litigation and Settlement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.   Class Counsel's Time and Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.  The Monetary and Injunctive Benefits of the Settlement to the Class. . . . . . . . . . 7

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.    The Attorneys' Fees and Cost Award Requested by Plaintiffs is Reasonable. . . . . 9

    A.    The Reasonableness of the Requested Fees and Costs Award is Confirmed by Class Counsel's Lodestar. . . . . . . . . . . . . . . . . . . . . . . . . 9

        1.    Class Counsel's Rates Are Consistent With the Predominate Market Rates for Comparable Attorneys and Reasonable Based on Class Counsel's Skill and Expertise. . . . . . . . . . . . . . . . . . . . . . 11

        2.    The Estimated Hours Class Counsel Spent On this Case Are Well Documented and Reasonable in Light of the Case's Novelty and Complexity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        3.    The Multiplier Sought Here, Which is Negative, is Reasonable. . 12

    B.    The Fee Award is Also Reasonable under the Percentage of the Fund Method. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        1.    The Value of the Common Fund Includes the Benefits from the Injunctive Relief in Addition to the Cash Fund Created by the Settlement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        2.    A Fee Equaling Slightly Over the 25 Percent Benchmark for Fee Awards Is Reasonable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        3.    The Relevant Factors under Ninth Circuit Precedent Further Support the Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

            a.    Class Counsel Obtained Exceptional Results for the Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

            b.    This Case Was Risky for Class Counsel and Recovery of Class Counsel's Fees and Litigation Expenses Was Entirely Contingent on Counsel's Success. . . . . . . . . . . 17

            c.    Class Counsel Are Skilled Attorneys that Produce High Quality Work. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

            d.    The Positive Reaction of the Class Supports Payment of the Fee Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

II.   Class Counsel Should be Reimbursed for Their Out-of-Pocket Litigation Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1

III.   The Class Representatives Should Receive Reasonable Service Awards for Their
Efforts in Securing the Settlement for the Benefit of the Class. . . . . . . . . . . . . . . 19

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

## **CASES**

3

*Barbosa v. Cargill Meat Solutions Corp.*
    No. 1:11–cv–00275-SKO (E.D. Cal. July 2, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

4

*Behrens v. Wometco Enters., Inc.*
5    118 F.R.D. 534  (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990). . . . . . . . . . . . . . 17

6    *Bellinghausen v. Tractor Supply Co.*
    306 F.R.D. 245 (N.D.Cal.2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

7
    *Chun-Hoon v. McKee Foods Corp.*
8    716 F. Supp. 2d 848 (N.D. Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

9    *Citizens for Better Forestry v. U.S. Dep't of Agric.*
    No. 01-0728 (N.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

10
    *Craft v. Cnty. of San Bernardino*
11    624 F.Supp.2d 1113 (C.D.Cal.2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

12    *Cunningham v. Cnty. of Los Angeles*
    879 F.2d 481 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

13
    *Fischel v. Eq. Life Assur. Socy. of U.S.*
14    307 F.3d 997 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

15    *Garner v. State Farm Ins.*
    No. CV 08-1365 CW (N.D. Cal. April 22, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

16
    *Goldkorn v. County of San Bernardino*
17    No. EDCV 06-707 (C.D. Cal. Feb. 13, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18    *Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10
19
    *Harris v. Marhoefer*
20    24 F.3d 16 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

21    *Hensley v. Eckerhart*
    461 U.S. 424 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
22
    *In re Activision Secs. Litig.*
23    723 F. Supp. 1373 (N.D. Cal. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

24    *In re BankAtlantic Bancorp, Inc. Sec. Litig.*
    No. 07-61542-CIV. (S.D. Fla. Apr. 25, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
25
    *In re Bluetooth Headset Products Liab. Litig.*
26    654 F.3d 935 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

27    *In re General Motors Corp. Pick-Up Truck Fuel Tank*
    55 F.3d 768 (3rd Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
28

*In re Heritage Bond Litig.*
  Nos. 02-ML-1475 DT *et al.* (C.D. Cal Jun. 10, 2005). . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*In re King Res. Co. Sec. Litig.*
  420 F. Supp. 610 (D. Colo. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Media Vision Tech. Sec. Litig.*
  913 F. Supp. 1362 (N.D. Cal. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Mego Fin. Corp. Sec. Litig.*
  213 F.3d 454 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*In re Omnivision Techs., Inc.*
  559 F. Supp. 2d 1036 (N.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

*In re Pacific Enterprises Sec. Litig.*
  47 F.3d 373 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*
  19 F.3d 1291 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13, 15, 17

*Johnson v. Gen. Mills, Inc.*
  No. SACV 10-0061-CJC(ANx) (C.D. Cal. June 17, 2013). . . . . . . . . . . . . . . . . . . . . 3, 16

*Jordan v. Paul Fin., LLC*
  No. C 07-04496 SI (N.D. Cal. Nov. 19, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Kakani v. Oracle Corp.*
  No. 06–06493WHA (N.D.Cal. Dec.21, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lealao v. Beneficial California, Inc.*
  82 Cal. App. 4th 19 (Cal. Ct. App. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Linney v. Cellular Alaska P'ship*
  Nos. C-96-3008 DLJ *et al.* (N.D. Cal. July 18, 1997). . . . . . . . . . . . . . . . . . . . . . . . . 16

*Loring v. City of Scottsdale*
  721 F.2d 274 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lytle v. Carl*
  382 F.3d 978 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*McCown v. City of Fontana*
  565 F.3d 1097 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Miller v. Ghiradelli Chocolate Co.*
  No. 12-cv-04936-LB (N.D. Cal. Feb. 20, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Mills v. Electric Auto-Lite Co.*
  396 U.S. 375 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Minor v. Christie's, Inc.*
  No. C 08-05445 WHA (N.D. Cal. Jan. 29, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Moreno v. City of Sacramento*
    534 F.3d 1106 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Patel v. Axesstel, Inc.*
    No. 3:14–CV–1037–CAB–BGS (S.D. Cal. Oct. 23, 2015). . . . . . . . . . . . . . . . . . . . . . 15, 16

*Paul, Johnson, Alston & Hunt v. Graulty*
    886 F.2d 268 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

