1  J. David Franklin, Esq., Bar No. 41659
   FRANKLIN & FRANKLIN
2  402 West Broadway, Suite 1140
   San Diego, CA  92101
3  Tel: (858) 229-4441

4  Anthony A. Ferrigno, Esq., Bar No. 61104
   LAW OFFICES OF ANTHONY A. FERRIGNO
5  1116 Ingleside Avenue
   Athens, TN  37303
6  Tel: (423) 744-4041

7  Pamela E. Havird, Esq., Bar No. 129410
   Attorney at Law
8  P. O. Box 375
   La Jolla, CA 92038
9  Tel: (619) 888-8090

10 Attorneys for Objectors
   Walley Collins and Lucinda Christian

11

12              UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                    OAKLAND DIVISION

15 MOISES ZEPEDA, MICHAEL SPEAR,          Case No. 10-cv-02500-SBA
   RONYA OSMAN, BRIAN PATTEE, CASEY
16 CHING, DENAE ZAMORA, MICHAEL           **OBJECTIONS OF CLASS MEMBERS**
   LAVANGA, and GARY MILLER, on behalf    **WALLEY COLLINS AND LUCINDA**
17 of themselves and all others similarly situated,  **CHRISTIAN TO THE SETTLEMENT**
                                          **AGREEMENT PENDING FINAL**
18            Plaintiffs,                  **APPROVAL IN THIS COURT**

19
                                          Date:       July 13, 2016
20        v.                              Time:          1:00 p.m.
                                          Courtroom:  Courtroom 1
21 PAYPAL, INC., et al.,                  Judge:      Hon. Saundra B. Armstrong

22            Defendants.

23

24      **PLEASE TAKE NOTICE** that class members Walley Collins and Lucinda Christian hereby object

25 to the settlement agreement that is pending final approval in this Court on July 13, 2016, at 1:00 p.m.  Said

26 class members object on the following grounds:

27      1.      The settlement is not fair, reasonable and adequate because it provides practicably no

28 benefits to the class members while at the same time leaving Defendant PayPal, Inc. free to continue with its

onerous system of holds and reserves, and continues to allow Defendant PayPal, Inc. to claim ownership of tremendous amounts of interest payments that arise from aggregating monies in user accounts, wherein said interest rightfully belongs to the class members, and not to PayPal, Inc.

2.      Inadequate representation by class counsel as follows:

(a)      There appears to have been a lack of discovery in this case.  Class counsel appeared to have no knowledge of the value of this case if the Plaintiffs were successful at trial.  If class counsel did not know the value of this case if successful at trial, then class counsel could not have meaningfully assessed whether the settlement reached was a good settlement for the class.

(b)      Class counsel provided no significant benefits to the class, but are seeking to walk away with a hefty award of attorney's fees.

(c)      Class counsel erred in splitting the class into a claims class and an injunctive relief class solely for the purpose of precluding the injunctive class from opting out of the settlement under Rule 23(b)(2), when under the law, all settlement class members are entitled to opt out of the settlement.

Dated:  May 7, 2016                     FRANKLIN & FRANKLIN


                                        s/J. David Franklin
                                        J. David Franklin
                                        One of the Attorneys for Objectors
                                        Walley Collins and Lucinda Christian

## DECLARATION OF OBJECTOR WALLEY COLLINS

I, Walley Collins, declare as follows:

1.        I am a class member in the case of *Zepeda v. PayPal, Inc. and eBay, Inc.*, Case No. 10-cv-02500-SBA pending in the United States District Court for the Northern District of California.  I had an active PayPal account between April 19, 2006 and November 5, 2015.  During that time, I had several holds placed on my account by PayPal, Inc.

2.        My name is Walley Collins.  My address is 9172 Valencia Street, Spring Valley, California 91977.  My telephone number is (619) 750-8766.  My e-mail address associated with my PayPal account is malakyah@hotmail.com.  I hereby confirm that I am a Settlement Class Member.

3.        I hereby object to the proposed settlement agreement in this case on the grounds set forth in this document by my legal counsel.  I am hereby requesting of the Court permission for my legal counsel to speak at the Final Approval Hearing.  It is the intention of my legal counsel to appear at the Final Approval Hearing on July 13, 2016 at 1:00 p.m. in Courtroom 1.

I declare under penalty of perjury under the laws of the United States and the laws of the State of California that the foregoing is true and correct.  Executed on May 4, 2016, at Spring Valley, California.


s/Walley Collins_____
Walley Collins

## ATTESTATION OF SIGNATURE

Pursuant to Civil L.R. 5-1(i)(3) regarding signatures, I attest under penalty of perjury that the concurrence in the filing of this document has been obtained from its signatory.


s/J. David Franklin_____
J. David Franklin

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF OBJECTOR LUCINDA CHRISTIAN

I, Lucinda Christian, declare as follows:

1.      I am a user of PayPal, Inc. in the United States and had an active PayPal account between April 19, 2006 and November 5, 2015, and therefore, I am a class member in *Zepeda v. PayPal, Inc. and eBay, Inc.*, Case No. 10-cv-02500-SBA, currently pending in the United States District Court for the Northern District of California. During the period of time mentioned, PayPal, Inc. has placed holds on funds in my PayPal account.

2.      I am objecting to the proposed settlement agreement in *Zepeda v. PayPal, Inc., et* al.  The factual basis and legal grounds for my objections to the proposed settlement agreement are set forth herein by my legal counsel.  My name is Lucinda Christina. My address is P.O. Box 11025, Lexington, KY 40512. My telephone number is (502) 867-1070.  My e-mail address associated with my PayPal account is Birchwoodfarms@mindspring.com. I hereby confirm that I am a settlement class member.  I hereby request from the Court permission for my legal counsel to speak at the Final Approval Hearing on July 13, 2016, at 1:00 p.m. in Courtroom 1.  It is the intention of my legal counsel to appear at the Final Approval Hearing.