*Pierce v. Rosetta Stone, Ltd.*
    No. C 11-01283 SBA (N.D. Cal. Sept. 26, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Powers v. Eichen*
    229 F.3d 1249 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Prison Legal News v. Schwarzenegger*
    608 F.3d 446 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Rodriguez v. W. Pub'g Corp.*
    563 F.3d 948 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Serrano v. Unruh*
    32 Cal.3d 621 (Cal. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Six Mexican Workers v. Ariz. Citrus Growers*
    904 F. 2d 1301 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Smith v. American Greetings Corp.*
    No. 14-cv-02577-JST (N.D. Cal. Jan. 29, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14, 19

*Torrisi v. Tucson Elec. Power Co.*
    8 F.3d 1370 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United Steelworkers of Am. v. Phelps Dodge Corp.*
    896 F.2d 403 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Vincent v. Hughes Air W., Inc.*
    557 F.2d 759 (9th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 14, 16

*Walsh v. Kindred Healthcare*
    No. C 11-00050 JSW (N.D. Cal. Dec. 16, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14

*Wehlage v. Evergreen at Arvin LLC*
    No. 4:10-cv-05839-CW (N.D. Cal. Oct. 4, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wren v. RGIS Inventory Specialists*
    No. C-06-05778 JCS (N.D. Cal. Apr. 1, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Zeisel v. Diamond Foods, Inc.*
No. 10-01192-JSW (N.D. Cal. Oct. 16, 2012)................................ 16, 20

**STATUTES**

15 U.S.C. § 1693M(a)(2)(B)(ii)........................................................ 8

Cal. Bus. & Prof. Code § 17200. ................................................... 3

Cal. Civil Code § 1750. .......................................................... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This long-running lawsuit has culminated with a settlement that has three critical components of class relief.  First, class members are eligible to claim interest on the money that was held by PayPal as a result of the conduct covered by the allegations of the lawsuit from the $3.2 million Settlement Fund[1] that is in an amount that may in fact exceed the interest that class members would have earned on the held money had it never been sequestered by PayPal.  Second, the settlement creates an additional fund of up to $800,000 to provide a no-cost, simplified, arbitration-like procedure so class members can pursue damages for highly individualized loss of business claims as Alternate Claims.  Third, Plaintiffs secured from PayPal meaningful changes in their business practices that resulted in enhanced disclosures and commitments to greater transparency on PayPal's part concerning its hold and reserve practices.  Importantly, PayPal implemented these changes three years ago and the class has thus already been benefitting from the enhanced disclosure and transparency.  Class Counsel secured all these benefits even though Judge Fogel had ruled that Plaintiffs failed to state a claim and dismissed the case.  Despite the dismissal, Class Counsel tenaciously pursued relief for this class and

Class Counsel seek an award of $940,000 as a partial reimbursement of their attorneys' fees and costs incurred pursing this matter on behalf of the Class.  After subtracting Class Counsel's costs and expenses of $38,000, the requested $902,000 in attorneys' fees constitutes between 22.5% and 28% of total monetary benefits created by Class Counsel's efforts.[2]  Given that the settlement results in complete (or even more than complete) relief for the damages claims that could possibly have been certified, provides benefits for individualized claims that could never have been certified,

---

[1] Capitalized terms herein shall have the same meaning as defined in the Settlement Agreement.  (Dkt. No. 275-2, pp. 50-54.)

[2] The requested fee award of $902,000 represents 28% of the Settlement Fund, but only 22.5% of the possible $4 million monetary recovery for the class in the event that the Alternate Claims process results in the maximum payout of $800,000.

1    and secures changes in business practices that benefit class members for years to come, the fee

2    award sought in this case is comparable to those awarded in similar actions, especially given that

3    the $902,000 in fees represents a negative multiplier on the approximately $1,015,233.50 lodestar

4    incurred by Class Counsel. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002);

5    *Miller v. Ghiradelli Chocolate Co.*, No. 12-cv-04936-LB, 2015 U.S. Dist. LEXIS, at *16-17 (N.D.

6    Cal. Feb. 20, 2015) (finding 30% to be reasonable percentage of the fund to award in attorney fees

7    in a "All Natural" product mislabeling case); *Johnson v. Gen. Mills, Inc.*, No. SACV 10-0061-

8    CJC(ANx), 2013 U.S. Dist. LEXIS 90338, at *18-20 (C.D. Cal. June 17, 2013) (awarding 30% of

9    the fund in attorney fees in a product mislabeling case); *Walsh v. Kindred Healthcare*, No. C 11-

10   00050 JSW, 2013 WL 6623224, at *3 (N.D. Cal. Dec. 16, 2013). Therefore, the Court should grant

11   the requested award in full.

**BACKGROUND**

12

13   **I.        The Litigation and Settlement.**

14            The original complaint in this action was filed on June 7, 2010. (Dkt. No. 1.) On August

15   13, 2010, Plaintiffs filed a First Amended Complaint (the "*Zepeda* FAC") challenging PayPal's

16   practice of holding funds in PayPal accounts. (Dkt. No. 22.) The *Zepeda* FAC alleged causes of

17   action for: (1) breach of the PayPal User Agreement; (2) breach of fiduciary duty; (3) an

18   accounting; (4) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et*

19   *seq.*; (5) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et*

20   *seq.*; and (6) unjust enrichment. (*Id.*) Plaintiffs filed a motion to appoint lead counsel on October

21   21, 2010, which the Court granted on February 15, 2011. (Dkt. Nos. 28, 49.) On September 30,

22   2010, PayPal moved to dismiss the *Zepeda* FAC on the grounds, among others, that the PayPal

23   User Agreement expressly grants sole discretion to PayPal to place holds and reserves on PayPal

24   accounts. (Dkt. No. 26.) On February 15, 2011, the Court granted PayPal's motion, dismissing the

25

26

27

28

*Zepeda* FAC with leave to amend. (Dkt. No. 49.) The parties subsequently agreed to explore a possible resolution of Plaintiffs' claims.[3]