3.      In the fall of 2015, I sold hatching eggs on eBay to a buyer.  The U.S Department of Agriculture regulates the state to state shipment of such eggs.  The buyer had not applied to USDA for the proper permits to bring the eggs into her state, was unwilling to do so, and was also unwilling to drive to pick the eggs up.  The buyer then changed her mind about purchasing the eggs, because I would not ship the eggs because to do so would have been illegal under federal law.  eBay sought to force me to break the law and ship the eggs.  I refused to ship the eggs, and eBay determined that the buyer should have her money refunded.  At the request of eBay, PayPal, Inc. took the money from my personal bank account and refunded it to the buyer.

4.      During the time that I have had a PayPal account, PayPal required me to "verify" my account by providing to PayPal a bank account number that would be tied to my PayPal account as well as a credit card number.  As demonstrated in my hatching eggs example, when PayPal needs funds to refund a buyer, it simply removed the money from my bank account.

I declare under penalty of perjury under the laws of the United States and the laws of the State of

California that the foregoing is true and correct.  Executed on May 5, 2016, at Lexington, Kentucky.

s/Lucinda Christian
Lucinda Christian

## **ATTESTATION OF SIGNATURE**

Pursuant to Civil L.R. 5-1(i)(3) regarding signatures, I attest under penalty of perjury that the concurrence in the filing of this document has been obtained from its signatory.

s/J. David Franklin
J. David Franklin

## TABLE OF CONTENTS

I.      A COMPARISON OF THE CLAIMS AGAINST DEFENDANT PAYPAL
        IN THE *ZEPEDA* CASE AND IN THE *CHEN* CASE                        6

II.     THE PROPOSED SETTLEMENT IS UNFAIR, UNREASONABLE AND
        INADEQUATE TO CLASS MEMBERS BECAUSE THEY WILL BE
        FORCED TO GIVE UP A VIABLE CLAIM AGAINST DEFENDANT
        PAYPAL, INC. AND RECEIVE NO BENEFITS IN RETURN                     8

III.    THE PROPOSED SETTLEMENT AGREEMENT WREAKS OF
        INADEQUATE REPRESENTATION OF THE CLASS BY CLASS
        COUNSEL                                                           17

IV.     CLASS COUNSEL ERRED IN SPLITTING THE CLASS INTO A
        "CLAIMS CLASS" AND AN "INJUNCTIVE RELIEF CLASS" SOLELY
        FOR THE PURPOSE OF PRECLUDING THE "INJUNCTIVE RELIEF
        CLASS" FROM OPTING OUT OF THE SETTLEMENT UNDER RULE
        23(b)(2) WHEN UNDER THE LAW, ALL SETTLEMENT CLASS
        MEMBERS ARE ENTITLED TO OPT OUT OF THE SETTLEMENT                 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**

*Amchen Products, Inc. v. Windsor*
117 S.Ct. 2231, 2248 (1997)                                          8,9,17

*Class Plaintiffs v. City of Seattle*
955 F.2d 1268, 1276 (9th Cir. 1992)                                  9

*Crawford v. Equifax Payment Services, Inc.*
201 F.3d 877, 881 (7th Cir. 2000)                                    10

*Hanlon v. Chrysler Corporation*
150 F.3d 1011, 1019 (9th Cir. 1998)                                  8,9,10,17,18

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*
55 F.3d 768, 805 (3d Cir. 1995)                                      9

*Linney v. Cellular Alaska Partnership*
151 F.3d 1234, 1240 (9th Cir. 2003)                                  21

*Mars Steel Corporation v. Continental Illinois National Bank & Trust*
834 F.2d 677, 681 (7th Cir. 1987)                                    10

*Molski v. Gleich*
318 F.3d 937, 956 (9th Cir. 2003)                                    18,20

*Officers for Justice v. Civil Service Commission of San Francisco*
688 F.2d 615, 628 (9th Cir. 1982)                                    9

*Protective Comm. for Independent Stockholders of TNT Trailer Ferry, Inc. v. Anderson*
390 U.S. 414, 434 (1968)                                            10

*Staton v. Boeing Company*
327 F.3d 938, 951 (9th Cir. 2003)                                    18

*Weinberger v. Kendrick*
698 F.2d 61, 73 (2d Cir. 1982)                                       10

**Other Authorities**

Federal Rules of Civil Procedure
          Rule 23(a)                                                 8,18
          Rule 23(a)(4)                                              9,18
          Rule 23(b)(2)                                              20
          Rule 23(e)                                                 9

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OBJECTIONS TO SETTLEMENT AGREEMENT

### I.    A COMPARISON OF THE CLAIMS AGAINST DEFENDANT PAYPAL IN THE *ZEPEDA* CASE AND IN THE *CHEN* CASE

Counsel for Objectors Collins and Christian are also class counsel in a putative class action lawsuit filed in the Alameda County Superior Court in Oakland, California, under the name of *Chen, et al. v. eBay, Inc. and PayPal, Inc.*, Case No. RG15780778.  That Class Action Complaint has some of the same claims that are in the *Zepeda* case against PayPal, Inc. A copy of the claims against Defendant PayPal, Inc. that are in the *Chen* Complaint are attached as Exhibit A to the Franklin Declaration.  The second cause of action in the *Chen* Complaint is for breach of fiduciary duty against PayPal, Inc.  In ¶ 77(c) of the *Chen* Complaint, it sets forth the language of ¶ 5.2 of the PayPal, Inc. User Agreement as follows: "You agree that you will not receive interest or other earnings on the funds that PayPal handles as your agent and places in Pooled Accounts. In consideration of your use of the PayPal Services, you irrevocably transfer and assign to PayPal any ownership right that you may have and any interest that may accrue on funds held in Pooled Accounts." It is further alleged in ¶ 77(c):