Meanwhile, Plaintiffs in the related *Fernando* Action (the "*Fernando* Plaintiffs") filed their initial complaint on April 19, 2010, asserting claims against PayPal and eBay for: (1) violation of the *Comb* settlement agreement; (2) conversion; (3) money had and received; (4) unjust enrichment; and (5) negligence. (*Fernando* Dkt. No. 1.) On October 18, 2010, PayPal filed a motion to dismiss the initial complaint. (*Fernando* Dkt. No. 15.) Before PayPal's motion was heard, the motion was taken off calendar to allow the *Fernando* Plaintiffs time to amend. (*Fernando* Dkt. No. 17-22.) The *Fernando* Plaintiffs thereafter filed their First Amended Complain (the "*Fernando* FAC"), adding claims for breach of the PayPal User Agreement and violation of the EFTA. (Dkt. No. 23.) PayPal moved to dismiss the *Fernando* FAC on June 27, 2011 (*Fernando* Dkt. No. 26), but the motion was taken off calendar to promote settlement discussions.

Defendants and the *Zepeda* Plaintiffs participated in mediation before Randall W. Wulff on May 16, 2011, which resulted in an agreed-upon class settlement. On December 20, 2011, the parties in *Fernando* participated in a separate mediation before the Honorable Ellen James (Ret.), which resulted in an agreement by all parties to certify a single settlement class and to settle all claims in the *Zepeda* and *Fernando* actions through a unified class settlement in *Zepeda*.

---

[3] Plaintiffs in *Fernando* (the "*Fernando* Plaintiffs") filed their initial complaint on April 19, 2010, asserting claims against PayPal and eBay for: (1) violation of the *Comb* settlement agreement; (2) conversion; (3) money had and received; (4) unjust enrichment; and (5) negligence. (*Fernando* Dkt. No. 1.) On October 18, 2010, PayPal filed a motion to dismiss the initial complaint. (*Fernando* Dkt. No. 15.) Before PayPal's motion was heard, the motion was taken off calendar to allow the *Fernando* Plaintiffs time to amend. (*Fernando* Dkt. No. 17-22.) The *Fernando* Plaintiffs thereafter filed their First Amended Complaint (the "*Fernando* FAC"), adding claims for breach of the PayPal User Agreement and violation of the EFTA. (Dkt. No. 23.) PayPal moved to dismiss the *Fernando* FAC on June 27, 2011 (*Fernando* Dkt. No. 26), but the motion was taken off calendar to promote settlement discussions.

1       As noted by the Court in its order granting preliminary approval of the Agreement, soon

2   after an agreement was reached, lead counsel for the *Fernando* Plaintiffs, Marina Trubitsky,

3   attempted to renege on the agreement.  (Dkt. No. 281, p. 3:7-13).  The actions of the *Fernando*

4   Plaintiffs resulted in a significant amount of additional work by Class Counsel.  Ultimately, as a

5   result of these and other actions by the *Fernando* Plaintiffs and their counsel, the *Zepeda* Plaintiffs

6   abandoned the possibility of submitting a joint settlement with the *Fernando* Plaintiffs.

7       In October 2012, a Settlement Agreement was executed by the *Zepeda* Plaintiffs and

8   Defendants. (*Id.*) Pursuant to the settlement terms, the *Zepeda* Plaintiffs amended their complaint

9   to assert all claims alleged in both *Fernando* and *Zepeda* and thereafter sought preliminary

10  approval of the settlement. (Dkt. No. 166.)   Thus, the *Zepeda* Plaintiffs agreed, in order to

11  facilitate a more efficient notice process by combining the two cases, to add the claim related to

12  the Comb settlement which had previously only even been asserted in the *Fernando* complaint. On

13  February 24, 2014, the Court denied Plaintiffs' motion for preliminary approval without prejudice.

14  (Dkt. No. 205.)

15      The *Zepeda* Plaintiffs and Defendants subsequently engaged in a renewed mediation, this

16  time supervised by the Honorable Edward A. Infante (Ret.), a former Chief Magistrate Judge for

17  the Northern District.  After two full-day mediation sessions with Judge Infante and significant

18  additional arms-length negotiations, the parties agreed to substantially re-work the settlement,

19  resulting in the revised Agreement.

20      The revised Settlement Agreement was first presented to this Court for Preliminary

21  Approval on August 14, 2014.  The Court denied Preliminary Approval in an order dated March

22  25, 2015, stating "the Court has concerns regarding whether it is appropriate for Plaintiffs to allege

23  – or the parties to settle – a claim based on a breach of the *Comb* settlement agreement,

24  particularly where … the settlement agreement contemplates that disputes over the settlement will

25  be raised in that action." (Dkt. No. 264 at 11.) The Court further asked for an explanation as to

26  why the class includes persons who had holds since 2006 when the allegations of improper

27  conduct are focused on the 2008 period. (*Id.* at 12.)

28

1    The *Zepeda* Plaintiffs and Defendants subsequently amended the Agreement to remove the

2    release of any claims relating to the *Comb* settlement.  Class Counsel than moved for preliminary

3    approval of the Amended Agreement, explaining therein why the length of the class period was

4    appropriate.  The Court granted Preliminary Approval on November 5, 2015.  (Dkt. No. 281.)

5    In accordance with the Agreement, Class Counsel is requesting an award of attorneys' fees

6    and costs and service awards equal to 30% of the Settlement Fund.  Because Class Counsel are

7    seeking $2,500 per plaintiff as a service award for a total of $20,000, the total requested award of

8    attorneys' fees and costs is $940,000.  The Agreement allows the *Fernando* Plaintiffs to apply for

9    up to $212,500 in attorneys' fees and costs, which, if granted, would be payable out of any fee

10   award to Class Counsel.  Thus, any fees and costs awarded to the *Fernando* Plaintiffs are entirely

11   within the discretion of the Court and will serve to reduce Class Counsel's recovery.  The

12   Agreement contains no clear-sailing agreement.

13   The service awards requested by Plaintiffs of $2,500 per class representative is equal to or

14   less than amounts commonly awarded in this district.  *See, e.g.*, *Rodriguez v. W. Pub'g Corp.*, 563

15   F.3d 948, 958 (9th Cir. 2009) (recognizing that "[i]ncentive awards are fairly typical in class

16   action cases"); *Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 5402120, at *6

17   (N.D. Cal. Sept. 26, 2013) ("In this district, a $5,000 payment is presumptively reasonable.")