> Contrary to what is stated in ¶ 5.2 of the PayPal, Inc. user agreement, Defendant PayPal, Inc. is already compensated for use of PayPal Services by Plaintiffs and members of the Plaintiff Class through the payment of fixed and variable fees for PayPal Services. Pursuant to ¶ 8.2 of the PayPal, Inc. user agreement, for every sales transaction, Defendant PayPal, Inc. charges Plaintiffs and members of the Plaintiff Class 2.9% of the value of the transaction plus an additional fixed charge of .30¢.  Under the PayPal user agreement, this is the compensation that is received by Defendant PayPal, Inc. for PayPal Services rendered to Plaintiffs and members of the Plaintiff Class. Defendant PayPal, Inc. has provided no services to Plaintiffs and members of the Plaintiff Class to justify its receipt of interest on the pooled funds of the Plaintiffs and members of the Plaintiff Class that said Defendant maintains as their agent.

What services does PayPal provide?  The answer is found in ¶ 1.1 of the PayPal User Agreement which provides in part: "PayPal is only a payment service provider.  PayPal helps you make payments to and accept payments from third parties.  PayPal is an independent contractor for all purposes, except that PayPal acts as your agent with respect to the custody of your funds."

In ¶ 77(b) of the *Chen* Complaint, it is alleged that Defendant PayPal places unjustifiable and/or arbitrary holds and unjustifiable and/or arbitrary reserves on funds belonging to the Plaintiffs and members of the Plaintiff Class, thereby depriving them of access to their money.

The fourth cause of action in the *Chen* Complaint alleges a UCL claim against Defendant PayPal for placing unjustifiable and/or arbitrary holds and reserves on funds of the class members being held by Defendant PayPal in PayPal accounts belonging to the class members.  The sixteenth cause of action of the *Chen* Complaint seeks declaratory and injunctive relief against Defendant PayPal for an unconscionable contract provision or policy, to-wit, PayPal's 180 day return policy.  This policy allows all buyers 6 months in which to return items to sellers where the buyer claims that the purchased item is significantly not as described in the seller's listing on an eBay website.  Obviously, a buyer would know immediately if he received an item that was significantly not as described in the seller's listing on the eBay website.  The 6 month PayPal return policy allows buyers to have free use of the purchased item for 6 months, after which time, said buyers can fabricate a story which would allow said buyers to return the merchandise under the 6 month PayPal return policy.  The Plaintiffs in *Chen* seek to have the 180 day return policy of Defendant PayPal declared unconscionable.

In the Second Amended Complaint in *Zepeda*, in ¶ 1 thereof, under "nature of the action" it states: "Plaintiffs bring this class action against PayPal, Inc. to recover damages and other relief available at law and in equity on behalf of themselves, as well as on behalf of the members of the classes defined herein, to rectify PayPal's inequitable and unconscionable conduct detailed herein." In ¶ 2 of the *Zepeda* Complaint, it refers to the 180 day hold on funds based upon the 180 return period, and also refers to holds on accounts where PayPal believes that there may be a high level of risk associated with the account.  Quite properly, in ¶ 3 of the *Zepeda* Complaint, it alleges that PayPal imposes holds on users' accounts where it has no reason to believe there is a high level of risk associated with the users account or transactions.  This same allegation appears in the *Chen* Complaint.  PayPal can demonstrate no risk that would justify placing a long hold on a class member's account.  In ¶ 39 of the *Zepeda* Complaint it alleges that Defendant PayPal places holds on funds even though there is no risk. In ¶ 40, it is alleged that the funds continue to accrue interest, and PayPal is unjustly enriched. In ¶ 41, it is alleged that the hold and reserve provisions are unconscionable. In ¶ 9 it is alleged that since the funds in the PayPal accounts belong to the users, when those funds are in the custody or control of PayPal, it has a fiduciary obligation that requires it to act in the interests of the users.

Thus, both *Chen* and *Zepeda* set forth very similar claims against Defendant PayPal. In *Chen*, the

Plaintiffs are alleging that the reason that Defendant PayPal places holds and reserves on funds belonging to class members is for the purpose of accumulating huge sums of money which it then places in pooled bank accounts and earns hundreds of thousands of dollars in interest which rightfully should go to the class members.  We believe that if PayPal lost its right to obtain interest from the pooled accounts, then the holds and the reserves would disappear because Defendant PayPal would then have no incentive to accumulate these huge sums of money in the user accounts. Objectors and their counsel firmly believe that Defendant PayPal lies about "risky accounts" for the sole purpose of justifying that a hold be placed upon that so-called "risky account."

We will establish that the placing of holds and reserves on accounts by Defendant PayPal is completely unnecessary. In the process of establishing a PayPal account, a user ends up providing Defendant PayPal with a bank account number that is tied to the user's PayPal account, and also provides Defendant PayPal with a credit card. If there is an occasion for PayPal to refund a buyer the money that the buyer paid to the seller, PayPal is authorized to take the money out of the seller's PayPal account. If there is insufficient funds in the seller's PayPal account, then Defendant PayPal can either take the money out of the seller's bank account or charge the seller's credit card. An example of this is set forth in ¶ 3 of the Christian Declaration, where PayPal took the money out of her personal bank account for the purpose of refunding a buyer. The point is this: there is no need to place a hold on funds in a user's account on the chance that a buyer might have to be refunded sometime in the future when Defendant PayPal has 3 separate sources from which to obtain the money for the refund.