18   As of March 4, 2016, there have been more than 250,000 claims submitted even though

19   May 10, 2016 is the due date for filing claims.  (Leon Decl., ¶11.)  In contrast, there have been

20   only 3 objections filed (Dkt. Nos. 292-294) and 28 completed requests for exclusion submitted.

21   (*Id*.)

22   **II.    Class Counsel's Time and Expenses.**

23   Class Counsel have expended significant professional time and out-of-pocket expenses

24   litigating this case and securing the Settlement for the benefit the class. To date, Class Counsel have

25   spent 2,136.4 hours litigating this case with more hours to come in responding to inquiries from

26   Class Members and preparing final approval.  The two firms appointed Class Counsel, Quantum

27   Legal LLC and the Lexington Law Group (*see* Dkt. No. 281, p. 16) have incurred $636,796.50 and

28

1   $337,899 respectively in lodestar.   (Leon Decl., ¶4-5; Todzo Decl., ¶¶4-5.)   Two other firms

2   assisted in the investigation and early stages of litigation of this case.   (Leon Decl., ¶9.)   Those

3   firms incurred an additional $40,538 in fees.   (*Id.*)   Thus, the total lodestar incurred by the *Zepeda*

4   Plaintiffs' counsel is $1,015,233.50.   In addition, the out-of-pocket litigation expenses incurred by

5   Class Counsel to date are $38,463.29.[4]   Thus, Class Counsel's total lodestar and expenses is

6   currently $1,053,696.79.

7        Given the large number of inquiries from Class Members and additional work to obtain final

8   approval of the Agreement, amount at the conclusion its work on behalf of Plaintiffs and the class,

9   especially given that there are a few objectors and there may thus be an appeal. These lodestar and

10   litigation costs amounts are eminently reasonable for a class action case of this scope and

11   complexity.

12   **III.     The Monetary and Injunctive Benefits of the Settlement to the Class.**

13        The Agreement makes two types of monetary relief available to members of the Subclass:

14   (1) guaranteed payments for lost use of frozen funds based on the amount and length of a hold or

15   reserve (a "Basic Claim"); and (2) payments for business damages, subject to proof of such

16   damages by Claims Class members (an "Alternate Claim").   The payments for Basic Claims are

17   equal to two-thirds of the average amount of interest at market rates that would have accrued on

18   the funds subject to a hold or reserve, subject to a $3 floor and rounded to the nearest $1 or $10.

19   Alternate Claims will be paid in full, subject to proof, up to an individual cap of $1,500 per claim.

20   If the total of Alternate Claims (including administration expenses associated with those claims)

21   exceeds $800,000, the Alternate Claims payments will be reduced on a pro-rata basis. However, if

22   the $3.2 million settlement fund is not exhausted by payment of Basic Claims, attorneys' fees and

23   administrative costs, then up to an additional $200,000 from the Settlement Fund may be used to

24   pay Alternate Claims.   The total monetary relief available to the class between the two categories

25   _____

26     [4] This is comprised of $33,625.29 incurred by Quantum Legal LLC and $4,838 incurred by

27   Lexington Law Group.   (Leon Decl., ¶10; Todzo Decl., ¶13.)

28

1  of relief is $4 million, with $3.2 placed irrevocably into a common fund and the $800,000 for

2  alternate claims paid out on a claims made basis.

3       The Settlement provides for the upward proration of payments to Claims Class members to

4  ensure that the maximum possible relief goes to Settlement Class Members rather than a *cy pres*

5  recipient, so the only funds that should need to be distributed on a *cy pres* basis are funds from

6  uncashed settlement checks.  The designated *cy pres* recipient, the Electronic Frontier Foundation,

7  is a non-profit organization that works to defend civil liberties in the digital world, including the

8  rights of users of commercial websites, such as PayPal.  Like the Settlement Class, which is

9  representative of online users of the country as a whole, the Electronic Frontier Foundation works

10 for the rights of internet users nationwide.  For most Claims Class members, the payment amount

11 exceeds any potential recovery through litigation.

12      In addition to the significant monetary relief, PayPal will again agree to commit to the

13 following business practices and to maintain them for two years pursuant to the terms of the

14 Agreement: (1) PayPal will disclose its use of fraud and risk modeling in the PayPal User

15 Agreement; (2) PayPal will no longer respond to requests for information with an email advising

16 users that they must seek a subpoena to obtain information and will revise its email response to

17 advise users to communicate with PayPal to seek additional information; (3) PayPal will revise the

18 PayPal User Agreement to more clearly distinguish among "holds," "reserves" and "limitations";

19 (4) PayPal will enhance the disclosures on its website by including a list of Frequently Asked

20 Questions (FAQ) providing users with greater detail on holds, reserves and limitations; and (5) in

21 response to calls to customer service, PayPal will disclose the reason for a hold, reserve or

22 limitation to the extent not inconsistent with PayPal's security requirements.

23      While class members who are only members of the Injunctive Relief Class will not receive

24 any direct payments, those members also are not releasing any claims for monetary relief other

25 than claims for statutory damages under the EFTA, which are capped at $500,000.  *See* 15 U.S.C.

26 § 1693M(a)(2)(B)(ii).

27

28

8

**ARGUMENT**

**I.      The Attorneys' Fees and Cost Award Requested by Plaintiffs is Reasonable.**

The monetary portion of the Settlement is a single fund from which all Class Members' claims, attorneys' fees, class representative service awards, and other costs are to be paid. Thus, the Settlement is a common fund settlement. *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

In this Circuit, it is well established that the District Court has discretion to award attorneys' fees from a common settlement fund by applying either the lodestar method or the percentage of the fund method. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method"); *Vizcaino*, 290 F.3d at 1047 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295-1296 (9th Cir. 1994) ("*WPPSS*"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Regardless of which of the two methods is used, the award must be reasonable when considered in light of the circumstances of a particular case. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000); *WPPSS*, 19 F.3d at 1294 n. 2. Here, under either the lodestar or the percentage of the fund analysis, the $940,000 requested award of fees and costs is reasonable. First, the requested amount award is less than Class Counsel's lodestar and costs, which total $1,053,696.79. Second, the requested fees are 22.5% of the $4 million total possible monetary benefit or 28% of the guaranteed $3.2 million Settlement Fund. This amount is reasonable and appropriate given the significant injunctive and monetary relief conferred on the nationwide class and the significant risks to Class Counsel in achieving these results.