## II.   THE PROPOSED SETTLEMENT IS UNFAIR, UNREASONABLE AND INADEQUATE TO CLASS MEMBERS BECAUSE THEY WILL BE FORCED TO GIVE UP A VIABLE CLAIM AGAINST DEFENDANT PAYPAL, INC. AND RECEIVE NO BENEFITS IN RETURN

When there is a certified class settlement, the Court must pay "undiluted, even heightened attention" to class certification requirements in a settlement context. *Amchen Products, Inc. v. Windsor*, 117 S.Ct. 2231, 2248 (1997); *Hanlon v. Chrysler Corporation*, 150 F.3d 1011, 1019 (9th Cir. 1998). The threshold task of the Court is to ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) FRCP applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Hanlon v. Chrysler Corporation, supra*, at p.1119.  One of the problems that exists with respect to this proposed settlement is the same problem

that existed in *Amchen Products, Inc. v. Windsor, supra*, where the Supreme Court found that the clashing interests of present versus future claimants presented insurmountable conflicts for class counsel who could not possibly provide adequate representation to both groups as required by Rule 23(a)(4).  In this case, there is a conflict between members of the "claims" class and the "injunctive relief" class. Many members of the "claims" class are no longer PayPal users.  Therefore, they would only be interested in a monetary recovery, and could care less whether Defendant PayPal continued its onerous "hold" and "reserve" practices. On the other hand, the members of the "injunctive relief" class are interested in getting rid entirely of the "holds" and "reserves" placed on their PayPal accounts by Defendant PayPal.  A settlement agreement that requires Defendant PayPal to simply provide more information about its onerous "holds" and "reserves" simply provides no benefit whatsoever to the "injunctive relief" class.  It will be "business as usual" if this settlement agreement is approved, with Defendant PayPal continuing to impose its onerous "holds" and "reserves" on PayPal users.  Under the PayPal user agreement, the placing of "holds" and "reserves" on user accounts is strictly within the discretion of Defendant PayPal. All of the "disclosures" in the world is not going to deter Defendant PayPal from continuing to impose onerous "holds" and "reserves" on users' accounts.  This conflict between the classes is further amplified by the fact that members of the "injunctive relief" class are not permitted to opt out of the settlement.

Rule 23(e) of the FRCP requires the Court to determine whether a proposed settlement is fundamentally fair, adequate and reasonable. *Hanlon v. Chrysler Corporation, supra*, at p.1026; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness. *Officers for Justice v. Civil Service Commission of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). Several circuits have held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness. The dangers of collusion between class counsel and the defendant, as well as the need for additional protections from a settlement that is not negotiated by a court designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e).  *In re General Motors Corporation Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 805 (3d Cir. 1995) ["We affirm the need for Courts to be even more scrupulous than usual in

approving settlements where no class has yet been formally certified"]; *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ["District judges who decide to employ such a procedure are bound to scrutinize the fairness of the settlement agreement with even more than the usual care"]; *Mars Steel Corporation v. Continental Illinois National Bank & Trust*, 834 F.2d 677, 681 (7th Cir. 1987) ["When class certification is deferred, a more careful scrutiny of the fairness of the settlement is required."]

In assessing a settlement proposal, the Court is required to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corporation, supra*, 150 F.3d at p.1026. To survive appellate review, the district court must show it has explored comprehensively all factors. *Protective Commission for Independent Stockholders of TNT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 434 (1968).

Because the proposed settlement agreement releases all of the absent class members' claims with little or no compensation, the settlement agreement is unfair and does not adequately protect the interests of the absent class members. See *Crawford v. Equifax Payment Services, Inc.,* 201 F.3d 877, 881 (7th Cir. 2000) In *Crawford*, the Court found that the proposed settlement was troubling. A class representative and his attorneys were paid handsomely to go away while the other class members received nothing and lost the right to pursue class relief.

In the case at bar, the sum total of the "alleged benefits" to members of the class are a cash contribution of up to $4,000,000 with up to 30% of that amount designated for attorney's fees, and certain disclosures about "holds" and "reserves" placed on class members' PayPal accounts. We will demonstrate that there is very little benefit to the cash payment and no benefit whatsoever to the class from the proposed "disclosures." A copy of the PayPal user agreement effective October 30, 2015 is attached to the Franklin Declaration as Exhibit B. On page 2 of said agreement it states that "we may also use proprietary fraud and risk modeling when assessing the risk associated with your account." Also at p.2, the agreement discloses that a buyer has 180 days to open a dispute in PayPal's online resolution center. In ¶ 1.1 of the agreement, it states: "PayPal is only a payment service provider. PayPal helps you

make payments to and accept payments from third parties." In ¶ 2.2 of the agreement, it states: "You may send money from or receive money into your account…"

We contend that the motivation for the "holds" and "reserves" placed on users' funds in PayPal accounts is established by ¶ 5.1 of the agreement. Said paragraph provides: "You do not need to maintain a balance in your account in order to make or receive payments. If you do hold a balance, that balance represents an unsecured claim against PayPal and is not insured by the FDIC. PayPal will combine your balance with the balance of other users and will invest those funds in liquid investments in accordance with state money transmitter laws. <u>PayPal will own the interest or other earnings on Pooled balances</u>." (emphasis added) We believe that Defendant PayPal has received millions of dollars in "interest" from these "Pooled Accounts." Since there appears to have been very little discovery done in the case at bar, we highly doubt that class counsel has any idea how much "interest" Defendant PayPal has obtained from monies held in users' accounts. In the *Chen* case, we are seeking to establish that the contractual provision allowing Defendant PayPal to "own the interest" is unconscionable and unenforceable. If we are successful, Defendant PayPal would be liable for millions of dollars that would have to be repaid to class members.