**A. The Reasonableness of the Requested Fees and Costs Award is Confirmed by Class Counsel's Lodestar.**

Under the lodestar method, a court calculates the fee award by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate for the region and for the experience of the lawyer. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). It is

9

1  appropriate to use the lodestar method when the relief sought and obtained is primarily injunctive in

2  nature and thus not easily monetized, such as class actions brought pursuant to fee-shifting statutes.

3  *See, e.g.*, *Hanlon*, 150 F.3d at 1029. Even though a lodestar figure is "presumptively reasonable," a

4  court may adjust it upward or downward by an appropriate multiplier, reflecting a host of

5  "reasonableness" factors, "including the quality of representation, the benefit obtained for the class,

6  the complexity and novelty of the issues presented, and the risk of nonpayment." *Cunningham v.*

7  *Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988); *Hanlon*, 150 F.3d at 1029. Foremost

8  among these considerations, however, is the benefit obtained for the class. *McCown v. City of*

9  *Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (ultimate reasonableness of the fee "is determined

10 primarily by reference to the level of success achieved by the plaintiff"). Moreover, "[i]t must . . .

11 be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in

12 the hope of inflating their fees . . . . By and large, the court should defer to the winning lawyer's

13 professional judgment as to how much time he was required to spend on the case; after all, he won,

14 and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106,

15 1112 (9th Cir. 2008).  "While extensive detail about how an attorney or paralegal spends their time

16 is not necessary, plaintiff's counsel should 'identify the general subject matter of [their] time

17 expenditures.'" *Lilly,* 2015 U.S. Dist. LEXIS 57637 at *13 (*citing Lytle v. Carl*, 382 F.3d 978, 989

18 (9th Cir. 2004)).

19 In this case, Class Counsels' fee request is $902,000 and their lodestar is $1,015,233.50.  To

20 achieve the widespread injunctive and monetary relief provided by the Settlement, Class Counsel

21 worked approximately 2,100 hours, all on a contingency basis with no guarantee of success or ever

22 being paid.  The requested fee award reflects the risk taken by Class Counsel, as well as the

23 excellent results achieved only after Class Counsel invested a significant amount of time and effort

24 over the past six years.  Also, as established below, Class Counsels' hourly rates are comparable to

25 rates charged by similarly qualified counsel, and the hours expended on this litigation are well-

26 documented and necessary to achieve the substantial injunctive and monetary relief provided by the

27 Settlement.  Finally, even though a multiplier would likely be appropriate in this case due to the

28

excellent results achieved by Class Counsel for the class, Class Counsel agreed accept less than its lodestar in order to efficiently and successfully reach a settlement with PayPal, which it believes it necessary and of significant value to the Class Members.

    **1.**      **Class Counsel's Rates Are Consistent With the Predominate Market Rates for Comparable Attorneys and Reasonable Based on Class Counsel's Skill and Expertise.**

As set forth in the Todzo and Leon declarations, the hourly rates requested by Class Counsel are based on the rates charged by attorneys of comparable skill, reputation, and experience for similarly complex litigation.  (Todzo Decl., ¶¶7-11; Leon Decl., ¶¶6-9).  Declarations from a fee applicant's attorney regarding the prevailing fees in a community and rate determinations in other cases are satisfactory evidence of the prevailing market rate. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Minor v. Christie's, Inc.*, No. C 08-05445 WHA, 2011 WL 902235, at *4 (N.D. Cal. Jan. 29, 2011), *report and recommendation adopted* No. C 08-05445 WHA, 2011 WL 902033 (N.D. Cal. Mar. 14, 2011).  Class Counsel may claim their current hourly rates to account for the "deferred and contingent nature of counsel's compensation." *Miller,* 2015 U.S. Dist. LEXIS at *18. Since Class Counsel brought both expertise and skill to their successful prosecution of this case, Class Counsel's rates are fully justified.

In addition to Class Counsel's declarations, Class Counsel's rates are supported by case law in this District.  In 2011, Judge Spero conducted a thorough review of the prevailing hourly rates for attorneys' practicing complex litigation in the Northern District based on a substantial amount of evidence submitted by the parties in *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011). Judge Spero determined that $650 for a partner with 17 years of experience, $450 for associates with 6 to 7 years of experience, and $150 for paraprofessionals with 3 to 5 years of experience were consistent with the prevailing market rates in the Northern District. *Id.* at *17-22. Likewise, in 2010, the Ninth Circuit found the district court did not abuse its discretion in awarding 2008 hourly rates for San Francisco Bay Area attorneys of $875 for a partner, $700 for an attorney with 23 years of experience, $425 for an attorney with approximately five years of experience, and $190 for paralegals. *Prison Legal News v.*

11

*Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010).  More recent decisions by courts in this District also demonstrate that Class Counsel's hourly rates are in line with the predominant rates for attorneys with comparable experience.

> **2.     The Estimated Hours Class Counsel Spent On this Case Are Well Documented and Reasonable in Light of the Case's Novelty and Complexity.**

The number of hours worked on the investigation, litigation, and settlement of this case is also reasonable. Class Counsel is entitled to be compensated for all hours reasonably spent litigating this case "absent facts rendering the award unjust." *Serrano v. Unruh*, 32 Cal.3d 621, 632-633 (Cal. 1982).  Hours are reasonably spent if "a reasonable attorney would have believed the work to be reasonably expended in pursuit of success" at the time the work was performed, regardless of whether, in hindsight, fewer hours could have been spent. *Citizens for Better Forestry v. U.S. Dep't of Agric.*, No. 01-0728, 2006 WL 5692819, at *8 (N.D. Cal. 2006) (citation omitted).