¶ 6.2 of the PayPal user agreement provides as follows: "<u>Withdrawal Limits</u>. Depending on the degree to which you have verified your account, we may limit the amount you may withdraw to $500 USD per month… In addition, we may delay withdrawals of large sums of money while we perform a risk review." The purpose of ¶ 6.2 is two fold.  First of all, it allows Defendant PayPal to hold money in a PayPal user's account. This is highly beneficial to Defendant PayPal, because it provides more money that PayPal can place into its "Pooled Accounts" from which it obtains interest upon the monies held in the PayPal users' accounts. Secondly, it places an emphasis on "Verifying your Account." What this means in "PayPal Speak" is for the PayPal user to provide Defendant PayPal with a bank account number to tie to the PayPal account and also to provide credit card information to PayPal.

¶¶ 10.1, 10.5, 10.6, and 10.7 of the PayPal agreement are the most important paragraphs as it relates to the proposed settlement agreement. ¶ 10.1 provides: "a. <u>General</u>. You are responsible for all Reversals, chargebacks, claims, fees, fines, penalties and other liability incurred by PayPal, a User or a third party caused by or arising out of your breach of this Agreement, and/or your use of the PayPal

Services. You agree to reimburse PayPal, a User, or a third party for any and all such liability." How does PayPal incur liability for Reversals, Chargebacks, Claims, Fees, Fines, etc., as a result of the use of PayPal services by a buyer or seller? The answer is that PayPal incurs no such liability, as we will demonstrate below. Subparagraph b. of ¶ 10.1 deals with "Liability for Claims under PayPal Purchase Protection." Said subparagraph provides: "If you are a Seller and PayPal makes the final decision that you lose a Claim filed directly with PayPal, you will be required to reimburse PayPal for your liability. …Your liability will include the full purchase price of the item plus the original shipping cost… You will not receive a refund of your PayPal fees." Subparagraph b. further provides: "If a buyer files a Significantly Not as Described (SNAD) Claim for an item they purchased from you, you will generally be required to accept the item back and refund the buyer the full purchase price plus original shipping costs. You will not receive a refund on your PayPal fees." Thus, even if Defendant PayPal should refund the buyer his or her purchase price plus original shipping costs, Defendant PayPal will be reimbursed by the seller.

¶ 10.5 of the PayPal agreement deals with "holds" placed upon class members' funds by Defendant PayPal. Subparagraph a. of ¶ 10.5 deals with "Risk-Based Holds." Said subparagraph provides:

> PayPal, in its sole discretion, may place a hold on any or all of the payments you receive when PayPal believes there may be a high level of risk associated with you, your account, or any or all of your transactions. PayPal's determination may be based on a number of different factors and PayPal may rely on information it receives from third parties… If PayPal places a hold on any or all of the payments you receive PayPal will provide you with notice of our actions. PayPal will release the hold on any payment after 21 days from the date the payment was received into your Account unless you receive a Dispute, Claim, Chargeback or Reversal or PayPal has taken another action permitted under this Section 10. PayPal, in its sole discretion, may release the hold earlier under certain circumstances… If you receive a Dispute, Claim, Chargeback, or Reversal, PayPal may continue holding the payment in your Account until the matter is resolved pursuant to this agreement.

PayPal will place a hold on practically every payment that it receives for forwarding to a seller or to another third party. We do not believe that there are any risks associated with any of these money transmission transactions. As stated in ¶ 1.1 of the PayPal agreement, "PayPal is only a payment service provider. PayPal helps you make payments to and accept payments from third parties." What possible risk is there in providing that service? We believe that PayPal utilizes what it calls "Risk-Based Holds"

as an excuse to accumulate huge sums of money belonging to its users into the Pooled Accounts from which it has collected millions of dollars in interest. In ¶ 39 of the *Zepeda* Second Amended Complaint, class counsel has alleged that PayPal places holds on funds belonging to PayPal users even though there is no risk. What has class counsel done to investigate this very significant allegation? Has class counsel examined multiple transactions involving "Risk Holds" to determine whether in fact there was a risk or not. It is our suspicion that no such investigation was conducted by class counsel to determine whether or not the "Risk Holds" were bogus or not.

Subparagrah b. of ¶ 10.5 of the PayPal agreement is entitled "<u>Disputed Transaction Holds</u>." This subparagraph provides:

> If a user files a Dispute, Claim, Chargeback or Reversal on a payment you received, PayPal may place a temporary hold on the funds in your Account to cover the amount of the liability. If you win the dispute or the transaction is eligible for PayPal seller protection, PayPal will lift the temporary hold. If you lose the dispute, PayPal will remove the funds from your Account.

As set for above, there is no need for PayPal to engage in "Disputed Transaction Holds." If PayPal determines that a buyer is entitled to a refund of his or her purchase price, then PayPal may obtain the money for the refund from the seller's PayPal account, or the seller's bank account, or the seller's credit card.

¶ 10.6 of the PayPal agreement deals with "Reserves." ¶ 10.6 provides:

> PayPal, in its sole discretion, may place a Reserve on funds held in your Business Account when PayPal believes there may be a high level of risk associated with your Account. If PayPal places a Reserve on funds in your Account, they will be shown as 'pending' in your PayPal Balance. If your Account is subject to a Reserve, PayPal will provide you with notice specifying the terms of the Reserve. The terms may require that a certain percentage of the amounts received into your Account are held for a certain period of time, or that a certain amount of money is held in reserve, or anything else that PayPal determines is necessary to protect against the risk associated with your Account. PayPal may change the terms of the Reserve at any time by providing you with notice of the new terms.