The hours incurred by Class Counsel to date are thoroughly documented by breakdowns of the lodestar by each timekeeper and detailed summaries of the work performed from the inception of the litigation to the filing of the instant Motion. (Leon Decl., ¶¶4-5, Todzo Decl., ¶¶4-5.)  Class Counsel was required to spend a considerable amount of time to investigate, prepare, litigate the case, and negotiate the Settlement. *Id*. As detailed above, Class Counsel spent substantial time in this litigation and settlement. *Id*. The services provided by Class Counsel were reasonable and necessary to bring this case to a successful conclusion and should be compensated. Further, Class Counsel exercised reasonable billing judgment: any time that might be considered excessive, redundant, or otherwise unnecessary has not been claimed. *Id.* For all of these reasons, the Court should find that the requested fee award is reasonable pursuant to the lodestar method.

> **3.     The Multiplier Sought Here, Which is Negative, is Reasonable.**

The fee and cost award sought here by Class Counsel will not fully compensate them for their lodestar.  The requested fee award is approximately 88% of Class Counsel's lodestar, which represents a negative multiplier.  This multiplier easily falls within the range of acceptability.  *See Kakani v. Oracle Corp.*, No. 06–06493WHA, 2007 WL 4570190, at *2 (N.D.Cal. Dec.21, 2007)

12

1  ("Although the range of multipliers used by district courts in common-fund cases varies widely, an

2  overwhelming majority of district courts have used between 1.0–4.0 as the multiplier.").

3      **B.     The Fee Award is Also Reasonable under the Percentage of the Fund Method.**

4      In addition to applying the lodestar method to determine the reasonableness of a fee award,

5  courts have discretion to use a percentage of the fund analysis to "cross-check" the propriety of a

6  lodestar fee award.  *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 49 (Cal. Ct. App.

7  2000); *see also In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 820 (3rd Cir.

8  1995) ("it is sensible for a court to use a second method of fee approval to cross check its

9  conclusion under the first method").  It is well established that "a private plaintiff, or his attorney,

10  whose efforts create, discover, increase or preserve a fund to which others also have a claim is

11  entitled to recover from the fund the costs of his litigation, including attorneys' fees."  *Vincent*,

12  557 F.2d at 769.  The purpose of this doctrine is to avoid unjust enrichment so that "those who

13  benefit from the creation of the fund should share the wealth with the lawyers whose skill and

14  effort helped create it." *WPPSS*, 19 F.3d at 1300.

15      In this case, Class Counsel negotiated a $3.2 million to $4 million monetary benefit to the

16  Class such that the requested $902,000 fee award would constitute between 22.5 and 28 percent of

17  the settlement fund.  While this award may be slightly above the Ninth Circuit's benchmark, it is

18  reasonable considering the benefits provided by the Settlement's injunctive terms, the risky nature

19  of the representation, the contingent nature of the fee, the attorney skill required and the quality of

20  work, awards made in similar cases, and the positive reaction of the class to the Settlement to date.

21      **1.     The Value of the Common Fund Includes the Benefits from the**
          **Injunctive Relief in Addition to the Cash Fund Created by the**
22          **Settlement.**

23      The Settlement requires PayPal to provide significant non-monetary relief which, while not

24  readily quantifiable, provides real and substantial benefits to the Class. When properly considering

25  the injunctive relief together with the monetary terms of the Settlement, the requested fee and cost

26  award is reasonable.

27      In evaluating the value of the common fund of benefits conferred on the class under a

28                                    13

1  settlement, courts should consider not only the monetary benefits that are reflected in direct sums

2  paid immediately to the class as part of the settlement, but also less tangible and less immediately

3  obvious benefits, including modifications to a defendant's business practices.  For example, Judge

4  White recently held that an attorneys' fee award of 30 percent of a settlement's cash fund is

5  reasonable because "the parties . . . negotiated substantial injunctive relief, and when the Court

6  considers the value of that injunction, it reduces the overall percentage of fees that counsel will

7  receive." *Walsh*, 2013 WL 6623224 at *3. Similarly, the Ninth Circuit recognizes that nonmonetary

8  benefits to class members are to be taken into account by district courts evaluating fee awards.

9  *Loring v. City of Scottsdale*, 721 F.2d 274, 275 (9th Cir. 1983); *see also Mills v. Electric Auto-Lite*

10 *Co.*, 396 U.S. 375, 392 (1970); *Vizcaino*, 290 F.3d at 1049 (considering that "counsel's

11 performance generated benefits beyond the cash settlement fund" in awarding fees greater than 25

12 percent of that fund); *Staton*, 327 F.3d at 974 (the difficulty of quantifying injunctive relief is "a

13 'relevant circumstance' in determining what percentage of the common fund class counsel should

14 receive as attorneys' fees").

15      Here, the injunctive relief will remedy PayPal's alleged misconduct. This meaningful and

16 widespread injunctive relief provides substantial benefits to the Class and should be taken into

17 account when assessing Plaintiffs' fee request.  In fact, in many instances, class-wide injunctive

18 relief alone is sufficient to warrant an award of attorneys' fees and costs that is equal to, or even in

19 excess of, counsel's incurred lodestar. *See, e.g. Wehlage v. Evergreen at Arvin LLC*, No. 4:10-cv-

20 05839-CW, 2012 WL 4755371, at **1-2 (N.D. Cal. Oct. 4, 2012) (awarding $1,835,857.82 in

21 attorneys' fees to class counsel for a class-wide injunctive relief settlement regarding staffing at

22 skilled nursing facilities, with no monetary award to the class); *Goldkorn v. County of San*

23 *Bernardino*, No. EDCV 06-707, 2012 WL 476279, at **9-10 (C.D. Cal. Feb. 13, 2012) (awarding

24 class counsel in attorneys' fees and costs in a settlement for injunctive and declaratory relief only,

25 without any monetary award to the class).