We believe that Defendant PayPal uses "Reserves" as another means of accumulating large sums of money in its Pooled Accounts for the purpose of obtaining large amounts of money by way of interest on those accounts. Once again, Defendant PayPal ties "Reserves" to a "high level of risk associated with your account."  As stated above, what possible risk can be associated with simply transmitting money

from one person to another? It appears that class counsel did not investigate those transactions where a "Reserve" was placed on users' accounts to determine if there was in fact a "high level of risk" associated with the various accounts.

¶ 10.7 of the PayPal agreement provides in part as follows:

> Except as expressly provided otherwise in this Agreement, if we limit access to your Account, including through a Reserve or hold, we will provide you with notice of our actions; we will also provide you with an opportunity to request restoration of access if, in our sole discretion, we deem it appropriate. Further, you acknowledge that PayPal's decision to take certain actions, including limiting access to your Account by placing holds or imposing Reserves, may be based on confidential criteria that are essential to our management of risk and the security of users' accounts and the PayPal system. You agree that PayPal is under no obligation to disclose the details of its risk management or security procedures to you.

Under ¶ 10.7, even though Defendant PayPal will provide a class member with an opportunity to request restoration of access to his or her account if PayPal, in its sole discretion, deems it appropriate, whether a hold or reserve is removed is strictly and solely within the control of Defendant PayPal. If PayPal does not want to remove a hold or a reserve, it will not do so. There is no right provided in the PayPal user agreement for a PayPal user to have a hold or a reserve removed as a matter of right. It is extremely important to note that under ¶ 10.7, Defendant PayPal may decline to provide any information as to why a hold or a reserve has been placed on a user's account because it is "based on confidential criteria that are essential to our management of risk and the security of users' accounts and the PayPal system." The PayPal agreement even requires each user to agree that PayPal is under no obligation to disclose the details of its risk management or security procedures to the user when a hold or a reserve is placed upon a user's account.

One of the evils in the PayPal user agreement from the standpoint of class members is that Defendant PayPal is allowed to place holds and reserves on class members' money that is held in PayPal accounts. As stated above, such holds and reserves are totally unnecessary in order to refund buyers because Defendant PayPal may remove the amount to be refunded from the seller's PayPal account, from the seller's bank account, or by charging the seller's credit card. The PayPal system of "holds" and "reserves" are all the more onerous to class members when it appears that the primary reason for such "holds" or "reserves" is the accumulation of large sums of money for PayPal to invest in "Pooled

Accounts" for the purpose of creating large sums of money in the form of interest that goes straight into the pocket of Defendant PayPal. What would be beneficial for class members would be to force Defendant PayPal to eliminate its system of "holds" and "reserves." It provides no benefit whatsoever to class members to require Defendant PayPal to make further disclosures about its system of "holds" and "reserves" since the settlement agreement in no way restricts Defendant PayPal from continuing to place "holds" and "reserves" on class members' PayPal accounts. It is interesting to note that in ¶ 41 of the *Zepeda* Second Amended Complaint, class counsel has alleged that the "hold" and "reserve" provisions of the PayPal user agreement <u>are unconscionable</u>. What discovery or investigation was undertaken by class counsel in order to prove that the "hold" and "reserve" provisions are in fact unconscionable and should be unenforceable. In ¶ 50 of the *Zepeda* Second Amended Complaint, it is alleged that the class members have suffered damages and PayPal has been unjustly enriched in the form of interest obtained by Defendant PayPal on class members' money held in PayPal accounts. There is no indication that class counsel conducted any discovery to find out how much money Defendant PayPal gained as a result of taking the interest from user money held in PayPal accounts. In ¶ 64 of the *Zepeda* Second Amended Complaint, one of the "common questions" alleged is the limiting of access to the users' accounts without any reason to believe that the users were engaged in any activities prohibited by the agreement, or engaged in any activities that carried a "high level of risk." There is no indication that class counsel ever found out what Defendant PayPal meant by the phrase "a high level of risk."

The settlement agreement is clearly unfair, unreasonable and inadequate to the class members. In ¶ 4.1 of the settlement agreement, PayPal agrees to implement "the Business Practices as set forth in ¶ 4.2 …" In ¶ 4.2, it provides: "PayPal will implement the following business practices… and will maintain these practices for not less than a period of two years following the Implementation Date." In ¶ 4.2.a., it states that "PayPal will disclose its use of fraud and risk modeling in the PayPal user agreement…" In 4.2.b., it states in part that PayPal will respond to requests for information by advising "users to communicate with PayPal to seek additional information." However, the settlement agreement goes on to modify PayPal's disclosure of information to class members as follows: "The parties agree, however, that this advise is not intended to imply that PayPal is obligated to provide, or that users are entitled to or will receive additional information."

¶ 4.2.c. provides that "PayPal will revise the PayPal user agreement to more clearly distinguish among "holds," "reserves," and "limitations," as those terms are used by PayPal, including in the PayPal user agreement." This disclosure is completely worthless, since it does nothing to limit the ability of Defendant PayPal to place "holds" or "reserves" on monies belonging to the class members that are in PayPal accounts. In ¶ 4.2.d. of the settlement agreement, it provides that "PayPal will enhance the disclosures on its website by including a list of Frequently Asked Questions (FAQ) providing users with greater detail on holds, reserves, and limitations." Once again, we have a worthless provision in the settlement agreement which does nothing to curtail the ability of Defendant PayPal to impose "holds" and "reserves" on class members' monies in PayPal accounts.