26

27

28

1

**2.      A Fee Equaling Slightly Over the 25 Percent Benchmark for Fee Awards Is Reasonable.**

2      The Ninth Circuit has established 25 percent of the fund as the "benchmark" award for

3   attorneys' fees.  *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272.  However, the guiding

4   principle in this Circuit is that a fee award be "reasonable under the circumstances."  *WPPSS*, 19

5   F.3d at 1295 n. 2.  Thus,

6      Although the benchmark for reasonable fee awards is typically 25% of the common
       settlement fund, "courts may adjust this figure upwards or downwards if the record

7      shows special circumstances justifying a departure….When deciding if a departure
       from the 25 percent benchmark is appropriate, courts may consider the result

8      achieved, the risk involved in the litigation, the skill required and quality of work
       by counsel, the contingent nature of the fee, awards made in similar cases, and the

9      lodestar crosscheck."

10   *Patel v. Axesstel, Inc.*, No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073 at *8 (S.D. Cal. Oct. 23,

11   2015) (quoting *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 260 (N.D.Cal.2015)

12   (internal quotations omitted)).  In addition, courts within the Circuit have recognized that common

13   fund "[c]ases of under $10 Million will often result in result in fees above 25%."  *Craft v. Cnty. of*

14   *San Bernardino,* 624 F.Supp.2d 1113, 1127 (C.D.Cal.2008).

15      Here, a fee award in excess of the 25 percent benchmark is reasonable. As discussed

16   above, the value of the injunctive relief alone is sufficient to justify the additional 5 percent of the

17   monetary relief as an award. Moreover, it is well established that the benchmark percentage should

18   be adjusted, or replaced by a lodestar calculation, when the percentage recovery would be too

19   small in light of the hours devoted to the case or other relevant factors. *See Torrisi v. Tucson Elec.*

20   *Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Six Mexican Workers v. Ariz. Citrus Growers*, 904

21   F. 2d 1301, 1311 (9th Cir. 1990).  In this case, 25 percent of settlement fund would substantially

22   undercompensate Class Counsel by cutting their lodestar and affording no value to the

23   Settlement's injunctive relief.

24      There are many common fund cases in this District where the ultimate award exceeds the 25

25   percent benchmark.  *See Smith v. American Greetings Corp.*, No. 14-cv-02577-JST, 2016 WL

26   362395 (N.D. Cal. Jan. 29, 2016) (awarding the requested 28% of $4 million fund because, in

27   addition to monetary relief, "Class Counsel's efforts have remedied many of the corporate policies

28

15

that led to this lawsuit" and lauding the fact that the settlement represents 20% of the class's maximum possible recovery" whereas here the monetary settlement makes plaintiffs nearly whole for their loss of use of money claims); *Patel*, 2015 WL 6458073 at *8 (awarding 30% of a $1.25 million common fund based on "the result achieved" (which compensated class members at 86% of their losses) and the fact that the case was smaller); *Zeisel v. Diamond Foods, Inc.,* No. 10-01192-JSW, 2012 WL 4902970, at *4 (N.D. Cal. Oct. 16, 2012) (awarding fees amounting to "a bit more than 30% of the settlement amount" in a case alleging false advertising of food products); *Johnson*, 2013 U.S. Dist. LEXIS 90338, at **18-20 (awarding fees equaling 30 percent of the total settlement fund in a consumer class action alleging false advertising of food products); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (*citing In re Activision Secs. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30%")); *Vizcaino*, 290 F.3d at 1050 (awarding attorneys' fees in the amount of 28 percent of the claim fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457-458, 463 (9th Cir. 2000) (upholding an award of 33.3 percent of a $1.725 million settlement); *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming a fee award equal to 33 percent of the settlement fund); *Garner v. State Farm Ins.*, No. CV 08-1365 CW, 2010 WL 1687829, at **1-2 (N.D. Cal. April 22, 2010) (awarding a 30 percent common fund fee); *In re Activision Sec. Litig.*, 723 F. Supp. at 1375 (awarding a 32.8 percent common fund fee); *Linney v. Cellular Alaska P'ship*, Nos. C-96-3008 DLJ *et al.*, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997) (awarding a 33.3 percent fee); *In re Heritage Bond Litig.*, Case Nos. 02-ML-1475 DT *et al.*, 2005 WL 1594403, at *18 n. 12 (C.D. Cal Jun. 10, 2005) (noting that more than 200 federal cases have awarded fees higher than 30 percent of the common fund). These cases show that the Court has an abundance of authority to award Class Counsel the requested fees and costs award.

### 3.   The Relevant Factors under Ninth Circuit Precedent Further Support the Award.

Assessing an appropriate fee based on a percentage of the fund involves taking into account "all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has outlined factors to be considered in setting a reasonable percentage of the common fund: (1) the results

16

1  achieved, including the benefits generated for the class in the case "beyond the cash settlement

2  fund;" (2) the risky nature of the representation; (3) the contingent nature of the fee and the

3  financial burden carried by class counsel; (4) the attorney skill required and the quality of work; (5)

4  awards made in similar cases; and (6) the reaction of the class to the settlement. *See id.* at 1048-

5  1049; *Omnivision Tech.*, 559 F. Supp. 2d at 1046-1048. An application of these factors to this case

6  supports the requested fee award.

7            **a.**      **Class Counsel Obtained Exceptional Results for the Class.**

8        The result achieved by the litigation is one of the most important factors to be considered

9  in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "most critical factor is

10  the degree of success obtained"); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo.

11  1976) ("the amount of the recovery, and end result achieved are of primary importance, for these

12  are the true benefit to the client"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-548

13  (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ("The quality of work performed in a case

14  that settles before trial is best measured by the benefit obtained").

15            **b.**      **This Case Was Risky for Class Counsel and Recovery of Class**

16                        **Counsel's Fees and Litigation Expenses Was Entirely Contingent on Counsel's Success.**

17        Class Counsel's fee request is supported by the risks they faced by representing the Class in

18  this Action. Although the Action was resolved early in the litigation, this early resolution resulted

19  from Class Counsel's skill and does not negate the risk associated with pursuing the case.