Finally, in ¶ 4.2.e. of the settlement agreement, it provides as follows:

> In response to calls to customer service, PayPal will disclose the reason for a hold, reserve or limitation to the extent not inconsistent with PayPal's security requirements, which will be determined at PayPal's sole discretion. If PayPal is unable to inform a user of the reason for a hold, reserve, or limitation due to security requirements, it will inform the user that it cannot tell the user the reason due to security requirements.

This is yet another worthless provision in the settlement agreement. First of all, this paragraph does nothing to preclude Defendant PayPal from imposing holds or reserves on monies of class members held in PayPal accounts. While it does require PayPal to disclose the reason for holds or reserves, that obligation is modified by a further provision that PayPal's security requirements may preclude the disclosure of such information to class members. And whether PayPal's security requirements preclude such disclosure is to be determined solely at PayPal's discretion.

There are 3 major deficiencies in this proposed settlement agreement which clearly establish that this settlement agreement provides absolutely no benefits to the class members. Those 3 reasons are as follows:

1. The settlement agreement in no way restricts Defendant PayPal from imposing "holds" and "reserves" on monies in the PayPal accounts of class members. It is strictly business as usual.

2. When a class member calls PayPal's customer service to seek information as to why a "hold" or "reserve" has been placed upon his PayPal account, there is no reason to believe that the class member will obtain a truthful answer from PayPal customer service. There is nothing in the settlement agreement that would provide enforcement to the requirement that Defendant PayPal provide the reason

for a "hold" or "reserve."

3.      Finally, in almost every case, the most likely response of Defendant PayPal to a class member's request for information with respect to a "hold" or "reserve" is to say that PayPal is unable to provide any such information "due to security requirements." Thus, the class member would receive no information whatsoever.

Under the settlement agreement, the claims class members will end up receiving $3 in most cases. However, there is only $4,000,000 allotted, and 30% of that may go for attorney's fees. In ¶ 26 of the *Zepeda* Second Amended Complaint, it is alleged that PayPal is an online payment processing service with 81 million active accounts. Thus, there are potentially 81 million class members in this case. If one multiplies $3 times 81 million class members, one arrives at a figure of $243,000,000. However, the maximum amount that Defendant PayPal is obligated to pay under the settlement agreement is $4,000,000. If the alleged 81 million class members submitted a claim in this case, there would not be nearly enough money to pay anywhere near $3.  Of course, what class counsel and Defendant PayPal are counting on is that most members of the "claims class" won't file a claim because it simply isn't worth it in order to receive the paltry sum of $3. It would not surprise us if most class members simply threw the class notice away and made no claim whatsoever when their only reward is $3. One cannot escape the conclusion that this settlement agreement was made for the benefit of class counsel and not for the benefit of the class members, since the class members receive no benefit whatsoever from the proposed settlement agreement.

## III.   THE PROPOSED SETTLEMENT AGREEMENT WREAKS OF INADEQUATE REPRESENTATION OF THE CLASS BY CLASS COUNSEL

In *Hanlon v. Chrysler Corporation, supra*, the Court stated at p.1021: "Our second adequacy inquiry is directed to the vigor with which the named representatives and their counsel will pursue the common claims. Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, <u>an assessment of the rationale for not pursuing further litigation</u>." (emphasis added) The Court in *Amchen* specifically noted the problem of counsel not being prepared to try a case. The Court stated that such counsel is by definition inadequate because an inability or unwillingness to try a case means the class loses all of the benefits of adversarial litigation. Class counsel confined to settlement negotiations could not use the

threat of litigation to press for a better offer. The Court in *Amchen* pointed out that district courts must be skeptical of some settlement agreements put before them because they are presented with a bargain proffered for approval without the benefit of an adversarial investigation. 117 S.Ct. at pp.2248-2249. The Court in *Hanlon* further stated at p.1021: "These concerns warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." That is exactly the situation in the case at bar.  The class members are receiving literally no benefit, but class counsel are amply rewarded by the proposed settlement agreement.

In *Molski v. Gleich*, 318 F.3d 937, 956 (9th Cir. 2003) the Court was concerned about the possible collusiveness between the named plaintiff, class counsel and the defendants. The Court stated that the facts indicated that the named plaintiff and class counsel failed to prosecute or defend the action with due diligence and reasonable prudence. The Court stated that "this fact must be considered in light of the ultimate terms of the decree, which waived practically all of the class members' claims without compensation and allowed the defendants to escape with little penalty." 318 F.3d at p.956. In *Staton v. Boeing Company*, 327 F.3d 938, 951 (9th Cir. 2003) the objectors complained that class counsel could not have meaningfully assessed the value of class claims because of insufficient discovery; that the monetary relief was inadequate and unfairly distributed; that the injunctive relief would not result in concrete benefits to the class. The Court pointed out at p.957 that "Rule 23(a)(4) permits the certification of a class only if the representative parties will fairly and adequately protect the interests of the class." The Court further stated at p.957: "To determine whether the representation meets this standard, we ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" In *Staton*, the district court permitted discovery on the allegations of outright collusion between class counsel and *Boeing*, and concluded that there was no proof that collusion had occurred.