20        Also, in taking this case on a contingency-fee basis, Class Counsel assumed the significant

21  risk of never being paid for their efforts on behalf of the class. *Id.* Courts have consistently

22  recognized that the risk of receiving little or no recovery is a major factor in considering an award

23  of attorneys' fees. *WPPSS*, 19 F.3d at 1301-1302 (district court abused discretion by failing to

24  account for contingent risk in awarding common fund fee award); *see also Fischel v. Eq. Life*

25  *Assur. Soc. of U.S.*, 307 F.3d 997, 1008-1010 (9th Cir. 2002). These risks are not illusory. There

26  are numerous class actions in which plaintiffs' counsel expended thousands of hours, and yet

27  received no remuneration whatsoever despite their diligence and expertise. In fact, even when a

28

plaintiff is successful at trial, payment is not guaranteed. *See generally In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV., 2011 WL 1585605, at **8-24 (S.D. Fla. Apr. 25, 2011) (granting judgment as a matter of law for defendants after jury returned verdict for plaintiffs). As in the cases cited above, the fee in this matter was entirely contingent with the only certainty being that there would be no fee without a successful result. Indeed, Class Counsel have received no compensation for their efforts during the course of this litigation. Absent this Settlement, there was a sizeable risk that at the end of the day, Class Members and Class Counsel would obtain no recovery. Therefore, the risks associated with this case support finding that the requested fee is reasonable.

**c.**     **Class Counsel Are Skilled Attorneys that Produce High Quality Work.**

Class Counsel were only able to litigate and resolve this case so effectively and efficiently by virtue of their considerable skill and experience in this area of the law. *See Heritage Bond*, 2005 WL 1594389, at *12 ("The experience of counsel is also a factor in determining the appropriate fee award."). Class Counsel specialize in consumer class actions, and have served as counsel for classes of plaintiffs in a variety of substantive areas. (Leon Decl., ¶2; Todzo Decl., ¶¶2, 6-12.) In particular, Class Counsel have significant experience representing aggrieved consumers in class action cases. *Id.* The skill demonstrated by Class Counsel in litigating and ultimately settling this action thus supports the requested fee. *Omnivision Techs.,* 559 F. Supp. 2d at 1047 (the "prosecution and management of a complex national class action requires unique legal skills and abilities.").

**d.**     **The Positive Reaction of the Class Supports Payment of the Fee Award.**

As of January March 4, 2016 more than 250,000 class members have already submitted claims, with only 3 objections to the Settlement filed and only 28 completed requests for exclusion from the Settlement have been submitted. This *de minimis* number of objections and requests for exclusion (approximately 0.01% of participating Class Members) indicates a highly positive response to the Settlement. *Mego Fin. Corp.*, 213 F.3d at 459. The lack of any significant negative

18

1   response to the Settlement shows the quality and value of the Settlement. Class Counsel will

2   provide a final tally of the exclusions and objections and respond fully to their substance at the

3   upcoming hearing for this Motion. However, to date, the claims data indicates significant support

4   for the Settlement from the class. Class Counsel should be appropriately rewarded for their

5   achievement.

6   **II.     Class Counsel Should be Reimbursed for Their Out-of-Pocket Litigation Expenses.**

7           In addition to an award of attorneys' fees, attorneys who create a common fund for the

8   benefit of a class are also entitled to payment of their reasonable litigation expenses. *In re Media*

9   *Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996).

10          Litigation expenses are recoverable where they are of the type typically billed by attorneys

11  to paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris

12  may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would

13  normally be charged to a fee paying client.'"); *see also Media Vision Tech.*, 913 F. Supp. at 1366.

14  The categories of expenses for which Class Counsel seek reimbursement are the same types of

15  expenses routinely charged to hourly paying clients, including online legal research, mediation fees,

16  copying expenses, and filing fees. These expenses were all necessarily incurred and, therefore,

17  should be reimbursed from the settlement fund as provided by the Settlement.

18  **III.    The Class Representatives Should Receive Reasonable Service Awards for Their
          Efforts in Securing the Settlement for the Benefit of the Class.**

19          Incentive awards are appropriate to compensate named plaintiffs for work done in the

20  interest of the class. *See Staton.*, 327 F.3d at 976-977; *Chun-Hoon v. McKee Foods Corp.*, 716 F.

21  Supp. 2d 848, 854 (N.D. Cal. 2010).

22          Plaintiffs and Class Counsel request that the Court authorize incentive awards of $2,500 per

23  Plaintiff.  Plaintiffs have performed a number of tasks that greatly assisted in the preparation,

24  prosecution, and settlement of the case.  Among other things, Plaintiffs consulted with Class

25  Counsel throughout the six year history of this case, made themselves available as needed, provided

26  factual background to assist in the development of the case, reviewed pleadings and correspondence

27  in the case, and evaluated the settlement papers and terms.

28

1   These incentive awards – recognizing the class representatives' services to the class – are

2   modest under the circumstances, and well in line with and less than awards approved by federal

3   courts in California. *Jordan v. Paul Fin., LLC*, No. C 07-04496 SI, 2013 WL 6086037, at *3 (N.D.

4   Cal. Nov. 19, 2013) ("In general, courts have found incentive awards of $5,000 for service to a

5   class to be presumptively reasonable"); *Barbosa v. Cargill Meat Solutions Corp.*, No. 1:11–cv–

6   00275-SKO, 2013 WL 3340939, at *22 (E.D. Cal. July 2, 2013) (awarding $5,000 incentive

7   awards); *Zeisel*, 2012 WL 4902970 (awarding $3,000 incentive award). Accordingly, Class Counsel

8   respectfully requests that the incentive awards provided for in the Settlement be approved.

9   <u>**CONCLUSION**</u>

10   For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant this

11   request for attorneys' fees and litigation expenses in the amount of $940,000 and modest service

12   awards to each of the eight class representatives in the amount of $2,500.

13

14   DATED: March 11, 2016                    Respectfully submitted,

15                                            LEXINGTON LAW GROUP

16

17                                            By:   /s/ Mark N. Todzo

18                                                  Mark N. Todzo
                                                    Attorneys for Plaintiffs
19                                                  MOISES ZEPEDA, MICHAEL SPEAR,
                                                    RONYA OSMAN, BRIAN PATTEE, CASEY
                                                    CHING, DENAE ZAMORA, MICHAEL
20                                                  LAVANGA, and GARY MILLER, on Behalf of
                                                    Themselves and All Others Similarly Situated

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS
Case No. 10-CV-02500 SBA