At p.12 of the Court's Preliminary Approval Order, the Court stated: "In addition, the record shows that Plaintiffs' counsel have been vigorously litigating this case in furtherance of the interests of the class. The Court is therefore satisfied that the adequacy requirement, along with the other Rule 23(a)

requirements, has been sufficiently demonstrated." A close review of the Civil Docket in this case paints an entirely different picture. There was a single motion by Defendant PayPal to dismiss that was granted on February 15, 2011. There appears to have been 6 different assignments of a district court judge to the *Zepeda* case. There were multiple continuances of Case Management Conferences, and it does not appear that the first Case Management Conference was held until April 19, 2012. At that time, the Court set May 8, 2012, as the date for filing of the Motion for Preliminary Approval of a Settlement Agreement. Commencing on October 10, 2011, there appears to have been multiple Motions to Intervene filed by disgruntled class members. Those motions carried through all of 2012 and most of 2013. Particularly astonishing is the fact that no discovery motions were ever filed in this case. Our experience is that Defendants vigorously oppose providing discovery to Plaintiffs in a class action lawsuit. The fact that there were no discovery motions filed in this case suggests that there was very little, if any, discovery conducted in the *Zepeda* case.

It does not appear that class counsel has investigated through discovery any of the cases where PayPal claimed that there were risk-based holds or reserves placed on funds in order to determine whether or not PayPal was being honest with respect to its claim of "risk." We believe that PayPal uses the excuse of "risk" to place holds on money when there is no risk involved at all.

There is no indication that class counsel has investigated through discovery or otherwise the fact that Defendant PayPal requires PayPal account holders to provide a bank account number and a credit card number to PayPal for the purpose of allowing Defendant PayPal to remove money from the bank account and/or to charge the credit card whenever Defendant PayPal needs to refund a buyer his or her purchase price.

It does not appear that class counsel has investigated through discovery or otherwise the total amount of interest that has been collected through the years by Defendant PayPal from money belonging to class members in PayPal accounts being held by Defendant PayPal. Class counsel could not possibly evaluate whether this is a good settlement unless they knew what the total damages were suffered by the class members as a result of PayPal placing holds and reserves on monies belonging to the class members. A settlement of $3 in this case is laughable. In no way can $3 be described as a benefit. It is difficult to see where any class member will go to the trouble to submit a claim in order to obtain the

paltry sum of $3.

At p.8 of the Preliminary Approval Order, the Court states that "The settlement is the result of non-collusive negotiations; i.e., a mediation conducted by Magistrate Judge Infante…" How can the Court be so sure that there has not been collusion in this case simply because Magistrate Judge Infante was involved in some of the negotiations? The Court further states at p.8 that "Notwithstanding these modifications, the parties have not reduced the settlement benefits to the Class." Since there are no settlement benefits to the class, they obviously could not have been reduced. What benefits does this Court see in the settlement?  Certainly, $3 cannot be considered a benefit to the class, since no one will take the time and trouble to fill out a claim form in order to obtain such a small sum. With respect to the so-called "disclosures," the "disclosures" will do nothing to alleviate the harm to class members as the result of the holds and reserves placed upon class members' money by Defendant PayPal. There is no provision in the settlement agreement which curtails in any way Defendant PayPal's ability to place holds and reserves on the money of class members in their PayPal accounts. At p.13 of the Court's Preliminary Approval Order, it is stated: "Here, the principal relief sought with respect to the Injunctive Relief Class consists of changes to PayPal's business practices regarding its holds and reserve policies, including additional disclosures to PayPal customers. …Because an injunction would offer all class members 'uniform relief' from this harm, class certification of the Injunctive Relief Class is appropriate…"  First of all, there are no changes in the settlement agreement to PayPal's business practices regarding its placing of holds and reserves on the monies of class members. The only thing required by the settlement agreement are certain disclosures. The harm imposed upon class members by Defendant PayPal is the placing of holds and reserves on class members' money.  The settlement agreement simply does not curtail the ability of Defendant PayPal to place holds and reserves on class members' money.  Obviously, there is no "uniform relief" from this harm.

**IV.    CLASS COUNSEL ERRED IN SPLITTING THE CLASS INTO A "CLAIMS CLASS" AND AN "INJUNCTIVE RELIEF CLASS" SOLELY FOR THE PURPOSE OF PRECLUDING THE "INJUNCTIVE RELIEF CLASS" FROM OPTING OUT OF THE SETTLEMENT UNDER RULE 23(b)(2) WHEN UNDER THE LAW, ALL SETTLEMENT CLASS MEMBERS ARE ENTITLED TO OPT OUT OF THE SETTLEMENT**

In order to permit certification under Rule 23(b)(2), the claim for monetary damages must be secondary to the primary claim for injunctive or declaratory relief. *Molski v. Gleich, supra*, 318 F.3d at

p.947. In ¶ 7 of the Second Amended Complaint in *Zepeda*, it alleges that PayPal keeps the interest that is generated by the held funds. In ¶ 40 of the Second Amended Complaint, it is alleged that "funds continue to accrue interest, and PayPal is unjustly enriched." In ¶ 50 of the Second Amended Complaint, it is alleged that as a result of PayPal's actions, Plaintiffs and the members of the class have suffered damages and PayPal has been enriched in the form of interest on the money held in the accounts. In ¶ 64 of the Second Amended Complaint under "Common Questions," one of the common questions listed is "whether class has been damaged." Another common question is "restitution of monies." In *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1240 (9th Cir. 2003) the Court pointed out that the law in the Ninth Circuit is that due process requires the option to opt out only in the limited set of claims that are wholly or predominantly for money judgments.

In the case at bar, there is no denying that the Second Amended Complaint in *Zepeda* primarily seeks money damages from Defendant PayPal. Under such circumstances, each member of the settlement class should be allowed to opt out of this settlement agreement. We contend that class counsel has violated the law by splitting the class into a "claims class" and an "injunctive relief class" solely for the purpose of precluding the "injunctive relief class" from opting out of the settlement agreement. This is improper.

Dated:  May 7, 2016                    FRANKLIN & FRANKLIN


                                       s/J. David Franklin
                                       J. David Franklin
                                       One of the Attorneys for Objectors
                                       Walley Collins and Lucinda Christian